

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

KIMBERLY POFF, )
     PLAINTIFF, )
 )     **CJ** 2015 - 7 3 7
V. )  CASE NO. CJ-2015- 737
 )
OKLAHOMA DEPARTMENT OF HUMAN )
SERVICES, ED LAKE, an individual, TONY )  JURY TRIAL DEMANDED
BRYAN, an individual. )  ATTORNEY'S LIEN CLAIMED
     DEFENDANTS. )

### PETITION

COMES NOW, Kimberly Poff for her cause of action against the Defendant, Oklahoma

Department of Human Services ("DHS"), and hereby alleges, and states as follows:

### JURISDICTION AND VENUE

1. Kimberly Poff is a citizen of Oklahoma and a resident of Oklahoma County.

2. Ms. Poff had been a State employee for 22 years.

3. Prior to working for DHS, Ms. Poff worked as Inspector General for Oklahoma Department

   of Mental Health and Substance Abuse Services ("ODMHSAS").

4. Ms. Poff began employment with DHS January 7, 2014.

5. She worked with DHS through August 22, 2014.

6. She received a promotion to the Inspector General's Office as Investigator Agent III on May

   1, 2014.

7. From December 17, 2007 through August 23, 2013, Ms. Poff was the Inspector General for

   the ODMHSAS.

8. Prior to her employment with ODMHSAS, she was employed by DHS as a Social Services

   Inspector III, where she investigated claims of fraud and employee misconduct.

## EXHIBIT 2

9. Ms. Poff's employment with ODMHSAS ended on August 23, 2013, under unexplained circumstances with she believes is the result of retaliation, age and gender discrimination and violation of 42 USC § 1983. A suit was filed in the District Court of Oklahoma County alleging the same.

10. During her time with DHS she received regular positive reviews, raises, and promotions.

11. Defendant, DHS, is a State Agency of the State of Oklahoma.

12. All of the actions and events which are the subject of this action occurred in Oklahoma County.

13. On or about 11/07/2014, the Plaintiff timely submitted a Charge of Discrimination against the Defendant on the basis of Retaliation to the Equal Employment Opportunity Commission ("EEOC"), which is attached hereto as part of Exhibit 1 and is incorporate by reference herein.

14. On or about 11/07/2014, the EEOC issued Plaintiff her Notice of Right to Sue, which is attached hereto as part of Exhibit 1 and is incorporate by reference herein.

15. On or about 1/6/2015 Plaintiff filed a tort claim which was served on the Defendant DHS, which is attached hereto as Exhibit 1 and is incorporate by reference herein.

## FACTUAL ALLEGATIONS

16. Plaintiff was hired on May 1, 2014 at the Office of Inspector General ("OIG") for DHS.

17. Plaintiff's duties were to perform routine audits and investigations pertaining to welfare fraud investigations. An agent's duties at this level are performed under close supervision to build skills in conducting investigations, collecting and preserving evidence, interviewing witnesses, interrogating witnesses, appear and testify, if subpoenaed, as a witness in court trials, and other related activities.

2

## EXHIBIT 2

18. The reason provided for Plaintiff's termination was that she allegedly misrepresented information on her application.

19. Plaintiff adamantly denies any claim that she misrepresented any information on her applications.

20. On the application form, which Plaintiff completed for the position of Investigative Agent III with the DHS Office of Inspector General as well as the position held prior to that (Social Services Inspector II), there is a question on page three (3) which asks, "Have you ever resigned in lieu of termination?" Plaintiff answered, "Yes." It is Plaintiff's understanding that this previous answer is now the basis for her discharge.

21. Prior to her employment there was a background investigation, during which Plaintiff explained her departure from ODMHSAS very specifically.

22. This also included a complete background investigation performed on Plaintiff. This background investigation included a review of Plaintiff's personnel file and contact with her former employer at the ODMHSAS.

23. Plaintiff has also learned that others have been reprimanded for failure to "detect her lie" on the application.

24. Plaintiff has never intentionally given false or misleading information and all statements were based on her reasonable belief and knowledge.

25. The explanation of the circumstances of Plaintiff's departure from ODMHSAS proves that her termination from DHS was politically motivated as was the reprimand given to other employees.

26. Ms. Poff filed a lawsuit against ODMHSAS in July 2014, regarding the termination of her employment.

3

**EXHIBIT 2**

27. At the time, Ms. Poff was interviewing and going through her background investigation by DHS for the position in the Inspector General's Office, KWTV Channel 9 ran a story about Ms. Poff's allegations against ODMHSAS.

28. After Ms. Poff's lawsuit was filed in July of 2014, more press stories ran about the lawsuit.

29. Two days after the press ran regarding his employment suit against ODMHSAS, Ms. Poff was terminated from DHS.

## RETALIATION DISCRIMINATION

30. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1-29 as if fully set forth herein.

31. Plaintiff was terminated on August 22, 2014 from Oklahoma Department of Human Services (DHS), in regards to her previous employment with State Agency ODMHSAS.

32. Plaintiff became aware of wrongdoings by ODMHSAS and NARCONON during her investigations, through her employment, with ODMHSAS.

33. Plaintiff reported these wrongdoings to her supervisors and was subsequently terminated as a result.

34. On Tuesday, August 19, 2014, News Channel 9 ran an on-air story at 5:00 p.m. regarding the lawsuit that Ms. Poff filed against the ODMHSAS alleging, among other things wrongful discharge, violation of 42 U.S.C. §1983, and multiple violations of state law. On Tuesday August 19, 2014, www.TonyOrtega.com via the Underground Bunker Online magazine ran a story regarding the lawsuit against ODMHSAS.

35. On Wednesday, August 20, 2014, both the Tulsa World and the Daily Oklahoman ran full length print stories regarding the lawsuit.

4

## EXHIBIT 2

36. On August 20, 2014, Tony Bryan requested Ms. Poff's employment file from her immediate supervisor, Rick McCoy, Investigative Agent 5. On Friday, August 22, 2014, Ms. Poff was discharged from duty.

37. This discharge from DHS is wholly due to the previously filed lawsuit against another state agency and the press that the lawsuit has received.

38. The Department was negligent in failing to oversee the activity happening and to train and supervise its employees to avoid illegal conduct. The conduct of DHS violates state and federal law.

39. Plaintiff's termination from DHS was in retaliation for her reports on Narconon, and the press releases done on ODMHSAS as well.

40. Ms. Poff was retaliated against for exercising her right to free speech under the United States and Oklahoma State Constitutions.

41. Ms. Poff filed a grievance regarding her termination but this was subsequently denied by DHS. Further, Ms. Poff filed for unemployment benefits. After going through the unemployment appeal process Ms. Poff was awarded benefits.

42. The Oklahoma Employment Security Council found that "while the claimant somewhat misrepresented herself in her application, the first-hand unrefuted evidence presented by the claimant shows that the employer conducted an extensive background investigation, which included questions of the claimant regarding the separation.

43. While Ms. Poff denies that she misrepresented herself, the OESC letter is further proof demonstrating that DHS had knowledge of the circumstances regarding the ending of her employment with ODMHSAS and hired Ms. Poff anyway.

5

## EXHIBIT 2

44. However, once press began to run about the lawsuit, DHS decided to terminate Ms. Poff. This is retaliation.

45. The story ran on several occasions, through different media channels. There were many other discussions about Ms. Poff's allegations against ODMHSAS out on message boards and forums about Scientology.

46. It is clear that the reason DHS terminated Ms. Poff is because of the press related to her lawsuit against ODMHSAS. Ms. Poff has a long history of excellent service at DHS.

47. Further, her superiors, including Mr. Bryan, were aware of her bringing a complaint against her former employer at the time she was hired. Not only did Ms. Poff speak with Mr. McCoy about the employment with ODMHSAS prior to her hiring, DHS obtained the termination letter that they claim proves she lied on her application prior to the beginning of her employment with the Inspector General's Office.

48. Ms. Poff also spoke with Mr. Bryan about her employment with ODMHSAS after she began working for DHS. The alleged misstatement on the application is a pretext for retaliation.

49. As a result of the retaliation and other wrongful acts of the Defendant, Ms. Poff has suffered damages in lost wages and benefits, damage to reputation, lost opportunity for advancement and training, mental stress, and pain and suffering.

## CONSTITUTIONAL VIOLATIONS

50. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1-49 as if fully set forth herein.

51. Defendant is a government/state actor subject to the prohibitions contained in the 1st Amendment of the U.S. Constitution, Article 2 Sections 3 and 22 of the Oklahoma Constitution, and 42 U.S.C. § 1983.

6

## EXHIBIT 2

52. On information and belief, the Defendant's justification for terminating Plaintiff was based upon the Plaintiff's exercise of her freedom of speech and press when she reported her wrongful termination by ODMHSAS.

53. Ms. Poff's termination, in retaliation for her reports on NARCONON, and in the press, was a clear violation of her Constitutional liberties guaranteed to her by both the U.S. Constitution and the Oklahoma Constitution.

54. The Defendant, acting in either their individual capacity and/or in their capacity as employees and directors of the DHS, retaliated against Plaintiff for exercising her right to free speech under the 42 U.S.C. § 1983 and the United States and Oklahoma Constitutions.

55. As a result of the conduct of DHS, acting either in individual capacities and/or their capacity as employees and directors of the DHS, Plaintiff Kimberly Poff has suffered injuries and damages for lost wages, loss benefits, and damage to reputation, emotional distress and mental suffering in excess of $75,000.00.

## WHISTLEBLOWER ACT VIOLATIONS

56. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1-55 as if fully set forth herein.

57. Plaintiff filed suit in CJ-2014-4407 against the Oklahoma Department of Mental Health and Substance Abuse Services (ODMHSAS) employees of the agency alleging that she was terminated *inter alia* for reporting on violations of state law occurring at Narconon Arrowhead, a drug and alcohol treatment facility regulated by ODMHSAS.

58. DHS had full knowledge of the circumstances of Ms. Poff's employment and subsequent loss of employment when she was hired. However, DHS terminated Plaintiff within days of the media disclosing that she was working for DHS.

7

## EXHIBIT 2

59. A state agency terminating Plaintiff based upon the information she uncovered and disclosed while working at another state agency, is in clear violation of the Whistleblower Act.

60. As a result of the intentional conduct of Defendant in terminating Plaintiff for revealing wrong doing by another state agency, Plaintiff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

## NEGLIGENCE

61. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1-61 as if fully set forth herein.

62. DHS by and through its Board of Directors and Commissioner Ed Lake failed to hire, train and supervise its Leadership employees to ensure that they knew and understood the law with regard to the hiring, reviewing, disciplining and terminating employees for alleged misconduct.

63. DHS by and through its Board of Directors and Commissioner Ed Lake, was negligent when it failed to fully and adequately investigate the allegations that Kim Poff was wrongfully disciplined and terminated from her job when Plaintiff appealed her termination through the grievance process.

64. As a result of the negligence of the Defendants Ms. Poff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

## VIOLATION OF OKLAHOMA PUBLIC POLICY

65. Plaintiff hereby adopts and re-alleges all allegations in paragraphs 1 - 64 as if fully set forth herein.

8

## EXHIBIT 2

66. Plaintiff is an at will employee but as a governmental employee has a property interest in her job.

67. The actions of Defendants violate Oklahoma Public Policy and Oklahoma Statutory law.

68. The remedies available to Plaintiff under the Federal law are not adequate to address the injuries and damages she suffered as a result of the conduct of her employer's illegal and wrongful conduct.

69. On November 1, 2011, 25 O.S. § 1350 went into effect creating a statutory remedy for employment-based discrimination and Ms. Poff has a claim against the Defendants under the same.

70. Plaintiff has been discriminated against in her employment and termination. Her termination was not for cause or legal reason but was based on a pretext of an allegation of inaccuracies in her application. However, DHS was fully aware of the circumstances of Ms. Poff's employment and termination from ODMHSAS and hired her with full knowledge of the same. DHS only terminated Ms. Poff when media attention revealed that she was now working for DHS.

71. As a result of the intentional and willful conduct of the Defendants, Ms. Poff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

## CIVIL CONSPIRACY

72. Plaintiff hereby adopts and realleges all allegations in paragraphs 1 - 72 as if fully set forth herein.

73. On information and belief, Ed Lake and Tony Bryan, acting in either their individual capacity and/or in their capacity as employees and directors of DHS, jointly, unlawfully and illegally

**EXHIBIT 2**

conspired to suppress the information that DHS had full knowledge of Plaintiff's employment, termination and claims against ODMHSAS and terminated her illegally to avoid further press or media coverage about her employment with another state agency.

74. The conduct of Ed Lake and Tony Bryan is illegal and amounts to a civil conspiracy which is unlawful and gives rise to a claim for damages by the Plaintiff.

75. As a result of the civil conspiracy and the wrongful acts of the Defendants Ms. Poff has suffered damages in lost wages and benefits, lost opportunity for advancement and training, damage to reputation, mental stress and pain and suffering.

WHEREFORE, Plaintiff Kimberly Poff demands judgment in her favor and against the Defendants for wrongful, improper and illegal conduct. Plaintiff requests that she be awarded her lost wages, damages for lost benefits, damages for emotional distress and mental suffering and punitive damages. Plaintiff further requests that the Court award her the costs and attorney's fees associated with this suit and any and all other relief that the Court deems just and equitable.

Respectfully submitted,

Rachel L. Bussett, OBA 19769
Bussett Law Firm, PC
3555 N.W. 58th St., Suite 1010
Oklahoma City, OK 73112
405-607-4885
405-601-7765

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED

10

**EXHIBIT 2**



**BUSSETT**
Law Firm, P.C.
*Curtis W. Bussett*
*Rachel L. Bussett*

3555 NW 58th St. Suite 1010
Oklahoma City, OK 73112
Phone: (405) 605-8073
Fax: (405) 601-7764
www.BussettLaw.com

January 6, 2015

Office of the Attorney General
State of Oklahoma
313 Ne 21st Street
Oklahoma City, OK 73105

Office of Risk Management
Will Rogers Office, Ste. 202
2401 N. Lincoln Blvd.
Oklahoma City, OK 73105

Oklahoma Department of Human Services
PO Box 25352
Oklahoma City, OK 73125

Office of General Counsel
Legal Services
Department of Human Services
PO Box 25352
Oklahoma City, OK 73125

**RE:   Notice of Tort Claim against the State of Oklahoma and Ok. Dept. of Human
Services.**

| | |
|---|---|
| Our Clients: | Kimberly Poff |
| County Entity: | Ok. Dept. of Human Services |
| Date of Accident: | August 22, 2014 |

To Whom It May Concern:

Please be advised that Ms. Kimberly Poff has retained my office to represent her in an action
against the Ok. Dept. of Human Services (OKDHS), by and through the State of Oklahoma, for
damages sustained as a result of her wrongful termination on August 22, 2014. Pursuant to 51
O.S §156, this letter will serve as a Notice of Tort Claim filed against the State of Oklahoma,
Oklahoma Department of Human Services, arising under a claim within the Oklahoma
Governmental Tort Claims Act, 51 O.S. § 151. Please contact the undersigned attorney at the
Bussett Law Firm, P.C. to resolve this claim.

**Description of the Incident:**

Ms. Poff has been an employee of the State of Oklahoma for 22 years. She was employed with
OKDHS from January 7, 2014 through August 22, 2014 and received a promotion to the
Inspector General's Office as Investigator Agent III on May 1, 2014. From December 17, 2007
through August 23, 2103, Ms. Poff was the Inspector General for the Oklahoma Department of
Mental Health and Substance Abuse Services ("ODMHSAS"). Prior to her employment with
ODMHSAS, she was employed by DHS as a Social Services Inspector, where she investigated

1

**EXHIBIT 2**



**EXHIBIT**
1

claims of fraud and employee misconduct. During her time with DHS she received regular positive reviews, raises, and promotions. During her tenure at ODMHSAS, she has received two raises, five commendations for her performance, and an employee of the month award. She was never been disciplined, demoted or otherwise questioned with regard to her competency, quality or professionalism in the performance of her job. Ms. Poff's employment with ODMHSAS ended on August 23, 2013, under unexplained circumstances which she believes is the result of retaliation, age and gender discrimination and violation of 42 USCA § 1983. The punishment imposed for any alleged infraction of her employment was not merited given her long and outstanding job performance. Ms. Poff filed a lawsuit against ODMHSAS in July 2014 regarding the termination of her employment. At the time Ms. Poff was interviewing and going through her background investigation by DHS for the position in the Inspector General's Office, KWTV Channel 9 ran a story about Ms. Poff's allegations against ODMHSAS.[1] Ms. Poff also disclosed what was happening during her interview process.

Ms. Poff's job in the Inspector General's Office at OKDHS is to perform routine audits and investigations pertaining to welfare fraud investigations. Incumbents will receive training to conduct investigations of criminal violations of Oklahoma state laws and administrative violations of the Department of Human Services' rules and regulations. Incumbents shall complete the CLEET Basic Law Enforcement Academy as prescribed by law and may be required to complete the agency's basic family support academy. An agent's duties at this level are performed under close supervision to build skills in conducting investigations, collecting and preserving evidence, interviewing witnesses, interrogating witnesses, appear and testify, if subpoenaed, as a witness in court trials, and other related activities. Ms. Poff was more than qualified for this job and had no problems completing her employment.

On the application form for her position, which Plaintiff completed for the position of Investigative Agent III with the DHS Office of Inspector General as well as the position held prior to that (Social Services Inspector II). There was a question on page three which asks if the applicant has ever resigned in lieu of termination. Ms. Poff answered "Yes." It is Plaintiff's understanding that this previous answer is now the basis for her discharge. Prior to her employment there was a full background investigation, during which Plaintiff explained her departure from ODMHSAS very specifically. The full background investigation included a review of Plaintiff's personnel file and contact with her former employer at the ODMHSAS. DHS also obtained a copy of the termination letter that was placed in her file by ODMHSAS and is now being used as a basis to claim she misstated her departure from ODMHSAS. Plaintiff adamantly denies any false information given. Plaintiff was given the opportunity to resign in lieu of termination at her previous employment with ODMHSAS, and did so through an offer to resolve her wrongful termination claims against ODMHSAS. That was intent then and has always been. Plaintiff has recently learned of the failure of ODMHSAS to follow through with their proposal for this option, and that they instead terminated her, against the choice given to Plaintiff and accepted, and did not inform her of their decision to do so. Plaintiff has also learned that others have been reprimanded for failure to "detect her lie" on the application. The explanation given to her regarding her departure from ODMHSAS proves that

---

[1] See http://www.news9.com/story/25286412/investigators-involved-in-narconon-investigation-fire for video of the Story and Exhibit 6, for the printed article.

**EXHIBIT 2**

her termination from OKDHS was politically motivated as was the reprimand given to other employees.

She performed her duties at this job without reprimand or criticism up until certain news articles ran. Plaintiff had become aware of wrongdoings by ODMHSAS and Narconon during her investigations, through her employment with ODMHSAS. Plaintiff reported these wrongdoings to her supervisors and pushed for the release of the information and action to be taken against Narconon. However, Ms. Poff and another investigator were subsequently terminated as a result on August 23, 2013. On Tuesday, August 19, 2014, News Channel 9 ran an on-air story at 5:00 p.m. regarding the lawsuit that Ms. Poff filed against the ODMHSAS alleging, among other things, wrongful discharge, violation of 42 U.S.C. § 1983, and multiple violations of state law. On Tuesday August 19, 2014, KWTV Channel 9[2] and www.TonyOrtega.com[3] via the Underground Bunker Online magazine ran a story regarding the lawsuit against ODMHSAS. Tulsa World also ran a story on August 20, 2014.[4] The Tulsa World piece also ran in the Daily Oklahoman. On Wednesday, August 20, 2014, Tony Bryan requested Plaintiff's employment file from her immediate supervisor, Rick McCoy, Investigative Agent 5. On Friday, August 22, 2014, Plaintiff was discharged from duty.

This discharge from OKDHS is retaliation wholly due to the previously filed lawsuit against another state agency and the press that the lawsuit has received. The Department was negligent in failing to oversee the activity of happenings and to train and supervise its employees in order to avoid illegal conduct. The conduct of OKDHS violates state and federal law. Plaintiff's termination from ODMHSAS was in retaliation for her reports on Narconon, and those released by the press on ODMHSAS as well, retaliated against the Plaintiff for exercising her right to free speech under the United States and Oklahoma State Constitutions and in violation of 42 U.S.C. It is also a clear violation § 1983 and the Whistleblower's Act. A state agency terminating an employee based upon the information uncovered and disclosed while working at another state agency is in clear violation of this act.

Ms. Poff filed a grievance regarding her termination but this was subsequently denied by DHS. Further, Ms. Poff filed for unemployment benefits. After going through the unemployment appeal process Ms. Poff was awarded benefits. The Oklahoma Employment Security Council found that "while the claimant somewhat misrepresented herself in her application, the first-hand unrefuted evidence presented by the claimant shows that the employer conducted an extensive background investigation, which included questions of the claimant regarding the separation."[5] While Ms. Poff denies that she misrepresented herself, the OESC letter is further proof demonstrating that DHS had knowledge of the circumstances regarding the ending of her employment with ODMHSAS and hired Ms. Poff anyway. However, once press began to run about the lawsuit DHS decided to terminate Ms. Poff. This is retaliation. During the appeal and grievance process the press continued to run stories about Ms. Poff's lawsuit. Two stories ran

---

[2] See http://www.news9.com/story/26319970/narconon-investigators-sue-department-of-mental-health-and-substance-abuse for the video and Exhibit 7, for the printed article

[3] See http://tonyortega.org/2014/08/19/oklahoma/ and Exhibit 8 for the printed article.

[4] See http://www.tulsaworld.com/news/courts/lawsuits-allege-state-suppressed-narconon-report-fired-investigators/article_fd684bc6-6684-510d-a217-5e3e6bce5d0e.html and Exhibit 9 for printed article.

[5] See Exhibit 14, OESC Benefits Letter.

**EXHIBIT 2**

on TonyOrtega.org on 9/23/14 and then another story ran on 11/11/14.[6] Channel 6 out of Tulsa ran a story on 9/23/14[7] and 11/11/14[8]. The November articles specifically relate to Ms. Poff's termination by DHS. There were many other discussions about Ms. Poff's allegations against ODMHSAS out on message boards and forums about Scientology. It is clear that the reason DHS terminated Ms. Poff is because of the press related to her lawsuit against ODMHSAS. Ms. Poff has a long history of excellent service at DHS. Further, her superiors including Mr. Bryan were aware of her bringing a complaint against her former employer at the time she was hired. Not only did Ms. Poff speak with Mr. McCoy about the employment with ODMHSAS prior to her hiring, DHS obtained the termination letter that they claim proves she lied on her application prior to the beginning of her employment with the Inspector General's Office. Ms. Poff also spoke with Mr. Bryan about her employment with ODMHSAS after she began working for DHS. The alleged misstatement on the application is a pretext for retaliation and that violates Federal and State Law.

**Names of any and all known witnesses to the incident:**
1. Rick McCoy, Agent V for OKDHS
2. George Tipton, Chief Agent for OKDHS
3. James Wellman, Investigator for OKDHS
4. David Milnes, Investigator for ODMHSAS
5. Stella Church, Assistant programs Administrator
6. Michael DeLong,
7. Becky Kephart, DHS Employee
8. Tonya Purvine, DHS Employee
9. Ray Barnes, DHS Employee
10. Greg Glenn, DHS Employee
11. Dave Fredrickson, DHS Employee

**Location (Address), Date and Time of the Incident:** Ms. Poff was terminated from OKDHS, located at 2401 NW 23rd Street, Ste. 1, Oklahoma City, OK, 73107, on August 22, 2014.

**Claimant's Names, Address, Phone Numbers:** Kimberly Poff, ___

**Estimate of the Damages:** In excess of $175,000.00.

**Attachments:**

Exhibit 1 -   EEOC Right to Sue Letter
Exhibit 2 -   EEOC Intake Questionnaire

---

[6] See http://tonyortega.org search terms "Kim Poff Narconon", and Exhibits 10 and 11 for printed articles.
[7] See http://www.newson6.com/story/26610948/oklahoma-judge-rules-attorney-can-see-narconon-investigation-report for the video and Exhibit 12 for the printed article.
[8] See http://www.newson6.com/story/27357551/former-narconon-investigator-says-she-was-fired-for-going-public for the video and Exhibit 13 for the printed article

## EXHIBIT 2

Exhibit 3 -    EEOC Charge
Exhibit 4 -    Demand Letter & Letter to Board of Directors for ODMHSAS
Exhibit 5 -    DHS Grievance
Exhibit 6 –    4/18/2014 Story by Channel 9
Exhibit 7 –    8/19/14 Story by Channel 9
Exhibit 8 –    8/19/14 Story by Tony Ortega
Exhibit 9 –    8/20/14 Story by the Tulsa World
Exhibit 10 -   9/23/14 Stories by Tony Ortega
Exhibit 11 -   11/11/14 Story by Tony Ortega
Exhibit 12 -   9/23/14 Story by Channel 6 in Tulsa
Exhibit 13 -   11/11/14 Story by Channel 6 in Tulsa
Exhibit 14 -   OESC Order of Decision

**Parties/Agencies Involved:** State of Oklahoma and Oklahoma Department of Human Services and its agents and employees.

**Name, Address, Telephone Number of Authorized Agent to Settle Claim:** Bussett Law Firm P.C., 3555 NW 58th street Ste. 1010, Oklahoma City, Oklahoma, 73112 (405)-607-4885

If you have any questions or need any additional information, please do not hesitate to contact me. I can be reached at the number listed above or via email at Rachel@bussettlaw.com.

Sincerely,

Rachel Bussett

CC Kimberly Poff

5

**EXHIBIT 2**

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Kimberly M. Poff

From: Oklahoma City Area Office
215 Dean A. McGee Avenue
Suite 524
Oklahoma City, OK 73102

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Adrian L. Mcdaniel, | |
| 564-2015-00159 | Investigator | (405) 231-5971 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____
fce'. Holly . Waldron Cole,
Area Office Director

11-7-2014
(Date Mailed)

cc: William T. Drapala
JD SPHR Office of Civil Rights
OKLAHOMA D.H.S.
P.O Box 25352
Oklahoma City, OK 73125

Rachel Bussett
BUSSETT LAW FIRM, P.C.
3555 N.W. 58th St, Suite 1010
Oklahoma City, OK 73112



EXHIBIT
1

## EXHIBIT 2

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: Poff _____ First Name: Kimberly _____ MI: M _____

Street or Mailing Address: _____ Apt or Unit #: _____

City: _____ County: OK _____ State: OK _____ Zip _____

Phone Numbers: Home: (____) _____ Work: (____) _____

Cell: (405 _____ Email Address _____

Date of Birth _____ Sex: ☐ Male ☑ Female  Do You Have a Disability? ☐ Yes ☑ No

Please answer each of the next three questions.  i. Are you Hispanic or Latino? ☐ Yes ☑ No

ii. What is your Race?  Please choose all that apply. ☐ American Indian or Alaskan Native  ☐ Asian  ☑ White
☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? United States

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: Rachel Bussett _____ Relationship: attorney _____

Address: 3555 NW 58th St. #1010 _____ City: Oklahoma City _____ State: OK _____ Zip Code: 73112

Home Phone: (____) 405-605-8073 _____ Other Phone: (____) _____

**2. I believe that I was discriminated against by the following organization(s):  (Check those that apply)**

☑ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

Organization Contact Information (If the organization is an employer, provide the address where you actually worked.  If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: Oklahoma Department of Human Services

Address: 2401 NW 23rd St., Ste. 1 _____ County: Oklahoma

City: Oklahoma City _____ State: OK Zip: _____ Phone: (____) 405-522-5880

Type of Business: state agency _____ Job Location if different from Org. Address: _____

Human Resources Director or Owner Name: _____ Phone: (____) _____

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15   ☐ 15 – 100   ☐ 101 – 200   ☐ 201 – 500   ☑ More than 500

**3.  Your Employment Data (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☑ No**

Date Hired: 01/07/2014 _____ Job Title At Hire: Social Services Inspector II _____

Pay Rate When Hired _____ Last or Current Pay Rate _____

Job Title at Time of Alleged Discrimination: Investigator Agent III _____ Date Quit/Discharged: 08/22/2014

Name and Title of Immediate Supervisor: Rick McCoy _____

If Job Applicant, Date You Applied for Job _____ Job Title Applied For _____

EXHIBIT
2

**EXHIBIT 2**

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race  ☐ Sex  ☐ Age  ☐ Disability  ☐ National Origin  ☐ Religion  ☒ Retaliation  ☐ Pregnancy  ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; circle which type(s) of genetic information is involved:
i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

_____

Other reason (basis) for discrimination (Explain): _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

**A. Date:** 08/22/2014      **Action:** Discharged
        see attachment
_____

Name and Title of Person(s) Responsible: Tony Bryan and Director Ed Lake

**B. Date:** 08/22/2014      **Action:**
        terminated my services, see attachment
_____

Name and Title of Person(s) Responsible _____

**6.  Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
see attachment

_____

**7. What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**
see attachment

_____

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| | | | |
| B. | | | |
| | | | |

2

**EXHIBIT 2**

Of the persons in the same or similar situation as you, who was treated *worse* than you?
Full Name          Race, Sex, Age, National Origin, Religion or Disability   Job Title          Description of Treatment

A._____

_____

B._____

_____

Of the persons in the same or similar situation as you, who was treated *same* as you?
Full Name          Race, Sex, Age, National Origin, Religion or Disability   Job Title          Description of Treatment

A._____

_____

B._____

_____

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:          ☐ Yes, I have a disability
                                          ☐ I do not have a disability now but I did have one
                                          ☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____

_____

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____

_____

12. Did you ask your employer for any changes or assistance to do your job because of your disability?
☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____
Who did you ask? (Provide full name and job title of person)

_____

Describe the changes or assistance that you asked for: _____

_____

_____

How did your employer respond to your request? _____

_____

3

**EXHIBIT 2**

**13. Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|

A. Ricky McCoy, Agent V; PO Box 25352, OKC, OK  73125 (405)323-7309;  He will confirm there was no reason for my discharge other than as retaliation.

B. George Tipton, Chief Agent; PO BOX 25352, OKC, OK  73125 (405)522-5880; He will confirm there was no reason for my discharge except as retaliation.

**14. Have you filed a charge previously on this matter with the EEOC or another agency?  ☒ Yes  ☐ No**

**15. If you filed a complaint with another agency, provide the name of agency and the date of filing:** _____
EEOC, Donna G. Smith, EEOC Charge No. 564-2014-00279; Right to Sue letter was issued on 05/07/2014.

**16. Have you sought help about this situation from a union, an attorney, or any other source?  ☒ Yes  ☐ No**
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Rachel Bussett, Bussett Law Firm, P.C., attorney

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

**BOX 1** ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

**BOX 2** ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_KRW_ _____
Signature

_11/7/14_ _____
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

4

## EXHIBIT 2

On May 1, 2014, I began working at the Office of Inspector General ("OIG") for the Department of Human Services. Prior to my employment with OIG a full and complete background investigation was performed on me. This background investigation included a review of my personnel file and contacting my former employer at the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS").

On August 22, 2014, I received a text from Keck Upchurch asking me to return to the OIG office because Tony Bryan, Inspector General ("IG") wanted to see me in his office.

I returned to Shepherd Mall and went to IG Bryan's office. Keck Upchurch, Investigative Agent V was also present. Mr. Bryan stated, "This is very hard for me. I have known you for 20 years." He then handed me a letter and said:

"This is my decision. The buck stops here. I have the authority to tell you that you are a probationary employee and today at 5:00pm will be your last day."

I said, "I don't understand." Mr. Bryan said again that he had the authority to tell me that I was probationary and was being discharged that day at 5:00pm. I began to get upset and asked if there was a problem with my work. Mr. Bryan indicated that my work was not at issue. It was obvious he was not going to provide a reason.

Mr. Upchurch left the room to get a box of tissue when Mr. Bryan leaned forward and said, "Be careful what you put on your applications." I told Mr. Bryan there was no problem with my application and I had been truthful about everything. Mr. Upchurch returned and Mr. Bryan said nothing further. I composed myself, there was some discussion about my getting my things, and how I was going to leave the building. I told Mr. Bryan that I appreciated him taking a chance to hire me back and I shook his hand and left his office.

Although Mr. Bryan gave no "official" reason for my discharge I have since been told that I was terminated for lying on my application. I dispute that there was any lie on my application. There was a background investigation prior to my employment. During that investigation, I explained my departure from ODMHSAS very specifically. I have evidence which supports my explanation.

On the application form, which I completed for the position of Investigative Agent III with the DHS Office of Inspector General as well as the position I held prior to that (Social Services Inspector II), there is a question on page three (3) which asks, "Have you ever resigned in lieu of termination?" I answered, "Yes." It is my understanding that my answer is now the basis for this discharge.

I have also learned that others have been reprimanded for failure to "detect my lie" on my application. Again I believe the evidence which I have supports my explanation of the circumstances of my departure from ODMHSAS and proves that my termination from DHS was politically motivated as was the reprimand given to other employees.

I believe I have been wrongfully discharged from the Oklahoma Dept. of Human Services. This discharge is in violation of the following rules/state and federal laws:

## EXHIBIT 2

• My rights under the 1st Amendment to the US Constitution and Article 22 of the Oklahoma Constitution including the right to Freedom of Speech and access to the Press

• Civil Rights Act of 1964 – Gender discrimination

• Retaliation for speaking out about wrongdoing occurring in the Oklahoma State Government ODMHSAS and in facilities which they oversee.

• Whistleblower Act violations for speaking out about wrongdoing occurring in the Oklahoma State Government ODMHSAS and in facilities which they oversee.

On Tuesday, August 19, 2014, News Channel 9 ran an on-air story at 5:00pm regarding the lawsuit I have filed against the ODMHSAS alleging among other things wrongful discharge, violation of 42 U.S.C. §1983, and multiple violations of state law. On Tuesday August 19, 2014, www.TonyOrtega.com via the Underground Bunker online magazine ran a story regarding the lawsuit against ODMHSAS. On Wednesday, August 20, 2014, both the Tulsa World and the Daily Oklahoman ran full length print stories regarding the lawsuit.

On August 20, 2014, Tony Bryan requested my employment file from my immediate supervisor, Rick McCoy, Investigative Agent 5.  On Friday, August 22, 2014, I was discharged from duty.

During my time at DHS (1/7/14 – 8/22/14) I received no negative feedback in regards to my performance.  In fact, at the same time I was offered the job at the Office of Inspector General, I was also offered a Field Representative position at the DHS Training Center in Norman.

This discharge appears to be wholly due to my lawsuit against another state agency and the press that lawsuit had received.

## EXHIBIT 2

OES-461

# APPEAL TRIBUNAL
## OKLAHOMA EMPLOYMENT SECURITY COMMISSION
### P.O. BOX 53345
### OKLAHOMA CITY, OK 73152

In re: Claim of: SSA.

Docket No. 14-13689

KIMBERLY M POFF

OK DEPT OF HUMAN SERVICES
ATTN DALE MOORE HRMD 1ST FL
PO BOX 25352
OKLAHOMA CITY OK   73125-0352

## ORDER OF DECISION

Now on OCTOBER 16, 2014, this cause comes on for consideration pursuant to regular assignment and hearing on OCTOBER 13, 2014, before PAMELA C. DOWD, HEARING OFFICER, at 1:42 P.M. by telephone at which time the claimant appeared and was represented by Rachel Bussett, Attorney.  The employer appeared represented by Dale Moore, Human Resource Program Manager.  The Commission was not represented.  The issue to be resolved is whether the claimant was discharged for a reason amounting to misconduct connected with the work.

The Appeal Tribunal having considered the evidence and records on file, FINDS AND ORDERS AS FOLLOWS:

-1-

That on SEPTEMBER 16, 2014, the claimant appealed the Commission's determination denying unemployment benefits under Section 2-406 of the Oklahoma Employment Security Act by finding that the claimant was discharged from employment for misconduct connected to the work.

-2-

The claimant was employed full-time as an Investigative Agent III from May 1, 2014, to August 23, 2014, when she was discharged for dishonesty.  The final incident occurred when the employer accused the claimant of lying on her application for employment.

-3-

The employer was made aware on August 18, 2014, after a news story broke in local newspapers and on local television that the claimant filed a wrongful termination lawsuit against her previous employer, the Department of Mental Health.  When asked the reason for her separation from her previous employer on her application for this position, the claimant answered that she resigned.  Further into the application when asked if she had ever resigned in lieu of termination, the claimant answered that she had with the Department of Mental Health.  This employer discharged her for lying about the nature of her separation by indicating she had resigned, when she had been discharged.  The claimant was working as a Cleet-certified law enforcement officer, making honesty and integrity an necessary component of the job.

PCD/KT

Continued on page 2

# EXHIBIT 2

-4-

At the time of her termination from the previous employer, which occurred on a Friday afternoon, the claimant requested to be allowed to resign in lieu of termination. She wanted to discuss it with her attorney which could not e done until the following Monday.  The employer went ahead and gave her the termination letter with the understanding that she had until close of business on the following Monday to submit a resignation.  The attorney sent an extensive letter to the employer on the following Monday detailing the reasons why she felt that the claimant had been wrongfully terminated. The letter did not state that she resigned, but mentioned it as a subject of negotiation, while listing demands to be met before the claimant would agree to resign. The letter was not conciliatory at all, but was a demand letter listing potential legal action if they were not met. The employer did not respond to the demands, and the claimant never submitted a written resignation.

-5-

This employer conducted an extensive investigation into the claimant's background prior to hiring her for the investigative agent position. The employer asked the claimant about her separation from the previous employer, and the claimant made them aware of the termination and her request to resign in lieu of termination.  This employer was aware of the circumstances under which the claimant left her previous job on May 1, 2014. The employer's witness was not aware of the investigation, and the persons who conducted it were not present at the hearing to dispute the claimant's version of that proceeding.

-6-

Section 2-406 of the Oklahoma Employment Security Act provides
(A) An individual shall be disqualified for benefits if he or she has been discharged for misconduct connected to his or her last work. If discharged for misconduct, the employer shall have the burden to prove that the employee engaged in misconduct as defined by this section.  Such burden of proof is satisfied by the employer, or its designated representative providing a signed affidavit, or presenting such other evidence, which properly demonstrates the misconduct which resulted in the discharge.  Once this burden is met, the burden then shifts to the discharged employee to prove that the facts are inaccurate or that the facts as stated do not constitute misconduct as defined by this section.
(B) "Misconduct" shall include, but not be limited to, the following: 1. Unexplained absenteeism or tardiness;  2. Willful or wanton indifference to or neglect of the duties required; 3. Willful or wanton breach of any duty required by the employer; 4. The mismanagement of a position of employment by action or inaction; 5. Actions or omission that place in jeopardy the health, life, or property of self or others; 6. Dishonesty; 7. Wrongdoing; 8. Violation of a law; or 9. A violation of a policy or rule adopted to ensure orderly work or the safety of self or others.
OKLA. STAT. tit. 40, § 2-406. [Effective 11-1-13]

-7-

The claimant was discharged for dishonesty. The employer has the burden of proof to show willful misconduct connected to the work. More than mere allegations of wrongdoing or hearsay testimony is required to meet that burden. There is no doubt that the claimant did misrepresent her previous job separation on her application to the employer by stating she resigned. She did, however, also state that she resigned in lieu of termination, which should have, and apparently did, give the employer a heads-up to ask more questions about it. The claimant cannot have it both ways. She also filed a wrongful termination lawsuit. She cannot state that she resigned and then claim she was discharged. The evidence is clear that she did not have the option of keeping her job. She was given until Monday to submit a resignation. She did not do that. Instead, her representative attempted to negotiate the terms of her resignation through threats of litigation. The employer was not obligated to accept those terms, and did not. Instead, they let the termination stand. That letter was not a resignation letter. The claimant should have been aware of this.

10/16/14
1413689/PCD/KT

Page 2 of 3 Pages

**EXHIBIT 2**

-8-

While the claimant somewhat misrepresented herself in her application, the first-hand unrefuted evidence presented by the claimant shows that the employer conducted an extensive background investigation, which included questions of the claimant regarding the separation. The burden of proof shifts back to the employer to dispute the claimant's assertions that the employer was aware. The employer presented no first-hand evidence to the contrary. The employer chose to hire her with the knowledge of the previous separation, and did not discharge her until shortly after the news story broke about her lawsuit. The employer is therefore, estopped from claiming her discharge was due to dishonesty since the employer was made aware of the situation prior to hire and hired her anyway. The claimant may have been discharged for business reasons, but the burden of proof has not been met to show it was for willful misconduct connected to the work.

-9-

The Commission's determination is REVERSED. The claimant is qualified for benefits effective AUGUST 17, 2014, provided the claimant meets all other requirements of the Act.

BY ORDER OF:

PAMELA C. DOWD, HEARING OFFICER

Copy to: APPELLANT
APPELLEE

RACHEL BUSSETT ATTORNEY
3555 NW 58TH STE 1010
OKLAHOMA CITY OK 73112

## APPEAL RIGHTS

This decision becomes final and binding on all parties to the appeal unless, within ten (10) calendar days of the certified date of mailing stated below, an appeal is filed with the Board of Review. [OKLA. STAT. tit. 40, Sec. 2-605]

The appealing party must file a written appeal directly to the Board of Review by either delivering the appeal to the BOARD OF REVIEW at 2401 North Lincoln Boulevard, 5th Floor Reception, OKLAHOMA CITY, OKLAHOMA 73105 within ten (10) calendar days of the certified mailing date of the Appeal Tribunal Decision or, by mailing the written appeal to the BOARD OF REVIEW at P.O. BOX 53345, OKLAHOMA CITY, OKLAHOMA 73152 or, by TELEFAX (405) 962-7540. Any appeal filed by mail must be postmarked no later than ten (10) calendar days after the date of the certified mail date of the Appeal Tribunal Decision. [OAC 240:15-3-3]

## FURTHER INSTRUCTIONS TO THE CLAIMANT

You must continue to file weekly claims and report to the Commission as directed while your claim is on appeal.

## CERTIFICATE OF MAILING

I certify that on ___10-16-14___ I personally placed copies of this decision in the United States mail in envelopes addressed to the claimant and/or employer at their respective addresses shown on the decision. Said envelopes were sealed and bore indicia of proper postage paid.

PBooth

10/16/14
1413689/PCD/KT

Page 3 of 3 Pages

# EXHIBIT 2

Enclosure with EEOC
Form 161-B (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --  Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --  Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10 -- not 12/1/10 --** in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --  Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

## EXHIBIT 2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 564-2015-00159 |
| | | and EEOC |

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.)<br>**Ms. Kimberly M. Poff** | Home Phone (Incl. Area Code)<br>**(405) 408-7617** | Date of Birth |
|---|---|---|
| Street Address | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**OKLAHOMA DEPARMENT OF HUMAN SERVICES** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(405) 522-5880** |
|---|---|---|
| Street Address<br>**2401 N.W. 23rd St., Ste 1,  Oklahoma City, OK 73107** | City, State and ZIP Code | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest: **08-22-2014**  Latest: **08-22-2014** |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On or about January 7, 2014, I was hired as a Social Services Inspector II. During my employment I have been subjected to unfair treatment and retaliation By Tony Bryan and Ed Lake, Director, In that, I filed a charge of discrimination against the Oklahoma Dept. Of Mental Health & Substance Abuse Services and subsequently once the Oklahoma Department Of Human Services became aware of the charge I was discharged.

I believe that I have been retaliated against for filing a charge of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| **Nov 07, 2014**  _[signature]_<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT
**3**

**EXHIBIT 2**

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.    **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

## EXHIBIT 2



**3555 NW 58th St. Suite 1010**
**Oklahoma City, OK 73112**
**Phone: (405) 605-8073**
**Fax: (405) 601-7764**
**www.BussettLaw.com**

August 26, 2013

**VIA EMAIL AND HAND DELIVERY**
Via Email: tlwhite@odmhsas.org
Terri White
Commissioner
Ok. Dept. of Mental Health &
Substance Abuse Services
1200 N.E. 13th Street
P.O. Box 53277
Oklahoma City, OK 73152

Via Email: dcrosby@odmhsas.org
Durand Crosby
Chief Operating Officer
Ok. Dept. of Mental Health &
Substance Abuse Services
1200 N.E. 13th Street
P.O. Box 53277
Oklahoma City, OK 73152

Re:   Termination of Kimberly Poff, 8/23/13

Dear Ms. White & Mr. Crosby,

This letter is to advise you that the undersigned has been retained to represent Ms. Kimberly Poff regarding her termination from the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS,). I am writing this letter, hoping to reach a resolution to this matter without the need to resort to filing a claim with the EEOC and litigation in the District Court of Oklahoma County. Per your request, this letter is being submitted before 5 o'clock p.m. on August 26, 2013. After interviewing Ms. Poff, I believe she has been the victim of age discrimination, gender discrimination, retaliation and violations of the Whistleblower Act. Ms. Poff's termination is illegal and the alleged violations serve as a pretext for her refusal to change the findings of her investigations in high profile investigations.

**Factual Background**

Ms. Poff has been an employee of the State of Oklahoma for 22 years. For the last 5 years, 8 months she has worked for the ODMHSAS. Prior to her employment with ODMHSAS, she was employed by DHS as a Social Services Investigator, where she investigated claims of fraud and employee misconduct. During her time with DHS she received regular positive reviews, raises, and promotions. In 2007, she came to work for ODMHSAS as the Inspector General. During her tenure at ODMHSAS, she has received two raises, five commendations for her performance, and an employee of the month award. She has never been disciplined, demoted or otherwise questioned with regard to her competency, quality or professionalism in the performance of her job. The punishment imposed for the alleged infractions are not merited given her long and outstanding job performance.

**EXHIBIT 4**

**EXHIBIT 2**

Ms. Poff's job as the Inspector General is to investigate allegations of misconduct, discrimination, and consumer abuse and to report the outcome of her investigation to Leadership and ODMHSAS Board. As Inspector General, it was Ms. Poff's job to investigate misconduct not only within State Operated facilities but also within management and staff of the ODMHSAS. Over the last five years, Ms. Poff has been privy to numerous confidential investigations and inquiries and at no time has she inappropriately divulged confidential information or used such information for her own gain.

In 2011, Mr. Durand Crosby made the decision to move the Office of the Inspector General from their offices which were located in the same building, but in a separate private space, into the offices of the Legal Division. Mr. Crosby also made the decision that the Inspector General and her staff would share support staff with the legal division. Once the two offices were combined there was no way to maintain "confidentiality,, of investigations between the two divisions. In fact, confidential information regarding cases with the Inspector General's Office and the Legal Division were discussed freely and Leadership encouraged this free flow of information between the two departments. Ms. White alleges that Ms. Poff merits termination because she breached confidentiality on investigations. However, Ms. Poff denies discussing any confidential information regarding any of her current or former investigations outside of the environment that Mr. Crosby and ODMHSAS Leadership created for her to work in. Further, to the extent that the allegations relate to the investigation of sexual harassment against Chris Flanagan, neither Ms. Poff nor her investigator was in charge of this investigation. Therefore, she could not breach confidentiality of an investigation that she was not working on.

There has existed within Central Office a culture of gossip and key employees freely discussing confidential information. The Central Office is made up of the Executive Leadership, Legal Division, Human Resources, Finance, Inspector General's Office, and other departments located at the 13th Street Office and the Shepherd Mall Office. For example, allegations were made regarding alleged sexual misconduct of a high level employee within the department with a member of his staff. The misconduct was well known and freely discussed among the employees. This matter was swept under the rug with the high ranking employee receiving no discipline and given a raise while the employee with which he was having an affair was transferred into a new position which was created specifically for her and was given a raise. There was never a full and independent investigation into the allegations which were well known among the Staff of the Department. In fact, it is generally believed that ODMHSAS Leadership covered up the transgressions and bought off a complaint of harassment by moving the employee to a better job. This is but one example of the way in which gossip and other information traveled through the Central Office and of conduct exhibited by key leadership employees with ODMHSAS with regard to favored employees.

Ms. Poff has been treated significantly less favorably compared to male employees of ODMHSAS who underwent similar investigations and suspensions. At least four other male management employees, in addition to the one above, had multiple allegations against them of severe misconduct that included falsification of documents, fraud, hostile, offensive, and intimidating work environment, sexual harassment, consumer abuse, racial and sexual discrimination and other inappropriate conduct. Yet, none of these employees were treated as harshly as Ms. Poff has been treated.

**EXHIBIT 2**

There are many other examples of less favorable treatment of Ms. Poff in comparison to other employees. Approximately one year ago, ODMHSAS developed a master's degree program for employees. Not only was Ms. Poff not offered an opportunity to participate despite asking Terri White about it, she was directly excluded from consideration based upon her age. Ms. Poff was 44 years old years old at the time of the discrimination. Under the existing retirement rule of 80, Ms. Poff would first be eligible for retirement effective October 2019. When Ms. Poff asked HR Director Ellen Buettner why she was excluded, Ms. Buettner stated that "she knew that Ms. Poff was eligible to retire in six years, and leadership did not even consider her because they "just thought,, she wasn't interested., This is clearly age discrimination. Ms. White, who would have been among the "Leadership,, making the decision, specifically knew that Ms. Poff was interested in this program yet Ms. Poff was excluded because she was close to retirement age.

The investigation, suspension, and termination of Ms. Poff is the culmination of a systematic and intentional attempt to eliminate agency oversight of Leadership's decisions. Ms. Poff has issued findings regarding her investigations that have, at times, directly contradicted Leadership's desired outcomes. On several occasions, it has been suggested to Ms. Poff by Mr. Crosby that she change her findings when he disagreed with outcome that she reached. Ms. Poff does not dispute the right of the Legal Department or Leadership to make the decision whether to pursue certain findings, but Ms. Poff disputes the authority of Mr. Crosby or others to order her to change the outcome or findings of her investigations.

Ms. Poff has legitimate knowledge of recent cases involving high profile respondents and sensitive allegations against executive management members. For example, Ms. Poff knows that the department is suppressing the investigative report on NARCONON and knows the details of the sexual harassment complaints involving General Counsel Dewayne Moore. We believe this information is being suppressed because Mr. Moore is a personal friend of Mr. Crosby and the department is afraid that NARCONON will file a lawsuit against it if the department takes the lawful and moral action to shut the center down. We believe that ODMHSAS's desire to suppress this knowledge resulted in the investigation into trivial accusations of alleged wrongdoing by Ms. Poff and created the pretext for wrongful termination.

Leadership claims that the Inspector General's office is no longer able to conduct unbiased investigations without an agenda. However, Leadership is terminating Ms. Poff and others in an attempt to orchestrate investigations and manipulate outcomes to its desired conclusion, to protect the department from media and governmental scrutiny and show it in the best possible light. When Ms. Poff and her investigators refused to bow to the demands of manipulated investigations, Leadership decided to render the Inspector General's office powerless by terminating the two most senior members of the department and placing an investigator with four months of experience in charge of these sensitive investigations. This is discriminatory and unlawful.

### Legal Analysis

### Age Discrimination

The Age Discrimination in Employment Act of 1967 (ADEA), as amended by the Age Discrimination in Employment Act Amendments of 1978 and 1986 and the Older Workers Benefit Protection Act in 1990, forbids discrimination in employment because of age. 29 U.S.C.A. § 621 et seq. Employers cannot discriminate against persons covered by the Act in

### EXHIBIT 2

hiring, firing, or any terms, conditions, or privileges of employment; nor can they limit, segregate, or classify employees on the basis of age. Ms. Poff was not allowed to participate in nor was she considered for the Master's Program, which would be considered an employee benefit, because she was approaching retirement age despite her specifically asking to be considered. The law expressly prohibits such conduct. *See* 29 U.S.C.A. 623(a)(2) (it is age discrimination for an employer to "classify his employees in any way which would deprive the individual of employment opportunities...because of such individual's age.,,).

**Gender Discrimination**

Title VII of the Civil Rights Act of 1964 (as amended by the Civil Rights Act of 1968, the Equal Employment Opportunity Act of 1972, the Pregnancy Discrimination Act of 1978, and the Civil Rights Act of 1991) is designed to regulate employment practices. Discrimination based on sex in hiring, firing, wages, terms, conditions, or privileges of employment is an "unlawful employment practice,, under the law. The unequal imposition of discipline is unlawful discrimination, and an employer is liable if the employee "(1) was a member of a protected group, (2) there was company policy or practice concerning the activity for which he was disciplined; (3) nonminority employees either were given the benefit of a lenient company practice or were not held to compliance with a strict company policy; and (4) the minority employee was disciplined either without the application of a lenient policy, or in conformity with a strict one.,, *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1988). Investigations and disciplinary actions against male employees for allegations similar to those raised against Ms. Poff did not result in their termination. In fact, male employees engaged in severe misconduct received moderate punishment, yet Ms. Poff was terminated for what is otherwise a minor infraction based on the alleged conduct.

**Retaliation for refusal to change the findings of her investigations.**

An employee or job applicant cannot be discriminated against because the individual has made a charge, testified, assisted, or participated in an investigation, proceeding or hearing under the law or has opposed any practice made unlawful by Title VII. 42 U.S.C.A. § 2000e *et. seq.* This protection against retaliation has been strictly interpreted and enforced by the federal courts. Forcing Ms. Poff to reword her board reports to claim that the investigation was still after pending, when her investigation of NARCONON was complete, is a violation of Ms. Poff's rights to comment on a matter of public concern, and the investigation and termination of Ms. Poff is retaliation for her exercising her protected rights. *See Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) (public employee's reports to his superiors regarding his concerns that building inspection department was not properly discharging its governmental responsibilities, constituted comment on matter of public concern entitled to First Amendment protection absent demonstrated adverse impact on department's operations). Her comments regarding the gross negligence of NARCONON, an inpatient medical facility, which is already under investigation by numerous agencies for violations of statutory and administrative regulations, is a matter of public concern. The agency is taking steps to suppress the findings because it is afraid of being sued when it is this agency's explicit purpose to protect the citizens of Oklahoma. The conduct of ODMHSAS with regard to the suppression of the NARCONON investigation is simply outrageous!

# EXHIBIT 2

**Violations of the Whistleblower Act.**

The Oklahoma Whistleblower Act provides internal and external whistleblower protection to classified and unclassified state employees that "report wrongful governmental activities and deters retaliation against state employees for reporting those activities,,. 74 O.S. § 840–2.5. Activity that is protected under the Whistleblower Act includes the reporting of "a substantial and specific danger to public health or safety.,, *Id.* § 840–2.5(B)(2). *See also Vasek v. Bd. of Cnty. Comm'rs of Noble Cnty.*, 2008 OK 35, 186 P.3d 928, 933 (to state claim for wrongful discharge under public policy exception to at-will employment doctrine, plaintiff must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal). Ms. Poff's investigations into NARCONON and repeated instances of sexual harassment by high ranking employees in the ODMHSAS are protected under the Oklahoma Whistleblower Act and her termination is a direct violation of this state law.

**Settlement Demand**

The Department staff has acted maliciously, willfully and wantonly toward Ms. Poff and as a result, violated ODMHSAS policy, state and federal laws. As a government employee, Ms. Poff has a protected property interest in her job and is entitled to due process before termination. Nothing ODMHSAS has been done in this case rises to the level of satisfying the due process requirements. I believe that if an EEOC claim is filed and litigation is pursued, a jury will find that the ODMHSAS has committed age discrimination, gender discrimination, retaliation and violations of the Whistleblower Act entitling her to actual damages for lost past and future wages and benefits, emotional distress, damage to reputation, and punitive damages for the malicious and willful violation of her rights.

You are also requested to preserve and produce the following materials to me for my client on or before 9/1/2013: copies of the notification of rights and rights and responsibilities forms signed by my client; copies of the investigative interview with Ms. Poff and Mr. Milnes dated 8/7/13; a notice of the investigative outcome regarding Ms. Poff; and produce the materials taken from Ms. Poff's office for a review of the materials by Ms. Poff in the presence of myself and a representative of ODMHSAS for Ms. Poff to obtain her personal materials and certificates. You are also under notice to preserve all electronic data including emails, text messages and other documentation related to the investigation against Ms. Poff and the investigations Ms. Poff was actively working on during her employment.

## EXHIBIT 2

Lastly, this letter shall serve as my request that this matter be placed on the September 27, 2013, ODMHSAS Board Meeting agenda to discuss Ms. Poff's wrongful termination. If this matter is not resolved before August 30, 2013, a copy of this letter will be sent to the Board Members for ODMHSAS for their review and consideration.

Thank you for your attention to this matter. I look forward to receiving a prompt response to this letter. If you have any questions or need additional information, please do hesitate to contact me.

Sincerely,

Rachel Russell

cc: Kim Poff, via email

**EXHIBIT 2**

State of Oklahoma
Department of Human Services

**OKDHS Grievance Form**
See DHS:2-1-150

**Instructions.**

Please type or print and complete the entire form. You **must** submit the original and two copies to the grievance manager located on the first floor of the Sequoyah Building, P.O. Box 25352, Oklahoma City, OK 73125-9975 within **20 calendar days** of the incident or event. Provide copies to your immediate supervisor, local administrator or county director, and the employee whom the grievance is against.

Name: Kimberly M. Poff _____

User identification (ID) number: U42515 _____

Classification: Probationary Classified _____

Work location/shift: OIG Shepard Mall 7:30-4 _____

Work Phone: _____

Home phone. _____

Address where confidential mail is to be sent: _____

—

Supervisor: Rick McCoy _____

Phone: (405) 522-2408 _____

**Employee's statement of grievance.**
Describe all pertinent facts regarding your grievance. Be specific, but brief. Include who was present, what happened, where it happened, when it happened or when you found out about it, and how your rights were violated. Attach additional pages if necessary

On May 1, 2014, I began working at the Office of Inspector General ("OIG") for the Department of Human Services. Prior to my employment with OIG a full and complete background investigation was performed on me. This background investigation included a review of my personnel file and contacting my former employer at the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS").

On August 22, 2014, I received a text from Keck Upchurch asking me to return to the OIG office because Tony Bryan, Inspector General ("IG") wanted to see me in his office.

I returned to Shepherd Mall and went to IG Bryan's office. Keck Upchurch, Investigative Agent V was also present. Mr. Bryan stated, "This is very hard for me. I have known you for 20 years." He then handed me a letter and said:

1



EXHIBIT

5

**EXHIBIT 2**

"This is my decision. The buck stops here. I have the authority to tell you that you are a probationary employee and today at 5:00pm will be your last day."

I said, "I don't understand." Mr. Bryan said again that he had the authority to tell me that I was probationary and was being discharged that day at 5:00pm. I began to get upset and asked if there was a problem with my work. Mr. Bryan indicated that my work was not at issue. It was obvious he was not going to provide a reason.

Mr. Upchurch left the room to get a box of tissue when Mr. Bryan leaned forward and said, "Be careful what you put on your applications." I told Mr. Bryan there was no problem with my application and I had been truthful about everything. Mr. Upchurch returned and Mr. Bryan said nothing further. I composed myself, there was some discussion about my getting my things, and how I was going to leave the building. I told Mr. Bryan that I appreciated him taking a chance to hire me back and I shook his hand and left his office.

Although Mr. Bryan gave no "official" reason for my discharge I have since been told that I was terminated for lying on my application. I dispute that there was any lie on my application. There was a background investigation prior to my employment. During that investigation, I explained my departure from ODMHSAS very specifically. I have evidence which supports my explanation.

On the application form, which I completed for the position of Investigative Agent III with the DHS Office of Inspector General as well as the position I held prior to that (Social Services Inspector II), there is a question on page three (3) which asks, "Have you ever resigned in lieu of termination?" I answered, "Yes." It is my understanding that my answer is now the basis for this discharge.

I have also learned that others have been reprimanded for failure to "detect my lie" on my application. Again I believe the evidence which I have supports my explanation of the circumstances of my departure from ODMHSAS and proves that my termination from DHS was politically motivated as was the reprimand given to other employees.

I believe I have been wrongfully discharged from the Oklahoma Dept. of Human Services. This discharge is in violation of the following rules/state and federal laws:

- My rights under the 1st Amendment to the US Constitution and Article 22 of the Oklahoma Constitution including the right to Freedom of Speech and access to the Press

- Civil Rights Act of 1964 – Gender discrimination

- Retaliation for speaking out about wrongdoing occurring in the Oklahoma State Government ODMHSAS and in facilities which they oversee.

- Whistleblower Act violations for speaking out about wrongdoing occurring in the Oklahoma State Government ODMHSAS and in facilities which they oversee.

On Tuesday, August 19, 2014, News Channel 9 ran an on-air story at 5:00pm regarding the lawsuit I have filed against the ODMHSAS alleging among other things wrongful discharge, violation of 42 U.S.C. §1983, and multiple violations of state law. On Tuesday August 19,

2

## EXHIBIT 2

2014, www.TonyOrtega.com via the Underground Bunker online magazine ran a story regarding the lawsuit against ODMHSAS. On Wednesday, August 20, 2014, both the Tulsa World and the Daily Oklahoman ran full length print stories regarding the lawsuit.

On August 20, 2014, Tony Bryan requested my employment file from my immediate supervisor, Rick McCoy, Investigative Agent 5. On Friday, August 22, 2014, I was discharged from duty.

During my time at DHS (1/7/14 – 8/22/14) I received no negative feedback in regards to my performance. In fact, at the same time I was offered the job at the Office of Inspector General, I was also offered a Field Representative position at the DHS Training Center in Norman.

This discharge appears to be wholly due to my lawsuit against another state agency and the press that lawsuit had received.

**Cite any rules, law, policies procedures, or practices you believe were violated.**

Informal Discussion.
Who did you talk with to try to resolve the dispute informally?   See above. No opportunity was given for informal discussion as Mr. Bryan stated in a very matter-a-fact way that I was being terminated.

Your immediate supervisor: Rick McCoy
Your reviewing supervisor: Chief Agent George Tipton
Other person with authority to resolve the issue: Tony Bryan Inspector General
Name and job title of person you talked to: Tony Bryan Inspector General

Date of the discussion: 08/22/2014                    Location: Shepherd Mall OIG Office

Result of informal discussion: See above.

**Mediation.** See DHS:2-1-168
Would you agree to mediation?             X Yes    No

If yes, complete Form P-S-97, Request for Mediation Session, and submit with Form P-11

See Attached.

**Remedy.**
State the remedy or relief you are seeking from this grievance.

Reinstated to employment with full back pay and benefits.   No reprimand for misconduct.  Credit towards all benefits as if no break in service occurred.

3

# EXHIBIT 2

**Representation.**

If you wish to be represented by another person in discussions to resolve your formal grievance, please list the representative's name, telephone number, and address:

Rachel Bussett
Attorney at Law
Bussett Law Firm, P.C.
3555 N.W. 58th St., Suite 1010
Oklahoma City, OK 73112
(405) 605-8073
(405) 601-7764 fax
Rachel@bussettlaw.com

_____                    _____
Kimberly Poff                                                              Date

4

**EXHIBIT 2**

   

**Oklahoma's Own**

      Log In | Send Us News Tips | Contact Us

News    Weather    Sports    Video    Recipes    Share    Lifestyle    Community    Contests

# State Investigators Of Narconon Arrowhead Say They Were Wrongfully Fired

Posted: Apr 18, 2014 5:30 PM CDT  Updated: Apr 18, 2014 5:32 PM CDT

BY DANA HERTNEKY, NEWS 9  BIO  EMAIL

OKLAHOMA CITY - The Department of Mental Health and Substance Abuse started investigating Narconon Arrowhead in July 2012 after three people died at the facility in nine months' time. More than a year later, the agency fired Inspector General Kim Poff, and Michael DeLong another investigator in the Narconon case.

"They were terminated back in August 2013, no particular reason was given for their termination," said their attorney Rachel Bussett.

Both have not filed EEOC complaints saying they were wrongfully terminated. Bussett says, because of the current investigation she can't say much about their case, but believes they know the real reason why the two employees were fired.

10/30/2012 Related Story: Exclusive: Inside Narconon, CEO Answers Accusations About Deaths In Rehab

"Their termination, in part, relates to the Narconon Investigation."

Family members of those who died at the facility have become increasingly frustrated with a lack of results from the state investigation. But Robert Murphy, whose daughter Stacey died at the facility says Poff was the only one doing any investigating.

"In my opinion, Kim Poff was another victim of the abuses of Narconon Arrowhead and the Oklahoma Department of Mental Health and Substance Abuse Service not protecting the public," said Murphy.

The EEOC has 180 days to investigate the complaint, before Poff and Delong can file a lawsuit against the state.

A State Department of mental health spokesman said they cannot comment on personnel matters. He says the Department of Mental Health has completed their investigation and turned their findings over to the Attorney General's office.

10/24/2012 Related Story: McAlester Drug Rehab Center Narconon Targeted In 3rd Wrongful Death Suit

9/20/2012 Related Story: Narconon Records Could Prove Oklahoma Employee Misconduct

**From The Web**                                                    Sponsored Links by Taboola



**EXHIBIT**

_6_

**EXHIBIT 2**

Case 5:15-cv-00936-R   Document 1-2   Filed 08/31/15   Page 40 of 54

12/29/2014      Narconon Investigators Sue Department Of Mental Health And Subst - News9.com - Oklahoma City, OK - News, Weather, Video and Sports |





## Narconon Investigators Sue Department Of Mental Health And Substance Abuse

*Posted: Aug 19, 2014 4:44 PM CDT  Updated: Aug 19, 2014 5:23 PM CDT*

BY DANA HERTNEKY, NEWS 9  BIO  EMAIL

OKLAHOMA CITY - Investigators say the Scientology-based drug treatment center Narconon Arrowhead, located on Lake Eufaula, violated numerous state laws and should be shut down. But they also say the Oklahoma State Department of Mental Health and Substance Abuse hid the results of that investigation, and did nothing.

Former Inspector General Kim Poff and Michael DeLong, the two highest ranking investigators with the agency, say they were fired after they objected to the state keeping the findings of their investigation secret and they have now filed a wrongful termination suit.

In 2012, after three people died in nine months' time at the Narconon Arrowhead drug treatment facility, the State Department of Mental Health and Substance Abuse launched an investigation. A full year later in August of 2013, family members were still waiting for answers and the agency told News 9 they were still investigating.

But in the lawsuit filed by Poff and Delong the investigators in the case say they finalized their investigation in the fall of 2012, and "determined that the NARCONON facility violated numerous state laws and recommended that the facility be shut down by ODMHSAS."

"It's kind of what I suspected all along," said Robert Murphy. His daughter Stacey died at the facility.

"Their overall recommendation was maybe Narconon should be shut down because people were dying and things weren't happening the way they were supposed to," said Rachel Bussett who represents Poff and DeLong who were in charge of the Narconon Investigation.

They allege in the lawsuit that leadership at the agency, including Commissioner Terry White, "attempted to hide the findings of Ms. Poff and Mr. DeLong by telling Ms. Poff to advise the Board of Directors for ODMHSAS that the report and investigation were still pending." Their belief is "because the Department did not want to get involved with litigation involving the Church of Scientology."

"They didn't want to take on the Church of Scientology," said Bussett.

But Poff and DeLong say when there were vocal and upset that action wasn't being taken against the center. They were fired.

"You have an obligation as a state to protect people, and yea money's a problem for everybody but lives are important and they should have figured it out and they shouldn't have fired the people who were trying to figure it out for them," Bussett said

**From The Web**                                                    Sponsored Links by Taboola

EXHIBIT
7

**EXHIBIT 2**

« Narconon's cancer spreads: New lawsuits and a court order for Scientology's
rehab network

Scenes from the Scientology underground »

# LAWSUIT: OKLAHOMA OFFICIALS HID WRONGDOING AT SCIENTOLOGY DRUG REHAB

An explosive lawsuit has been filed by a former Oklahoma state inspector general who says she was fired because, in part, she found evidence of illegal wrongdoing at Scientology's drug rehab that her bosses then told her to hide.

Kimberly Poff was Inspector General at Oklahoma's Department of Mental Health and Substance Abuse Services and had worked for the agency for more than 5 years and the state for more than 22 years when she and her employee Michael DeLong were asked to investigate recent deaths at Scientology's flagship facility of its Narconon drug rehab network, Narconon Arrowhead. [UPDATE: DeLong is also suing, and we have his petition, below.]

According to her legal complaint, "As a result of their investigation, Ms. Poff and Mr. DeLong determined that the Narconon facility violated numerous state laws and recommended to leadership that the facility be shut down." Her finalized report on the investigation was submitted by the fall of 2012.

But Poff alleges that her bosses attempted to "hide the findings" of her report by telling her to advise the department's board of directors that "the report and investigation was still pending."

Why? Because, Poff alleges, her bosses "buried the report, recommendations and findings of Ms. Poff & Mr. DeLong because the Department did not want to get involved in litigation involving the Church of Scientology."

Poff says she complained about that, and she believes her principled stand was one of the reasons she was fired: "Ms. Poff & Mr. DeLong were very vocal in 2012 and 2013 about their objection to ODMHSAS's decision to bury the report and Ms. Poff believes her objection to the decision to bury the findings of the Narconon investigation directly relate to her termination by the Department."

Kim Poff

Specifically, Poff says she was investigating the 2011 death of Gabriel Graves and the 2012 deaths of Hillary Holten and Stacy Murphy when she "determined that Narconon violated numerous state laws and recommended that the facility be shut down by" the state.

She alleges that the leadership of the department "was afraid to take on Narconon in litigation because there is significant financial backing of the facility by the church of Scientology."

She's also suing for sex and age discrimination, and alleges that another reason she was fired was related to her knowledge of sexual harassment complaints made against a supervisor. We've put in a call to Poff's attorney, Rachel Bussett, and hope to get more detail soon.

Here are the petitions [NOW UPDATED WITH EXHIBITS]...


Kimberly Poff v. Oklahoma Dept Mental Health: Petition w Exhibits


SHOW ME MORE LIKE KIMBERLY POFF V. OKLAHOMA DEPT MENTAL HEALTH: PETITION W EXHIBITS
SIMILAR TO KIMBERLY POFF V. OKLAHOMA DEPT MENTAL HEALTH: PETITION W EXHIBITS
BACK TO DOC
Browse more like Kimberly Poff v. Oklahoma Dept Mental Health: Petition w Exhibits
Previous | Next
Michael DeLong v Oklahoma Mental Health: Petition
Tony Ortega
Gennacopulos v. Narconon Order
Tony Ortega
Menafee v Booty Outreach: Exhibit 1 Running an Effective Narconon
Previous | Next
Barry Narconon Order denying motion to dismiss
Tony Ortega
Renamed Narconon Order dismissing federal claim
Tony Ortega
Ouida Nix: Exhibit C -- Eric Tenorio affidavit
Tony Ortega
Garcia v Scientology: Reply to Motion for Protective Order
Tony Ortega
Garcia v Scientology: Order to Respond to Protective Order
Tony Ortega
Gambug NARG: Plaintiff's Exhibit 2 Opposition to Motion to Dismiss
Tony Ortega
Garcia NARG: Defendant's Exhibit 4 Opposition to Remand

And here's Michael DeLong's petition...

Michael DeLong v Oklahoma Mental Health: Petition

EXHIBIT

8

# EXHIBIT 2

SHOW ME MORE LIKE MICHAEL DELONG V OKLAHOMA MENTAL HEALTH: PETITION
SIMILAR TO MICHAEL DELONG V OKLAHOMA MENTAL HEALTH: PETITION
BACK TO DOC
Browse more like Michael DeLong v Oklahoma Mental Health: Petition
Previous | Next
Kimberly Poff v. Oklahoma Dept Mental Health: Petition w Exhibits
Tony Ortega
Geanacopulos v. Narconon: Plaintiffs Response to Motion to Dismiss
Tony Ortega
Narconon/Tony Ortega: Exhibit 1 Running an Effective Narconon
Previous | Next
Kim Poff: Final Order against motion to dismission
Tony Ortega
Brown et al/Narconon Order dismissing federal claim
Tony Ortega
Guidreil v. Narconon: Complaint
Tony Ortega
Gleason: Scientology's Reply to obejction to Protective Order
Tony Ortega
Gleason/Scientology: Order to Respond to Protective Order
Tony Ortega
Cabaen/AAA Plaintiffs Reply 2013 Opposition to Motion to Dismiss
Tony Ortega
Cabaen/AAA Defendants 2013 Opposition to Renewed Scientology, et al - Miscavige Special Appearance Oct2012
Tony Ortega

After news of the three deaths at Narconon Arrowhead in 2011-2012, criminal investigations were started by county and state agencies which seemed to have gone nowhere. A new state law was passed to increase regulation of the facility, but that also appeared to have little effect.

In June, we broke the news that a grand jury had been empanelled to hear evidence of insurance fraud at the rehab center. We're still waiting to see if that results in indictments.

UPDATE: We talked to Gary Richardson, who is handling ten different lawsuits against Narconon Arrowhead, including wrongful death lawsuits for the families of Gabriel Graves, Hillary Holten, and Stacy Murphy. He tells us that he has asked the state of Oklahoma to turn over Kim Poff and Michael DeLong's final investigative report which, Poff says, was suppressed by their superiors. The state has opposed Richardson's motion, and he says a judge has scheduled a hearing on September 23. (Most likely, however, even if the judge orders the state to give the report to Richardson, it will be kept under seal and the public may not get to see it.)

We also spoke with Rachel Bussett, Kim Poff's attorney. She says that as far as she knows, the investigative report by Poff and DeLong was never delivered to the mental health department's board, and the department has said that no further investigation of Narconon is being done.

We asked how Kim Poff is faring since she was terminated by the mental health department. Bussett says that she's doing well as an investigator for another state agency — the Department of Human Services.

"It proves that she's competent and qualified, just as we've been saying," Bussett tells us.

She says that Poff was motivated to file the lawsuit because she wanted to see justice done for the families of the patients who died at Narconon Arrowhead.

"When three people die in a short time, that's concerning. And I don't care if there's a religious component or if it's state-based or whatever. If people are dying, that's a concern," Bussett says. "Our state agencies should be standing up for the citizens of Oklahoma."

———————

Posted by Tony Ortega on August 19, 2014 at 11:15

E-mail your tips and story ideas to tonyo94@gmail.com or follow us on Twitter. We post behind-the-scenes updates at our Facebook author page. Here at the Bunker we try to have a post up every morning at 7 AM Eastern (Noon GMT), and on some days we post an afternoon story at around 2 PM. After every new story we send out an alert to our e-mail list and our FB page.

Learn about Scientology with our numerous series with experts...

BLOGGING DIANETICS (We read Scientology's founding text) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25

UP THE BRIDGE (Claire Headley and Bruce Hines train us as Scientologists) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48

GETTING OUR ETHICS IN (Jefferson Hawkins explains Scientology's system of justice) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

SCIENTOLOGY MYTHBUSTING (Historian Jon Atack discusses key Scientology concepts) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49

PZ Myers reads L. Ron Hubbard's "A History of Men" | Scientology's Master Spies | Scientology's Private Dancer
The Underground Bunker's Official Theme Song | The Underground Bunker FAQ

# EXHIBIT 2



Make us your home page  Today's Headlines  My Subscription  E-edition  Subscribe  Gift Subscription

Search for stories and photos

Contact Us  Welcome! Login Signup

42°

NEWS SPORTS SCENE BUSINESS COMMUNITIES BLOGS OPINION WEATHER TRAFFIC PHOTO DATABASES OBITS CLASSIFIED JOBS

Home   News   Courts

# Lawsuits allege state suppressed Narconon report, fired investigators

Story   Comments (5)

Recommend 28   Tweet   g+1 5

6

Posted: Wednesday, August 20, 2014 12:00 am | Updated: 12:05 pm, Sat Aug 30, 2014.



Narconon Arrowhead sits on the shores of Lake Eufaula in Pittsburg County. MIKE SIMONS/Tulsa World file



Buy this photo

By ZIVA BRANSTETTER World Enterprise Editor | 5 comments

Related story: State officials called to testify before grand jury on Narconon Arrowhead

Related story: Narconon Arrowhead drug rehab facility is under investigation, but details are few

The state Department of Mental Health "buried" an inspector general's report recommending that Narconon Arrowhead be shut down after three patients died there, two lawsuits against the agency claim.

The Department of Mental Health and Substance Abuse Services fired its inspector general, Kim Poff, and an investigator, Michael DeLong, last year after they objected to the agency's withholding of the Narconon report, the lawsuits state.

Agency leaders, including Commissioner Terri White, "buried the report, recommendations and findings of Ms. Poff and Mr. DeLong because the Department did not want to get involved with litigation involving the Church of Scientology," the lawsuit alleges.

It notes that Narconon Arrowhead has "significant financial backing" from the Church of Scientology.

Poff sued the agency for wrongful termination, civil conspiracy and other claims in Oklahoma County District Court on Aug. 4. DeLong filed a similar suit on July 30.



Video



EXHIBIT 4

**EXHIBIT 2**

Both lawsuits name White, the department's chief executive officer; Durand Crosby, chief operating officer; Cratus Dewayne Moore, general counsel; and Ellen Buettner, director of human resources for the agency. They also name the state and the board of directors for the Department of Mental Health.

The department did not respond Tuesday to a request for comment on the lawsuits' allegations.

Rachel Bussett, an attorney representing Poff and DeLong, said their investigative report recommending that Narconon be closed was submitted to the Department of Mental Health in the fall of 2012. She said the two "were told to make changes (in the report) by top leadership" but refused to do so.

"They wouldn't fall in line and do what they were told. ... They didn't toe the company line. They were retaliated against for speaking out about wrongdoing."

Bussett said Poff has since been hired by another state agency, the Department of Human Services, where she formerly worked.

"I don't believe DHS would have hired her back if they thought there was merit" to her firing by the Department of Mental Health, Bussett said.

Related story: Five more lawsuits filed against Narconon Arrowhead

Related story: Full autopsy released on woman who died at Narconon Arrowhead

Read the lawsuits filed by two employees against the Department of Mental Health and past stories about Narconon Arrowhead.

Narconon Arrowhead is located on the shores of Lake Eufaula near Canadian, northeast of McAlester. The facility can house up to 200 patients, known in the program as students.

Narconon Arrowhead is the flagship branch of an international drug-rehabilitation organization rooted in the teachings of Scientology founder L. Ron Hubbard. The program's unorthodox treatment includes five-hour daily sauna sessions and large doses of niacin — vitamin B3. Additionally, patients go through training based on Hubbard's teachings.

A multiagency investigation of Narconon Arrowhead began after Stacy Dawn Murphy, 20, died from a drug overdose at the facility in July 2012. Her death followed the deaths of patients Gabriel Graves in 2011 and Hillary Holten in 2012.

"Ms. Poff and her investigators determined that Narconon violated numerous state laws and recommended that the facility be shut down by ODMHSAS," Poff's lawsuit states. "Despite this recommendation and the finalization of the reports, leadership at ODMHSAS ... had Ms. Poff repeatedly advise the board of directors for ODMHSAS that the investigation was still pending.

"Ms. Poff believed that by not releasing the report, the ODMHSAS failed to protect the interest of Oklahomans at the facilities in the past, present and future. We believe this position played significantly into the decision of the department to terminate her employment along with the employment of one of her investigators," the lawsuit states.

The Tulsa World has requested a copy of Poff's final report on Narconon Arrowhead.

A spokesman for the Department of Mental Health has said the agency turned over its findings related to the investigation to state Attorney General Scott Pruitt's office.

Aaron Cooper, a spokesman for Pruitt, said in an email that "the AG's office doesn't typically confirm investigations."

The World reported Sunday that a multicounty grand jury is investigating the facility and has called state officials and at least one former Narconon Arrowhead executive, Eric

AdChoices [>

## Latest Local Offers

Ax Tulsa Realty Group -
Midtown Bungalow
This Midtown Bungalow is a must-
see!



Wholesale Computer Supply -
$25 OFF
Mention this ad for $25 OFF ($50
min.)



Bella Vita Spa and Salon - 25%
OFF
25% OFF Salon Product BOGO



Matthews Ford - The WORKS
$39.95 or less
THE WORKS $39.95 or less includes:



Grigsby's - STAINMASTER on
Sale
All STAINMASTER PetProtect NOW
ON SALE!



5 View more local offers

Popular    Commented

Stories

10 to Watch in 2015: Meet the Tulsans
who will impact your community

Gundy's proposal: Unity in Stillwater

Three wounded in shooting outside
Tulsa nightclub

19-year-old critically injured in crash on
BA Expressway; weather cited as factor

Death notices for Dec. 27

10 People To Watch in 2015: Alex
Himaya

# EXHIBIT 2

12/29/2014                    Lawsuits allege state suppressed Narconon report, fired investigators - Tulsa World: Courts

Tenorio, to testify. The investigation reportedly revolves around insurance fraud.

Following a raid on its Georgia office last year, Narconon agreed to surrender its license there to avoid criminal prosecution. State investigators uncovered nearly $3 million in alleged insurance fraud by Narconon of Georgia, according to news reports.

In Oklahoma, 10 lawsuits have been filed in Pittsburg County District Court alleging wrongful deaths of Narconon patients, negligence, fraud and other claims against the drug rehabilitation facility. Claims include that staff members were trading drugs for sex with patients and that the facility failed to provide medical treatment and oversight, leading to patient deaths.

Following the deaths at Arrowhead, state lawmakers passed legislation touted as giving the state more authority to regulate the facility.

After the law changed, Narconon Arrowhead sought certification as a residential substance abuse treatment center but withdrew its application before Department of Mental Health site visits. The facility has now applied for certification as a substance abuse halfway house, defined by state law as one that provides "low intensity substance abuse treatment in a supportive living environment to facilitate the individual's reintegration into the community."

Ziva Branstetter 918-581-8306

ziva.branstetter@tulsaworld.com



Recommend 26    Tweet       8+1  9
                   Tweet   4
Donate

Print

## Similar Stories

- OSU Sports: FootballScoop names Cowboys' Robby Discher special teams coordinator of the year
- Tanker carrying hydrogen overturns near Coweta
- Pentagon: Airstrike targeted a terror leader in Somalia
- City offers curbside Christmas tree pickup
- Mayor guarantees more companies will make Tulsa home

## Most Read

- Throwback Tulsa: Famous 'man in the hole' had everything he needed
- 10 to Watch in 2015: Meet the Tulsans who will impact your community
- Christmas Day dining: Several Tulsa restaurants will be open
- Tulsa, Broken Arrow residents jailed in alleged attempt to bring Colorado marijuana to city
- Gundy's proposal: Unity in Stillwater

Death Notices for December 28

Photos

Videos

## Report A Correction

Report a correction to editors when you see inaccurate content at tulsaworld.com/corrections.

## Featured Businesses

Avon Store
918-369-7144
http://www.youravon.com/kpmwell



Matthews Ford
918-251-3673
http://matthewsfordbia.com



Impressions in Stone
918-828-9745
http://www.impressionsinstone.biz



Green Country Staffing
918-250-9500
http://www.greencountrystaffing.com

Full Throttle Lawn Service
918-740-3811
http://fullthrottlelawnservice.com



Find a local business ∨

## Submit Your News!

We're always interested in hearing about news in our community. Let us know what's going on!

Today's E-Edition

# EXHIBIT 2

Case 5:15-cv-00936-R   Document 1-2   Filed 08/31/15   Page 46 of 54

12/30/2014                    NARCONON DENIED: Damaging Oklahoma report on Scientology rehab facility will be turned over « The Underground Bunker

« Rathbun v. Scientology. Another appeals court hearing, this time with everything          David Miscavige, you've been served: Leader of Scientology will need to respond
on the line                                                                                                              to NAFC suit »

# NARCONON DENIED: Damaging Oklahoma report on Scientology rehab facility will be turned over

Today, Pittsburg County District Judge Jim D. Bland (pictured, right) agreed that the families suing Scientology's flagship drug rehab facility, Narconon Arrowhead, should be given copies of a controversial state report that recommended the rehab center be shut down.

The report came to light when, last month, two lawsuits were filed by a former Oklahoma state inspector general, Kim Poff, and one of her former investigators, Michael DeLong. In the lawsuits, they claimed that they had investigated Narconon Arrowhead in the wake of three recent patient deaths, found evidence of wrongdoing, and recommended in a report that the place be closed. They allege that their superiors buried the report because they were too afraid to take on Scientology, and then fired Poff and DeLong when they complained. Their report was forwarded to Oklahoma's attorney general.

Today, arguing for the families suing Narconon, attorney Melissa East argued that they should get copies of the state report.

Gary Richardson, who also represents the families, tells us that attorneys for Narconon opposed the release of the documents, and an attorney representing the state was also present but did not argue against turning over the report.

Judge Bland agreed that the families should get the report, though it will be under seal.

"The state is going to redact any names that should not be disclosed, and then provide us the document in a week to ten days," Richardson told us by telephone today.

"We thoght it was a very fair result. We're quite pleased that it helps us move father ahead. And also, one day when we go in the courtroom, and it's relevant in open court, the public will get to hear the truth about this place," he added.

Also, Judge Bland found that Richardson could depose Kim Poff, which Narconon had opposed.

Poff's investigation was sparked after the July 2012 death of Stacy Murphy, 20, who died in the withdrawal unit of Narconon Arrowhead of a drug overdose.

In the courtroom today was her father, Robert Murphy.

"I'm kind of numb," he told us when we reached him. "It's a good day. I'm so proud of my lawyer and his team."

---

## Your proprietor on the airwaves

Yours truly will appear on the new podcast from the Thinking Atheist, which will be posted this evening at 7 pm Eastern, we hear. Also on the program will be Tory Christman and Mark Bunker!

---

Posted by Tony Ortega on September 23, 2014 at 18:00

E-mail your tips and story ideas to tonyo94@gmail.com or follow us on Twitter. We post behind-the-scenes updates at our Facebook author page. Here at the Bunker we try to have a post up every morning at 7 AM Eastern (Noon GMT), and on some days we post an afternoon story at around 2 PM. After every new story we send out an alert to our e-mail list and our FB page.

Learn about Scientology with our numerous series with experts...

BLOGGING DIANETICS (We read Scientology's founding text) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25

UP THE BRIDGE (Claire Headley and Bruce Hines train us as Scientologists) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48

GETTING OUR ETHICS IN (Jefferson Hawkins explains Scientology's system of justice) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

SCIENTOLOGY MYTHBUSTING (Historian Jon Atack discusses key Scientology concepts) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49

PZ Myers reads L. Ron Hubbard's "A History of Man" | Scientology's Master Spies | Scientology's Private Dancer
The Underground Bunker's Official Theme Song | The Underground Bunker FAQ

Share 🔗 📧 📰 ❤ 👍 📣

September 23rd, 2014 | Category: Narconon



EXHIBIT
10

# EXHIBIT 2

« Scientology Photoshopping: Erasing L. Ron Hubbard's second wife from 'The RON Series'

Ryan Hamilton's next move: Consolidating his Narconon litigation into one big case »

# Kim Poff fired by Oklahoma agency after stories (including ours) described Scientology dispute

Now it can be told. Just days after we reported, along with local Oklahoma media, that Kim Poff had filed suit against the state's Department of Mental Health and Substance Abuses Services (ODMHSAS), she was fired by another Oklahoma state agency, the Department of Human Services.



Kim Poff

Her attorney, Rachel Bussett, tells us she believes those events are directly connected.

"On August 18, you and News 9 reported her lawsuit. And then on the 19th of August, the story was reported by the *Daily Oklahoman* and the *Tulsa World*," Bussett told us by telephone yesterday. "It's our understanding that Kim's file was pulled the next day, on the 20th, and she was fired on the 22nd."

Poff filed a grievance over her firing, and after it was rejected, this week she filed a complaint with the federal Equal Employment Opportunity Commission.

You remember Kim Poff. She was the Inspector General of ODMHSAS who headed up an investigation of Scientology's flagship drug rehab facility, Narconon Arrowhead, which is in the eastern part of the state, on Lake Eufala.

In the summer of 2012, Poff and her investigator, Michael DeLong, looked into three recent deaths at the facility — deaths which sparked multiple government probes and numerous civil lawsuits. As a result of their investigation, Poff and DeLong found that Narconon Arrowhead was in violation of state law, and they recommended that it be shut down. But they allege that their bosses were so afraid of taking on the Church of Scientology, they pretended that the study wasn't finished, and simply shelved it. When Poff and DeLong complained, they were both sacked in August 2013. They've each filed lawsuits against the Mental Health department over their firings.

By the time we reported on her lawsuit in August, Poff had been working in her new job at the Department of Human Services for almost four months. But just days after our story came out about her suing the state, she was cut loose.

Bussett says that Poff was accused of lying on her job application, and not divulging the real reasons why she had left her job at the Mental Health department.

But Bussett points out that not only did the Department of Human Services do a thorough background check on Poff, on Aug 18 News 9 did a story about Poff and DeLong losing their jobs, reporting that it was related to their Narconon investigation. (At that time they had filed a complaint with the EEOC.)

That story came out 13 days before Kim Poff started her new job with the Department of Human Services.

"The department was fully aware what was happening when they hired her for the position on May 1," Bussett says.

So now, Poff has submitted another EEOC complaint in anticipation that she'll probably end up filing another lawsuit, this one against the Department of Human Services. In the meantime, she's still looking for work.

"She is looking for employment and having difficulty finding work because the state of Oklahoma was her career," Bussett says. "She was fired for doing the right thing and trying to protect the people of Oklahoma, the people she was hired to protect."

Poff and DeLong began looking into Narconon Arrowhead in July 2012 after three patients — Gabriel Graves, Hillary Holten, and Stacy Murphy — died there over only a nine month period. Their families are suing the facility with the help of former federal prosecutor Gary Richardson.

In September, Richardson persuaded the court that his clients should get access to the investigative report about Narconon Arrowhead prepared by Poff and DeLong that the state allegedly suppressed. The report was turned over to Richardson under seal (see the update, below).

We reported previously that Narconon Arrowhead itself is suffering badly after two years of controversy, and Scientology leader David Miscavige has announced new facilities — all but one outside of the United States — suggesting that Miscavige is shifting away from the existing network of rehabs in this country, which continue to be hit with dozens of lawsuits for deceptive practices.

UPDATE: Gary Richardson tells us that although Judge Jim D. Bland made his decision back in September that Richardson should receive a redacted copy of the state investigation of Narconon Arrowhead, it was only today that the two sides in the matter came to an agreement about the terms of Judge Bland's order. Richardson says he expects to receive a copy of the investigation in about a week, and that it will be for "lawyers' eyes only."

---

## Remembering L. Ron Hubbard on Veterans Day

"My experience with Australia goes back to being the only anti-aircraft battery in Australia in '41-'42.... I was up in Brisbane. There was me and a Thompson submachine gun...I think that was all that was there." (Interview granted to the Australian Press by L. Ron Hubbard on Jan. 10, 1963 at Saint Hill Manor, East Grinstead, England.)

Hubbard had to be referring to Mt. Coot-tha, a small peak south of Brisbane. Coot-tha ('place of honey' in Aborigine) commands a panoramic view of the Brisbane River valley, north to the city and the Tasman Sea. It's a park now; you can go to the visitors' center, enjoy the spectacular view, and read how, during WW II, the site "bristled with searchlights and gun emplacements" manned by the Royal Australian Air Force, and that the U.S. Navy had a large ammunition depot on the lower slope at a spot called J. C. Slaughter Falls.

Apparently Hubbard's blindness had already struck, since these hundreds of personnel were invisible to him. The Navy alone had approximately 175 men camped at the depot. The guns, by the way, would have been bristling since 1939 when Australia went to war. They must have been so camouflaged he didn't notice them.

Those men were not there to smash their names into history, but just to "get the job done"; (an old Navy phrase I heard all my life, which some other outfit keeps using for some odd reason) watching for the enemy and loading the ships; helping to push the war north, island by bloody island, with no expectation of any glory but the remembrance their nations owe them to this day.

Of the many lies Hubbard told, this seems a small one, but stealing the honor due to those who really did get the job done is, in my eyes, one of his greater crimes.

There was another Navy lieutenant on the mountain — later, in '43-'44; one R.L. Keeting of Boston, in command of the depot. A career man who exemplified the hardheaded, no-nonsense attitude of the wartime Navy. Slightly built but wiry, one-time lightweight champion of the Pacific fleet, he possessed a peculiar immunity to glamor and charisma; and had a short fuse with what he called 'chiselers.' Though Keeting and Hubbard had been in the same places — Brisbane, San Diego, Puget Sound — their paths don't seem to have crossed. Which was perhaps just as well, one too many shore stories, and Keeting would have called him a damned liar and cleaned his plow.

Every time I see the Sea Org fake uniforms and stolen phrases and especially the fake dress swords, I could choke on bile.

Keeting's sword — the genuine article — hangs in an old farmhouse, his grave lies in a small country cemetery. He's remembered only by those who loved him. But he served



EXHIBIT
11



## EXHIBIT 2

his country with distinction and consequently helped to save the world. No mean legacy.

— Deborah Keeting-Hansen
a/k/a Cicely Neville

_____

Posted by Tony Ortega on November 11, 2014 at 07:00

*E-mail your tips and story ideas to [tonyo94@gmail.com](mailto:tonyo94@gmail.com) or follow us on [Twitter](#). We post behind-the-scenes updates at our [Facebook author page](#). Here at the Bunker we try to have a post up every morning at 7 AM Eastern (Noon GMT), and on some days we post an afternoon story at around 2 PM. After every new story we send out an alert to our e-mail list and our FB page.*

Learn about Scientology with our numerous series with experts…

BLOGGING DIANETICS (We read Scientology's founding text) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25

UP THE BRIDGE (Claire Headley and Bruce Hines train us as Scientologists) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48

GETTING OUR ETHICS IN (Jefferson Hawkins explains Scientology's system of justice) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

SCIENTOLOGY MYTHBUSTING (Historian Jon Atack discusses key Scientology concepts) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49

PZ Myers reads L. Ron Hubbard's "A History of Men" | Scientology's Master Spies | Scientology's Private Dancer
The Underground Bunker's Official Theme Song | The Underground Bunker FAQ

Share 🐦 📘 📧 ⊕ 🔗 👍

November 11th, 2014 | Category: Moreonism

# EXHIBIT 2




## Oklahoma Judge Rules Attorney Can See Narconon Investigation Report

*Posted: Sep 23, 2014 9:51 PM CDT   Updated: Sep 23, 2014 9:51 PM CDT*

**TESS MAUNE, NEWS ON 6 EMAIL** 

McALESTER, Oklahoma - A select few will know what investigators found inside the walls of a controversial Oklahoma drug rehab facility where three patients died.

A judge ruled Friday attorneys suing Narconon Arrowhead should see the investigators' report, but the patients' families are still fighting for the report to be made public.

A father's grief has become his mission. Robert Murphy's daughter Stacy, is one of three patients who died in rehab at Narconon Arrowhead in less than a year's time.

"I see God's blessing even in our loss," he said. "It doesn't take the pain away, but it definitely puts purpose to it."

Stacy's death was ruled an overdose, but her father says employees at the Scientology-based facility knew his daughter was on the verge of an O.D., but let her die.

The two other deaths remain a mystery. The medical examiner could never figure how Gabriel Graves or Hilary Holten died.

"Knowing they're still open and operating and still doing the same things that they're doing to the public, it's something I can't accept. They have to be closed," Murphy said.

The State Department of Mental Health starting investigating in July 2012. The results of that probe have never been made public.

Both investigators on the case claim they were fired because they wouldn't agree to keep the results secret.

*4/18/2014 Related Story: State Investigators Of Narconon Arrowhead Say They Were Wrongfully Fired*

In a lawsuit, those investigators claim their report suggested Narconon be shut down for breaking state laws.

In a search for the truth for the families he represents, Attorney Gary Richardson subpoenaed the results.

"It's all a search for the truth," he said. "Exactly what went on, has gone on and is going on down at Narconon Arrowhead."

The state said statutes prohibit it from turning over the records, but the lawsuit by the investigators claim the state tried to hide its findings for fear of a legal battle with the Church of Scientology.

"They need to answer some questions. They need to answer to why this report was buried," said Murphy.

A judge ruled the report should be released as long as patient names are taken off and



EXHIBIT

12

## EXHIBIT 2

only the attorneys see it.

It's a decision Murphy says brings him one step closer to justice.

"It will give us some sense of purpose of her life, her losing her life that it didn't go for not," he said. "There's good that come out of it."

The families have sued Narconon for the deaths of their children.

Richardson said unless they settle out of court, their case will likely go to trial next year. He said that's when the public could learn more about what the investigation uncovered.



## Oklahoma's Own



f | Oklahoma Department of Mental Health and Substance | Log In | Send Us News Tips | Contact Us

News    Weather    Sports    Video    Recipes    Share    Lifestyle    Community    Contests

materials. The department received a request for information that by law it could not release without a court order. In this instance, the judge determined that it would be possible to provide materials and redact identifying information. The judge also issued a protective order and sealed those records so that they would be used solely for the purpose of the lawsuit filed against Narconon, and not released publicly or to anyone else."

Narconon said:

"Narconon Arrowhead's interest is and has been to protect the privacy rights of its students and other non-parties. The judge made it clear that he shared this concern when he ordered their names deleted and severely restricted the dissemination of whatever records the Department of Mental Health ultimately produces to the lawyers involved in the case."

**From The Web**                                    Sponsored Links by Taboola

  

8 Things That Can Go Wrong    Don't Let Travel Headaches Get    Kate Middleton Reportedly in
With Your Tattoo               You Down. 5 Ways to Stay         Serious Danger at Parents'
WebMD                          Entertained                      Bucklebury Home
                               DIRECTV                          Stirring Daily

                               

Forget Iran, Iraq, Ukraine: This    We Reveal Top Two $8 Skin    Do-it-yourself Free Testosterone
is Where War WWIII Starts           Tighteners...                 Solution
Money Morning                       Absolute Derma Instant Wrinkle Reducer    Nugenix Supplement

NewsOn6.com allows its users to express opinions and ideas, but reserves the right to remove comments for any reason. Comments do not reflect the views of News On 6 or its employees. A Facebook account is required to participate -- if you do not currently have an account, sign up here.

**worldnow**

News On 6          NEWS              WEATHER
2014 Tulsa, Inc.   6 Investigates    WARN Interactive
                   Resources         Street Level
                   Crime             Current Radar

## EXHIBIT 2



 **Oklahoma,s Own**

News   Weather   Sports   Video   Recipes   Share   Lifestyle   Community   Contests



# Former Narconon Investigator Says She Was Fired For Going Public

*Posted: Nov 11, 2014 4:06 PM CST  Updated: Nov 11, 2014 4:06 PM CST*

BY DANA HERTNEKY, NEWS 9 BIO  EMAIL

OKLAHOMA CITY - A former investigator into the Scientology based Narconon Arrowhead says she was fired in retaliation for going public.

News 9 was the first to report the two investigators into the drug treatment facility were suing the state for wrongful termination.

On Aug. 19, News 9 aired a story about the two investigators of the Narconon Arrowhead facility who say they were wrongfully terminated when they pushed for the results of their investigation be made public.

_8/19/2014 Related Story: Narconon Investigators Sue Department Of Mental Health And Substance Abuse_

According to the lawsuit, their report "determined that the Narconon facility violated numerous state laws and recommended that the facility be shut down."

After that report aired, Kim Poff was fired again from her new job as an investigator with DHS. According to Rachel Bussett, Kimberly Poff's attorney, the day after the story aired, Poff's file was pulled at DHS and she was gone by the end of the week.

"This is retaliation and that's illegal," said Bussett.

Poff spent her career working for the state, including more than 10 years with DHS before taking over as Inspector General with the Department of Mental Health where she worked for seven more years.

"She was a well-recognized employee. She was given awards. She worked her way up through the ranks," said Bussett.

DHS spokesperson, Sheree Powell, says Poff was fired because she was dishonest on her employment application. Poff wrote she "resigned in lieu of termination" from the Department of Mental Health, instead of that she was terminated.

"It's just untrue," said Poff. "DHS knew everything that had happened. There was a termination letter in her file."

News 9 even aired another story in April about Poff's termination, before Poff was hired by DHS.

_4/18/2014 Related Story: State Investigators Of Narconon Arrowhead Say They Were Wrongfully Fired_

"The state did the wrong thing, two times here," said Bussett.

Bussett says Poff will be filing another wrongful termination lawsuit, this time against DHS.

**EXHIBIT 13**

**EXHIBIT 2**

OES-461

# APPEAL TRIBUNAL
## OKLAHOMA EMPLOYMENT SECURITY COMMISSION
### P.O. BOX 53345
### OKLAHOMA CITY, OK 73152

In re: Claim of: SSA.                                          Docket No. 14-13689


KIMBERLY M POFF                                    OK DEPT OF HUMAN SERVICES
                                                   ATTN DALE MOORE HRMD 1ST FL
                                                   PO BOX 25352
                                                   OKLAHOMA CITY OK   73125-0352


### ORDER OF DECISION

Now on OCTOBER 16, 2014, this cause comes on for consideration pursuant to regular assignment and hearing on OCTOBER 13, 2014, before PAMELA C. DOWD, HEARING OFFICER, at 1:42 P.M. by telephone at which time the claimant appeared and was represented by Rachel Bussett, Attorney. The employer appeared represented by Dale Moore, Human Resource Program Manager. The Commission was not represented. The issue to be resolved is whether the claimant was discharged for a reason amounting to misconduct connected with the work.

The Appeal Tribunal having considered the evidence and records on file, FINDS AND ORDERS AS FOLLOWS:

-1-

That on SEPTEMBER 16, 2014, the claimant appealed the Commission's determination denying unemployment benefits under Section 2-406 of the Oklahoma Employment Security Act by finding that the claimant was discharged from employment for misconduct connected to the work.

-2-

The claimant was employed full-time as an Investigative Agent III from May 1, 2014, to August 23, 2014, when she was discharged for dishonesty. The final incident occurred when the employer accused the claimant of lying on her application for employment.

-3-

The employer was made aware on August 18, 2014, after a news story broke in local newspapers and on local television that the claimant filed a wrongful termination lawsuit against her previous employer, the Department of Mental Health. When asked the reason for her separation from her previous employer on her application for this position, the claimant answered that she resigned. Further into the application when asked if she had ever resigned in lieu of termination, the claimant answered that she had with the Department of Mental Health. This employer discharged her for lying about the nature of her separation by indicating she had resigned, when she had been discharged. The claimant was working as a Cleet-certified law enforcement officer, making honesty and integrity an necessary component of the job.


PCD/KT

Continued on page 2



## EXHIBIT 2

-4-

At the time of her termination from the previous employer, which occurred on a Friday afternoon, the claimant requested to be allowed to resign in lieu of termination. She wanted to discuss it with her attorney which could not be done until the following Monday. The employer went ahead and gave her the termination letter with the understanding that she had until close of business on the following Monday to submit a resignation. The attorney sent an extensive letter to the employer on the following Monday detailing the reasons why she felt that the claimant had been wrongfully terminated. The letter did not state that she resigned, but mentioned it as a subject of negotiation, while listing demands to be met before the claimant would agree to resign. The letter was not conciliatory at all, but was a demand letter listing potential legal action if they were not met. The employer did not respond to the demands, and the claimant never submitted a written resignation.

-5-

This employer conducted an extensive investigation into the claimant's background prior to hiring her for the investigative agent position. The employer asked the claimant about her separation from the previous employer, and the claimant made them aware of the termination and her request to resign in lieu of termination. This employer was aware of the circumstances under which the claimant left her previous job on May 1, 2014. The employer's witness was not aware of the investigation, and the persons who conducted it were not present at the hearing to dispute the claimant's version of that proceeding.

-6-

Section 2-406 of the Oklahoma Employment Security Act provides
(A) An individual shall be disqualified for benefits if he or she has been discharged for misconduct connected to his or her last work. If discharged for misconduct, the employer shall have the burden to prove that the employee engaged in misconduct as defined by this section. Such burden of proof is satisfied by the employer, or its designated representative providing a signed affidavit, or presenting such other evidence, which properly demonstrates the misconduct which resulted in the discharge. Once this burden is met, the burden then shifts to the discharged employee to prove that the facts are inaccurate or that the facts as stated do not constitute misconduct as defined by this section.
(B) "Misconduct" shall include, but not be limited to, the following: 1. Unexplained absenteeism or tardiness; 2. Willful or wanton indifference to or neglect of the duties required; 3. Willful or wanton breach of any duty required by the employer; 4. The mismanagement of a position of employment by action or inaction; 5. Actions or omission that place in jeopardy the health, life, or property of self or others; 6. Dishonesty; 7. Wrongdoing; 8. Violation of a law; or 9. A violation of a policy or rule adopted to ensure orderly work or the safety of self or others.
OKLA. STAT. tit. 40, § 2-406. [Effective 11-1-13]

-7-

The claimant was discharged for dishonesty. The employer has the burden of proof to show willful misconduct connected to the work. More than mere allegations of wrongdoing or hearsay testimony is required to meet that burden. There is no doubt that the claimant did misrepresent her previous job separation on her application to the employer by stating she resigned. She did, however, also state that she resigned in lieu of termination, which should have, and apparently did, give the employer a heads-up to ask more questions about it. The claimant cannot have it both ways. She also filed a wrongful termination lawsuit. She cannot state that she resigned and then claim she was discharged. The evidence is clear that she did not have the option of keeping her job. She was given until Monday to submit a resignation. She did not do that. Instead, her representative attempted to negotiate the terms of her resignation through threats of litigation. The employer was not obligated to accept those terms, and did not. Instead, they let the termination stand. That letter was not a resignation letter. The claimant should have been aware of this.

10/16/14
1413689/PCD/KT

EXHIBIT 2

-8-

While the claimant somewhat misrepresented herself in her application, the first-hand unrefuted evidence presented by the claimant shows that the employer conducted an extensive background investigation, which included questions of the claimant regarding the separation. The burden of proof shifts back to the employer to dispute the claimant's assertions that the employer was aware. The employer presented no first-hand evidence to the contrary. The employer chose to hire her with the knowledge of the previous separation, and did not discharge her until shortly after the news story broke about her lawsuit. The employer is therefore, estopped from claiming her discharge was due to dishonesty since the employer was made aware of the situation prior to hire and hired her anyway. The claimant may have been discharged for business reasons, but the burden of proof has not been met to show it was for willful misconduct connected to the work.

-9-

The Commission's determination is REVERSED. The claimant is qualified for benefits effective AUGUST 17, 2014, provided the claimant meets all other requirements of the Act.

BY ORDER OF:

PAMELA C. DOWD, HEARING OFFICER

Copy to: APPELLANT
        APPELLEE

        RACHEL BUSSETT ATTORNEY
        3555 NW 58TH STE 1010
        OKLAHOMA CITY OK 73112

## APPEAL RIGHTS

This decision becomes final and binding on all parties to the appeal unless, within ten (10) calendar days of the certified date of mailing stated below, an appeal is filed with the Board of Review. [OKLA. STAT. tit. 40, Sec. 2-605]

The appealing party must file a written appeal directly to the Board of Review by either delivering the appeal to the BOARD OF REVIEW at 2401 North Lincoln Boulevard, 5th Floor Reception, OKLAHOMA CITY, OKLAHOMA 73105 within ten (10) calendar days of the certified mailing date of the Appeal Tribunal Decision or, by mailing the written appeal to the BOARD OF REVIEW at P.O. BOX 53345, OKLAHOMA CITY, OKLAHOMA 73152 or, by TELEFAX (405) 962-7540. Any appeal filed by mail must be postmarked no later than ten (10) calendar days after the date of the certified mail date of the Appeal Tribunal Decision. [OAC 240:15-3-3]

## FURTHER INSTRUCTIONS TO THE CLAIMANT

You must continue to file weekly claims and report to the Commission as directed while your claim is on appeal.

## CERTIFICATE OF MAILING

I certify that on ___10-16-14___ I personally placed copies of this decision in the United States mail in envelopes addressed to the claimant and/or employer at their respective addresses shown on the decision. Said envelopes were sealed and bore indicia of proper postage paid.

PBooth

10/16/14
1413689/PCD/KT

Page 3 of 3 Pages

## EXHIBIT 2