**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| KIMBERLY POFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CIV-936-R |
| | ) | |
| OKLAHOMA DEPARTMENT OF HUMAN | ) | |
| SERVICES, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT
OF DEFENDANT TONY BRYAN**

Respectfully submitted,

*s/ John E. Douglas*
John E. Douglas (OBA #2447)
Emily B. Fagan (OBA #22427)
Anastasia Pederson (OBA# 17118)
Assistant General Counsel
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone:  (405) 521-3638
Facsimile:  (405) 521-6816
E-mail:  Stacy.Pederson@OKDHS.org
E-mail:  John.Douglas@OKDHS.org
E-mail:  Emily.Fagan@OKDHS.org
*Attorneys for Defendant Oklahoma
Department of Human Services*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES  ............................................................................  ii

MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
DEFENDANT TONY BRYAN  .............................................................  1

I. INTRODUCTION  ....................................................................................  1

II. STATEMENT OF FACTS  .......................................................................  3

III. ARGUMENT AND AUTHORITIES  ......................................................  13

    A. Motion for Summary Judgement Standard.  ....................................  13

    B. Defendant Bryan is entitled to Summary Judgment.  ......................  14

        1. Plaintiff cannot recover against Bryan as a matter of law.  ..................  14

            a. First Amendment Claim  ............................................................  14

            b. Civil Conspiracy Claim  .............................................................  23

        2. Defendant Bryan is entitled to qualified immunity.  ............................  26

III. CONCLUSION  .....................................................................................  27

CERTIFICATE OF SERVICE  ..................................................................  28

# TABLE OF AUTHORITIES

## CASES

**Page**

Allen v. Muskogee, Okla., 119 F.3d 837, 839 (10th Cir. 1997)  ....................................  13

Ambrose v. Twp. of Robinson, 303 F.3d 488, 495 (3d Cir. 2002)  .............................  15

American Manufacturers Mutual Ins. Co. v. Sullivan,
526 U.S. 40, 49-50 (1999)  ...................................................................  14

Anderson v. Creighton, 483 U.S. 635, 641 (1987)  .....................................  27

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8 (1986)  ....................................  13

Baca v. Sklar, 398 F.3d 1210, 1221 (10th Cir. 2005)  ..................................  20

Ballard v. Muskogee Reg'l Med. Ctr., 238 F.3d 1250, 1253 (10th Cir. 2001)  ...........  22

Brammer-Hoelter v. Twin Peaks Charter Academy,
492 F.3d 1192, at 1202-03 10th Cir. 2007)  .........................................  16

Brock v. Thompson, 1997 OK 127, 948 P.2d 279  .........................................  24

Butler v. City of Prairie Village, 172 F.3d 736, 746 (10th Cir. 1999)  .........................  20

Burns v. Bd. of Cnty. Comm'rs, 330 F.3d 1275, 1286 (10th Cir. 2003)  ....................  17

Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979)  ...............................  25

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)  .....................................  13

City of Sand Springs v. Dep't of Pub. Welfare,
1980 OK 36, 608 P.2d 1139  ................................................................  3

Connick v. Myers, 461 U.S. 138, 146-47 (1983)  ....................................................  15, 17

Couch v. Board of Trustees of Mem'l Hosp. of Carbon Cty.,
587 F.3d 1223, 1235 (10th Cir. 2009)  .........................................................  16, 20

Cragg v. City of Osawatomie, 143 F.3d 1343, 1346 (10th Cir. 1998)  .........................  21

**CASES**
**(continued)**

**Page**

Dill v. City of Edmond, Okla., 155 F.3d 1193, 1201 (10th Cir. 1998) ...................... 15

Dill v. Rader, 83 P.2d 496, 499 (Okla. 1978) ............................................... 24

Dixon v. City of Lawton, Okl., 898 F.2d 1443 (10th Cir. 1990) ........................... 23, 25

Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) ..................................... *passim*

Hartman v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, Cook Cty., Ill.,
      4 F.3d 465, 471 (7th Cir. 1993) ......................................................... 17

Hartman v. Moore,
      547 U.S. 250, 260, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) ........................... 22

Hidal v. Gilpin County Dept. of Social Services,
      938 F.2d 1150, 155 (10th Cir. 1991) .................................................. 26

Hollingsworth v. Hill, 110 F.3d 733, 738 (10th Cir. 1997) ........................... 27

Hom v. Squire, 81 F.3d 969, 974 (10th Cir. 1996) ..................................... 18

Hunt v. Cent. Consol. Sch. Dist. (2013),  951 F. Supp 1136, at 1177 ........................ 25

Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) ................................. 20

Jones v. Collins, 132 F.3d 1048 (5th Cir.1998) ........................................... 19

Lancaster v. Indep. Sch. Dist. No. 5,
      149 F.3d 1228, 1233–34 (10th Cir.1998) ......................................... 18

Lighton v. Univ. of Utah, 209 F.3d 1213, 1224 (10th Cir. 2000) ............................. 17

Maestas v. Segura, 416 F.3d 1182, 1188 & n. 5 (10th Cir.2005) ........................... 19, 20

Malley v. Briggs, 475 U.S. 335, 341 (1986) ............................................. 26

McKennon v. Nashville Banner Publ'g Co.,
      513 U.S. 352, 359, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) ............................. 22

**CASES**
**(continued)**

Page

McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir. 1989)  ....................................... 18

Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)  .............................................. 26

Montgomery v. City of Ardmore, 365 F.3d 926, 939 (10th Cir. 2004)  ....................... 21

Mt. Healthy City Sch. Dist. v. Doyle,
     429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)  ............................ 21, 22

Nagle v. Vill. of Calumet Park, 554 F.3d 1106, 1123 (7th Cir. 2009)  ........................ 17

Nixon v. City & Cty. of Denver, 784 F.3d 1364 (10th Cir. 2015)  .............................. 21

Oliva v. Cty. of Santa Clara, No. 5:13-CV-02927-EJD,
     2014 WL 3615741, at *15 (N.D. Cal. 2014)  ...................................................... 18

Orr v. City of Albuquerque, 417 F.3d 1144, 1154–55 (10th Cir.2005)  ....................... 20

Peterson v. Grisham, 594 F.3d 723, 730 (10th Cir. 2010)  ....................................... 23, 24

Pickering v. Bd. Of Educ., 391 U.S. 563, 568 (1968)  ........................................... *passim*

Poff v. ODMHSAS, et al., CIV-14-1438 (W.D.Okla.)  .................................................. 4

Poff v. State of Oklahoma, ex rel. The Oklahoma Department
     of Mental Health and Substance Abuse Services, et al.,
     Case No. 16-6146 (10th Cir.)  ............................................................................. 16

Roberson v. PaineWebber, Inc., 998 P.2d 193, 201 (Okla. Ct. App. 1999)  ................. 24

S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982)  ................................. 13

Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir.1983)  ............................. 25

Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir.1998)  ....................... 25

Trant v. Oklahoma, 754 F.3d 1158, 1167 (10th Cir. 2014)  ..................................... 21, 22

Workman v. Jordan, 32 F.3d 475, 483 (10th Cir. 1994)  ........................................ 17, 18

## **FEDERAL STATUTES**

28 U.S.C. §1446 ................................................................................................... 1

42 U.S.C. §1983 .......................................................................................... *passim*

42 U.S.C. §1985 ......................................................................................... 24, 25

Fed. R. Civ. P. 56(c) ........................................................................................... 1

Fed. R. Civ. P. 56(c)(2) .................................................................................... 12

LCvR56.1 ............................................................................................................ 2

## **OKLAHOMA STATUTES**

56 O.S. §162.1(a) ............................................................................................... 3

## IN THE UNITED DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

KIMBERLY POFF,               )
                            )
            Plaintiff,       )
                            )
vs.                         )          Case No. CIV-15-936-R
                            )
STATE OF OKLAHOMA, ex rel.   )
DEPARTMENT OF HUMAN          )
SERVICES; et al.,            )
                            )
            Defendants.      )

## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT
## OF DEFENDANT TONY BRYAN

Defendant Tony Bryan respectfully moves the Court for summary judgment in his favor pursuant to Fed. R. Civ. P. 56(c) for the reasons that:

(1) There is no genuine issue of material fact and Lake is entitled to judgment as a matter of law; and

(2) Bryan is entitled to qualified immunity.

## I.  INTRODUCTION

This case is a civil rights and tort action brought by Plaintiff Kimberly Poff to recover damages against the Oklahoma Department of Human Services ("DHS"); its Director, Ed Lake ("Lake"); and its Inspector General, Tony Bryan ("Bryan"); arising from Plaintiff's discharge from her employment with DHS's Office of Inspector General in 2014.  Plaintiff originally filed this action in the Oklahoma County District Court but the Defendants later removed it to this Court pursuant to 28 U.S.C. §1446.  See Doc. #1.  Following removal, Plaintiff filed a Second Amended Complaint (Doc. #22).  Defendants

Lake and Bryan filed a Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #29).  This Court entered an Order (Doc. #44) on August 22, 2016 granting Lake and Bryan's Motion to Dismiss "with regard to the claims against Defendants in their official capacities and  . . . with regard to Plaintiff's claim under the Oklahoma constitution, and the equal protection and due process clauses."  (Doc. #44 at p. 12).  This Court further granted the Motion to Dismiss as to Plaintiff's claim under <u>Burk</u> and with regard to her claims for fraud and deceit, the intentional infliction of emotional distress, defamation and violation of DHS policy."  <u>Id.</u>  However, this Court denied the Motion with "regard to Plaintiff's claim for violation of her First Amendment rights and her claim of civil conspiracy."  <u>Id.</u>

Thereafter, Plaintiff sought leave to file a third amended complaint in order to allege a retaliation claim against OKDHS.  (Doc. #53).  Plaintiff's request was granted and Plaintiff filed her Third Amended Complaint (Doc. #55) on January 9, 2017.  As the Third Amended Complaint added claims against Lake and Bryan which Plaintiff had not sought leave to do, Lake and Bryan filed a Motion to Strike (Doc. #56) the material added to the claims against them.  On June 7, 2017, this Court entered an Order (Doc. #67) granting the Motion to Strike.  Accordingly, the only claims at issue against Lake and Bryan are Plaintiff's claim for violation of her First Amendment rights and the civil conspiracy claim.  Defendant Bryan now seeks summary judgment in his favor as to those remaining claims.

## II.  STATEMENT OF FACTS

Pursuant to LCvR56.1, Defendant Bryan states that the following material facts relevant to Plaintiff's claim against him are not in dispute for the purposes of this Motion.

1.     The Oklahoma Department of Human Services ("DHS") (which was originally known as the "Department of Public Welfare") is an agency of the State of Oklahoma created in 1936 by §2 of Article 25 of the Oklahoma Constitution for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to §1 of Article 25. See 56 O.S. §162.1(a).  Section 2 also required OKDHS to "perform such other duties as may from time to time be prescribed by law." See generally City of Sand Springs v. Dep't of Pub. Welfare, 1980 OK 36, 608 P.2d 1139.

2.     Prior to coming to work for DHS in 2014, Plaintiff, Kim Poff ("Ms. Poff" or "Poff") was employed as Inspector General of the Oklahoma Department of Mental Health and Substance Abuse Services (ODMHSAS).  (Ex. #1, ¶5, Affidavit of Terri White).

3.     Ms. Poff was terminated by ODMHSAS on August 23, 2013.  (Ex. #1, ¶¶15-16, Affidavit of Terri White; Ex. #2, termination letter signed by Terri White, Commissioner of ODMHSAS, dated August 23, 2013; Ex. #3: p. 4, lines 4 – 14; p. 5, lines 16-20; p. 13, line 25 to page 14 line 2,  transcript of recording of meeting between Poff, Commissioner White, and ODMHSAS Chief Operating Officer, Durand Crosby, when the decision to terminate Poff's employment was conveyed to her; Ex. #4,

correspondence from Poff's attorney, Rachel Bussett, to White and Crosby, dated August 26, 2013; Ex. #5 newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014; Ex. #6, ¶¶ 27, , 64, 96  First Amended Complaint Poff v. ODMHSAS, et al., CIV-14-1438 (W.D.Okla.); and Ex. #7, Poff's EEOC Charge of Discrimination against ODMHSAS).

4.      On January 7, 2014, Poff came to work for DHS in the Adult and Family Services Division as a Social Services Inspector III.   (Ex. #8, Personnel Action document).

5.      On January 14, 2014, Poff filed a Charge of Discrimination against ODMHSAS alleging retaliation and discrimination based upon gender and age.  (Ex. #7, EEOC Charge against ODMHSAS).

6.      On April 18, 2014, Poff applied for an open position of Investigative Agent III in the DHS Office of Inspector General (OIG).  (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14).

7.      Ms. Poff went through the normal process for applying for a classified position with DHS.  She was one of five candidates interviewed for the job, and she was recommended for hire by the interview committee.  (Ex. #9, ¶8, Affidavit of Bryan).

8.      Prior to hiring Poff to work in the OIG division, a background investigation was performed.  Tony Bryan, DHS inspector General ("Bryan") asked the investigators to conduct a thorough background investigation because he was aware that Poff had been terminated by ODMHSAS, but he did not know the reason why.  (Ex. 9, ¶6, Affidavit of Bryan)

9.      The investigators assigned to the background investigation attempted to contact ODMHSAS in order to get additional information regarding Poff's prior employment, but ODMHSAS was not responsive to their requests.  (Ex. #11, background investigation report, Page # 5-6).

10.     On May 1, 2014, Poff began work in the OIG division of DHS as Investigative Agent III.  Although Bryan was not the selecting official, he was consulted regarding Poff's selection and he was in a position to disapprove her selection.   (Ex. #9, ¶12, Affidavit of Bryan).

11.     On August 4, 2014, Poff filed a lawsuit against ODMHSAS in Oklahoma County, Oklahoma, which was later removed to the Western District of Oklahoma.  (Ex. #12, OSCN docket sheet for CJ-2014-4407).

12.     On August 20, 2014, *The Oklahoman* published an article about Poff's investigation of the Narconon facility and her lawsuit against ODMHSAS which alleged her termination was related to the investigation.  The article also mentioned that Poff was currently employed by DHS.  (Ex. #5, newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014).

13.     Ed Lake, Director of DHS, read the article in *The Oklahoman* on the morning of August 20, 2014.  Prior to reading the article, Lake did not know that DHS hired an employee who had been fired by ODMHSAS.  In fact, prior to reading the article, Lake never heard of Kimberly Poff and did not know anything about her.  (Ex. #13, ¶¶3, 4, 11, Affidavit of Lake).

14.     It concerned Lake that DHS hired an employee who worked in a high-level capacity for another state agency, and who had then been fired by that state agency, without thoroughly vetting her.   Lake had past experience indicating that it is a bad practice for an agency to hire an employee who has been fired by another state agency without a vigorous vetting process.   After reading the newspaper article about Ms. Poff, Lake was not concerned about her investigation of or her comments about Narconon.   He also was not concerned with the fact that she had sued ODMHSAS.   (Ex. 13, ¶¶5, 6, 7, 11, Affidavit of Lake).

15.      Upon arriving at the office on August 20, 2014, Lake shared the news article with Lee Anne Bruce Boone, DHS Chief of Staff, and asked her to look into how DHS had come to hire Ms. Poff, the person mentioned in the news article.   (Ex. #13, ¶¶8, 10, Affidavit of Lake).

16.     In speaking to Bruce Boone, Lake did not indicate to Boone that he wanted Poff to be fired.   (Ex. #13, ¶¶20, 21 Affidavit of Lake, and Ex. #14, ¶¶11, Affidavit of Bruce Boone).

17.     On or about August 20, 2014, Lake called Terri White, Commissioner of the ODMHSAS, to confirm she had terminated Poff for cause.   White assured Lake that she had terminated Poff for cause.   (Ex. #13, ¶14, Affidavit of Lake).

18.     White did not tell Lake that Poff had filed a charge against ODMHSAS with the EEOC and White also did not tell Lake Poff's lawsuit against ODMHSAS included claims of retaliation or discrimination based on age.   (Ex. #13, ¶¶14, 15, 18, Affidavit of Lake.)

19.     After speaking with Terri White and with Lee Anne Bruce Boone, Director Lake had no more involvement with the Kim Poff matter.  Director Lake did not speak with Bruce Boone about Poff again until Bruce Boone told him that Tony Bryan terminated Poff for making false statements on her application.  Lake did not mention anything to Bruce Boone about Poff making a gender discrimination claim against ODMHSAS.  (Ex. #13, ¶¶18, 20, 22, Affidavit of Lake; Ex. #14, ¶¶ 9, 10, 11, Affidavit of Bruce Boone; and Ex. #9, ¶30, Affidavit of Bryan).

20.     After Director Lake spoke to Chief of Staff Bruce Boone, Bruce Boone contacted Inspector General Bryan on or about August 20, 2014, to inquire about why the DHS Office of Inspector General (OIG) hired Ms. Poff after she had been fired by ODMHSAS.  Bryan told Bruce Boone he would look into the matter. (Ex. #14, ¶7, Affidavit of Bruce Boone).

21.     After speaking with Bruce Boone, Bryan purchased a copy of the August 20, 2014, edition of *The Oklahoman* in order to read the article about Poff.  (Ex. #9, ¶¶13, 14, Affidavit of Bryan).

22.     The newspaper article stated that Poff conducted an investigation of the NARCONON facility and wrote a report about her findings.  The article also stated Poff filed a lawsuit against ODMHSAS alleging her termination by ODMHSAS was related to the NARCONON investigation.  The newspaper article did not say that Poff's lawsuit included claims based upon age and gender discrimination or retaliation.  (Ex. #9, ¶26, Affidavit of Bryan and Ex. #5, newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014).

7

23.     Prior to Poff's termination, Bryan didn't read any newspaper articles other than the one published in *The Oklahoman* on August 20, 2014.  He also didn't see any other news stories or view any websites about Poff's claims.  (Ex. #9,   ¶25, Affidavit of Bryan).

24.     The newspaper article in *The Oklahoman* on August 20, 2014 also quoted Poff's lawyer, Rachel Bussett, as saying, "I don't believe DHS would have hired her back if they thought there was merit to her firing by the Department of Mental Health[.]"  Bryan believed this statement by Poff's attorney implied DHS conducted an investigation of the merits of Poff's termination by ODMHSAS.  He did not recall that DHS conducted such an investigation, so he decided to review the circumstances surrounding Poff's hiring in order to confirm his recollection and respond to Bruce Boone's inquiry.  (Ex. #9, ¶¶14, 15, and 16, Affidavit of Bryan and Ex. #5, News article "Buried report: Inspector wanted to close Narconon," *The Oklahoman*, August 20, 2014).

25.     On or about August 20, 2014, Bryan reviewed Poff's selection file, including her application for employment with OIG.  In reviewing Poff's employment application, he learned she stated she "resigned" from her position at ODMHSAS and she also indicated that she had never been terminated from any employment.  Bryan was aware these statements were false because he knew Poff had been terminated by ODMHSAS.  (Ex. #9, ¶17, Affidavit of Bryan and Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14).

26.     Bryan took notice of Poff's application in the following particulars:

8

a. On the third page of the application, she stated that her reason for leaving her employment with ODMHSAS was that she "resigned". (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 3)

b. On page five of the application, there is a question which asked, "Have you ever been terminated from employment?" Poff answered "No." (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 5)

c. Also on page #5 of the application, there is a question which asked, "Have you ever resigned from employment in lieu of being terminated?" Poff answered "Yes". She also added a comment: "My previous position was unclassified. Leadership indicated my services were no longer needed and I resigned." (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 5).

All three of these statements were misrepresentations because Poff had been terminated from her position with ODMHSAS. (Ex. #2, termination letter signed by Terri White, Commissioner of ODMHSAS, August 23, 2013).

27. On August 21, 2014, Bryan had a meeting with Bruce Boone and told her he reviewed Poff's application file, and he planned to terminate Ms. Poff because she made misrepresentations on her employment application. Specifically, on her employment application to the OIG division of DHS, Poff indicated she resigned from ODMHSAS when, in fact, she had been terminated. (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14; Ex. #9, ¶20, Affidavit of Bryan; and Ex. #14, ¶8, Affidavit of Bruce Boone).

28.     Also, on August 21, 2014, at 3:10 p.m., Bryan sent an email to Leanne Saunders, Discipline Manager for DHS, stating, "We have discovered that a probationary employee has been dishonest on their application and I believe that we need to discharge. The employee is Kim Poff." (Ex. #15, Email chain between Bryan and Saunders dated August 21, 2014).

29.     On August 21, 2014 at 4:22 pm, Saunders replied to Bryan stating,

Discharge would be consistent with DHS practice once it is determined a probationary employee has falsified their application.  I have attached a discharge letter for your signature and the applicable policy.  Please note in the heading and in the body I stated she worked in the Investigation Unit, if this is incorrect please change to the correct unit.
(Ex. #15, Email chain between Bryan and Saunders dated August 21, 2014.)

30.     It is the practice/protocol of DHS to terminate probationary employees upon discovering that they have made misrepresentations on their application for employment.   (Ex. #14, ¶8, Affidavit of Bruce Boon and Ex. #16, ¶5, Affidavit of Saunders).

31.     When Leanne Saunders advised Bryan that Poff should be terminated on August 21, 2014, she was not aware Poff had filed an EEOC Charge against ODMHSAS. Saunders was aware that Poff had been mentioned in a newspaper article. She knew from the newspaper article that Poff sued her former employer, but she was not aware of the nature of the allegations of that lawsuit.  (Ex. #16, ¶10, Affidavit of Saunders).

32.     It was a central function of Poff's job as an Investigative Agent III to testify in administrative hearings and court proceedings regarding her investigations.  (Ex. #17,

Job Description for Investigative Agent, in section "Typical Functions," second paragraph).

33.     Bryan was concerned about allowing an agent to testify in administrative and court proceedings whose credibility was questionable based upon misrepresentations on her application for employment.  Bryan was also concerned DHS could be placed in the position of being required to disclose Poff's dishonesty to Assistant District Attorneys and/or defense counsel whenever she testified in future criminal prosecutions.  Bryan believed Poff's credibility problem would undermine her effectiveness at courtroom testimony and this would make her unable to perform a central function of her job.  (Ex. #9, ¶18, Affidavit of Bryan).

34.     Bryan made the decision to terminate Poff's employment with DHS.  Other than the advice from Leanne Saunders, no one else suggested or instructed Bryan to terminate Poff's employment.  Bryan conveyed Poff's termination to her on August 22, 2014.  (Ex. #9, ¶22, Affidavit of Bryan and Ex. #18, DHS termination letter).

35.     Bryan accepted the resignation of Poff's predecessor (BF) in the Investigative Agent III position for the same reasons. It was discovered that BF made misrepresentations on her application for employment and that the ensuing problems with her credibility would impact her effectiveness at courtroom testimony.  Bryan intended to terminate BF for making misrepresentations on her application despite his belief that she was competent at her job; however, she resigned in lieu of termination.  (Ex. #9, ¶19, Affidavit of Bryan).

36.     On August 22, 2014, Bryan emailed Bruce Boone to inform her that he terminated Poff's employment with DHS.   (Ex. #19, Email, Bryan to Bruce Boone, August 22, 2014).

37.     At the time of Poff's termination, Bryan was not aware she had filed a Charge of Discrimination against ODMHSAS with the Equal Employment Opportunity Commission (EEOC). (Ex. #9, ¶27, Affidavit of Bryan).

38.     At the time of Poff's termination, Bryan was not aware that her lawsuit against ODMHSAS included claims of discrimination or retaliation based upon gender and age.  (Ex. #9, ¶28, Affidavit of Bryan).

39.     At the time of Poff's termination, Lake and Bruce Boone were not aware Poff had filed an EEOC Charge against ODMHSAS.   Nor were either Lake or Bruce Boone aware that Poff's lawsuit against ODMHSAS included claims of discrimination or retaliation based on age.   Bruce Boone also was not aware that Poff's lawsuit against ODMHSAS alleged gender discrimination claim.   (Ex #13, ¶¶14, 15, 18, Affidavit of Lake; and Ex. #14, ¶¶17, 18, Affidavit of Bruce Boone).

40.     Neither Ed Lake, Tony Bryan, nor Lee Anne Bruce Boone ever spoke about Kim Poff with the Governor or anyone on the Governor's staff.   (Ex. #13, ¶19, Affidavit of Lake; Ex. #9, ¶32, Affidavit of Bryan; and Ex. #14, ¶14, Affidavit of Bruce Boone).

41.     Lake and Bryan never had a conversation with one another about Kimberly Poff, until well after Ms. Poff's discharge from DHS.  (Ex. #9, ¶30, Affidavit of Bryan and Ex. #13, ¶21, Affidavit of Lake).

42.     Bryan did not terminate Plaintiff in retaliation for her exercise of her First Amendment rights, for her filing a lawsuit against ODMHSAS, or for her lawyer speaking to the press.  (Ex. #9, ¶¶29, 34 Affidavit of Bryan).

## III.  ARGUMENT AND AUTHORITIES

### A.  Motion for Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).  See also Allen v. Muskogee, Okla., 119 F.3d 837, 839 (10th Cir. 1997).

The moving party has the initial burden of demonstrating that summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case.  Id. at 325. The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate.  Id. at 322–24. The opposing party "may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A "mere scintilla" of evidence is not sufficient.  Id. at 247-48.

## B.  Defendant Bryan is Entitled to Summary Judgment.

When the foregoing standard is applied, it is clear that Defendant Bryan is entitled to summary judgment in his favor because (1) there is no genuine issue of material fact and he is entitled to judgment as a matter of law for the alleged violation of Plaintiff's First Amendment rights and on the civil conspiracy claim and (2) this Defendant is entitled to qualified immunity.  These contentions will be addressed seriatim.

### 1.  Plaintiff cannot recover against Bryan as a matter of law.

Plaintiff seeks relief against Defendant Bryan under 42 U.S.C. §1983 for an alleged violation of her First Amendment rights.  In order to prevail on her claim for relief under §1983, Plaintiff must establish that Bryan's conduct deprived her of a federal constitutional or statutory right and that the conduct complained of was committed under color of state law.  American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).[1]  The civil conspiracy claim could also be brought pursuant to 42 U.S.C. §1983 or Plaintiff could have intended to bring the claim under Oklahoma state law.  As it is unclear, Defendant will address both federal and state standards for conspiracy claims.

**a.     First Amendment Claim**

As the basis for her First Amendment claim, Plaintiff alleged that she engaged in protected speech "when she and her agents spoke to the press about her pending lawsuits against another state agency and when she filed her lawsuit against ODMHSAS."  Third

---

[1] Defendant Bryan does not dispute that his actions at issue in this case were taken under color of state law.  However, he does dispute that his actions deprived Plaintiff of a federal constitutional right.

Amended Complaint, Doc. #55 at ¶84. She claims that she was terminated form her employment with OKDHS as a result of her alleged protected speech. Id. at ¶87. As set forth in the Statement of Facts, this is simply inaccurate. Plaintiff was terminated due to lying on her employment application. But for the discovery of that lie, she would not have been terminated.

Having stated that Plaintiff was not terminated due to any protected speech she engaged in, one needs to examine what it is the First Amendment actually protects. "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006); see also Pickering v. Bd. Of Educ., 391 U.S. 563, 568 (1968). Due to the protections provided by the First Amendment, "a public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech." Dill v. City of Edmond, Okla., 155 F.3d 1193, 1201 (10th Cir. 1998) (citing Connick v. Myers, 461 U.S. 138, 146-47 (1983)). Defendant notes that the speech at issue in this case was made by Plaintiff's attorney, not Plaintiff. Thus, Plaintiff did not engage in protected activity. See Ambrose v. Twp. of Robinson, 303 F.3d 488, 495 (3d Cir. 2002) ("[T]here can be no First Amendment claim when there is no speech by the plaintiff.").

In analyzing First Amendment claims, courts use a five-prong test crafted originally from Garcetti and modified by Pickering (commonly referred to as the Garcetti/Pickering test:

> First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech

simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends.  Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision.  Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Couch v. Board of Trustees of Memorial Hosp. of Carbon County, 587 F.3d 1223, 1235 (10th Cir. 2009) (citing Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, at 1202-03 10th Cir. 2007) (internal quotations and alterations omitted).

In the instant case, Plaintiff's § 1983 First Amendment claim against Defendants Lake and Bryan fails the Garcetti/Pickering test for several reasons.  Turning first to whether Plaintiff's speech was made pursuant to her official duties, it is conceded that Plaintiff was not speaking pursuant to her official duties with DHS; however, the speech was made in connection with her official duties with ODMHSAS.  See Poff v. State of Oklahoma, ex rel. The Oklahoma Department of Mental Health and Substance Abuse Services, et al., Case No. 16-6146 (10th Cir. Order, pp.11-13, Mar. 30, 2017).[2] ("Plaintiffs admit their speech was within the scope of their employment with ODMHSAS[;]" and,

---

[2] The Order and judgment in the 10th Cir.'s Poff case is "not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1."  Defendant contends that Plaintiff's admissions in her prior case prevent her from taking a different stance in this case due to the res judicata and collateral estoppel doctrines.

"Plaintiffs' speech is not protected because it was made within the scope of their public employment").   Regardless of the distinction at the first element, Plaintiff's First Amendment claim dissolves as the Garcetti/Pickering analysis continues.

The second element that this Court must consider is whether Plaintiff's speech was a matter of public concern.  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147–48 (1983).  In this case, it is clear that the statements made by Plaintiff (or her attorney) after her termination from DMH were merely to further her private interests in pursuing her wrongful termination lawsuit against DMH. See Burns v. Bd. of Cnty. Comm'rs, 330 F.3d 1275, 1286 (10th Cir. 2003) ("It is not sufficient that the topic of the speech be of general interest to the public; in addition, what is actually said must meet the public concern threshold."); Workman v. Jordan, 32 F.3d 475, 483 (10th Cir. 1994) (in determining whether the speech was of public concern or only dealt with "personal employment matters," courts are to look at "the subjective intent of the speaker.") (citation and quotation omitted); Lighton v. Univ. of Utah, 209 F.3d 1213, 1224 (10th Cir. 2000) (noting that the motive of the speaker is an important consideration in the First Amendment context).  See also Nagle v. Vill. of Calumet Park, 554 F.3d 1106, 1123 (7th Cir. 2009) (holding "the subject matter alone does not convey constitutional protection to [a governmental employee's] statements."); Hartman v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, Cook Cty., Ill., 4 F.3d 465, 471 (7th Cir. 1993) (noting that "even if an issue is one of public concern in a general sense, as sexual harassment surely is, still we

must ask whether the speaker raised the issue because it is matter of public concern or whether, instead, the issue was raised to "further some purely private interest.").

In <u>Workman</u>, the plaintiff alleged he was retaliated against for testifying at his (successful) termination appeal.  <u>Workman v. Jordan</u>, 32 F.3d at 483.  The court found that although the plaintiff spoke of the sheriff's department's tolerance of a sexist environment, he only did so to show that his own sexist behavior was not anomalous.  In considering the context and content of the testimony, the court ruled that the plaintiff "was airing a grievance of a personal nature, and thus the speech . . . is not protected." <u>Id.</u>  Likewise, Plaintiff's speech was made in an effort to assist her in her wrongful termination lawsuit and is not entitled to First Amendment protection. <u>See</u> <u>Hom v. Squire</u>, 81 F.3d 969, 974 (10th Cir. 1996) (speech regarding grievances about internal departmental affairs is not a matter of public concern); <u>Lancaster v. Indep. Sch. Dist. No. 5</u>, 149 F.3d 1228, 1233–34 (10th Cir.1998) (speech regarding disputes over the term of employment is not a matter of public concern); <u>McEvoy v. Shoemaker</u>, 882 F.2d 463, 466 (10th Cir. 1989) (speech regarding workplace frustration is not a matter of public concern); <u>Oliva v. Cty. of Santa Clara</u>, No. 5:13-CV-02927-EJD, 2014 WL 3615741, at *15 (N.D. Cal. 2014) (holding that the plaintiff's speech "appears solely motivated by her personal concern for her own employment status and the prospect of termination . . . [which is] undeserving of First Amendment protection.").  In the August 20, 2014, news article, (Ex. #5 newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014), all of the quoted statements made on behalf of Plaintiff are either made by her lawyer directly, or are taken from the Petition in

the ODMHSAS lawsuit which Poff's attorney filed in Oklahoma County District Court on August 4, 2014.  See Jones v. Collins, 132 F.3d 1048 (5th Cir.1998) (employment action taken on mistaken belief that employee had spoken negatively regarding a matter was not a First Amendment violation as "[a] free speech claim depends on speech, and there was none in this case.") (internal quotations omitted).

The third prong of the Garcetti/Pickering test is not directly relevant to the facts of this case as Plaintiff was not terminated as a result of her speech.  (Ex. #9, ¶29, Affidavit of Bryan).  Thus, a discussion of whether Plaintiff's interest in commenting on the issue outweighs the interest of the state as employer is not necessary for resolution of the claim.  However, Defendant Bryan notes the interest that DHS has in taking a hardline and consistent stance on terminating employees who are found to have lied on their application outweighs any interest that Plaintiff may claim to possess.

Even if Plaintiff's claim passes the first three prongs of the Garcetti/Pickering test, it fails entirely at the fourth – that is whether Plaintiff's speech was a motivating factor in the decision to terminate her employment with DHS.  It is Plaintiff's burden to establish both an adverse employment action and the element of "causation - that is, that the constitutionally protected speech was a substantial motivating factor in the employer's decision to adversely alter the employee's conditions of employment." Maestas v. Segura, 416 F.3d 1182, 1188 & n. 5 (10th Cir.2005).  This she cannot do.  There is no evidence that any protected speech by Plaintiff was a substantial motivating factor in the decision to terminate her employment with OKDHS.  Instead, Plaintiff will only be able to offer speculation that she was terminated due to her alleged protected speech.  Such

speculation will not suffice to defeat a motion for summary judgment.  Maestas, 416 F.3d at 1189 ("Speculation or hunches amidst rumor and innuendo will not suffice."); Orr v. City of Albuquerque, 417 F.3d 1144, 1154–55 (10th Cir.2005) (affirming summary judgment on First Amendment retaliation claim where evidence was insufficient to demonstrate genuine issue of material fact on fourth prong); Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (affirming summary judgment for defendant on plaintiff's retaliation claim where claim rested on logical fallacy of *post hoc, ergo propter hoc*, i.e. "after this, therefore because of this").

Defendant anticipates that Plaintiff will argue that the temporal proximity between the time the news article appeared and her termination is sufficient to establish causation. This is simply not so.  The Tenth Circuit has consistently held that "the mere temporal proximity of Plaintiff's protected speech to the adverse action is insufficient, without more, to establish retaliatory motive."  Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cty., 587 F.3d 1223, 1236 (10th Cir. 2009) (quoting Baca v. Sklar, 398 F.3d 1210, 1221 (10th Cir. 2005)); Butler v. City of Prairie Village, 172 F.3d 736, 746 (10th Cir. 1999).  The facts as demonstrated by the sworn affidavits of Defendants Lake (Ex. #13, ¶¶3 and 10) and Bryan, (Ex. #9, ¶13), along with the affidavits of Leanne Saunders (Ex. #16, ¶10) and Lee Anne Bruce Boone, (Ex. #14, ¶¶3 and 4), demonstrate that the August 20 *Daily Oklahoman* article spawned a review of Plaintiff's employment application.  It was her statement on that application that caused Bryan to decide to terminate Plaintiff.  As there is no evidence to satisfy the fourth prong of the Garcetti/Pickering test, summary judgment for Defendant Bryan is proper.  See

Montgomery v. City of Ardmore, 365 F.3d 926, 939 (10th Cir. 2004) (affirming summary judgment on First Amendment retaliation claim where plaintiff offered no evidence that reasons given for employment decision were pretextual).  Moreover, Plaintiff contends that her termination was a result of media coverage.  Taken as true, this is an admission that the termination was not due to her speech.  In Nixon v. City & Cty. of Denver, 784 F.3d 1364 (10th Cir. 2015), the Tenth Circuit was presented with a similar argument by a plaintiff arguing that his First Amendment retaliation claim was improperly dismissed. On appeal, the plaintiff asserted his termination was the result of "media and political pressure."  Id. at 1369.  The Tenth Circuit noted that such argument had "no apparent relevance to his claims."  Id.

Finally, even if Plaintiff's claim were to survive the first four prongs, it withers and dies at the fifth as OKDHS would have terminated Plaintiff's employment for lying on her application regardless of her speech.  In Trant v. Oklahoma, the Tenth Circuit explained the analysis required at the fifth prong, which is also known as the Mt. Healthy analysis, as follows:

> At the fifth step, if the employee establishes that his or her protected speech was a motivating factor in the adverse employment decision, "the burden then shifts to the defendant, who must show by a preponderance of the evidence it would have reached the same employment decision in the absence of the protected activity." Cragg v. City of Osawatomie, 143 F.3d 1343, 1346 (10th Cir. 1998) (citing Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). This inquiry, also known as the Mt. Healthy analysis, arises from the Supreme Court's recognition that a "rule of causation which focuses solely on whether protected conduct played a part" in an adverse employment decision "could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." Mt. Healthy, 429 U.S. at 285, 97 S.Ct. 568; see also id. at

21

286, 97 S.Ct. 568 ("But [a borderline or marginal] candidate ought not to be able, by engaging in [protected] conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision."); <u>Hartman v. Moore</u>, 547 U.S. 250, 260, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (discussing Mt. Healthy) ("If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind."); <u>McKennon v. Nashville Banner Publ'g Co.</u>, 513 U.S. 352, 359, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) ("We held [in <u>Mt. Healthy</u>] that if the lawful reason alone would have sufficed to justify the firing, the employee could not prevail in a suit against the employer.").

<u>Trant v. Oklahoma</u>, 754 F.3d 1158, 1167 (10th Cir. 2014).

In this case, OKDHS has a standing practice that any employee who is discovered to have lied or misrepresented any information on his or her application will be terminated.   In fact, Bryan had the intention to terminate (she resigned in lieu of termination) the individual who held the position immediately preceding Plaintiff for that exact reason.   (Ex. #9, ¶19, Bryan Affidavit; and Ex. #16, ¶5, Affidavit of Leanne Saunders).   Further, Bryan stated his concerns that Plaintiff's misrepresentations caused, and states that these concerns were the only concerns which led to her termination.   He was not concerned about her lawsuit against ODMHSAS or her statements to the newspaper.   Thus, there can be no doubt that OKDHS's reason for terminating Plaintiff was sufficient to justify the termination.   Accordingly, Defendant Bryan is entitled to summary judgment in his favor on Plaintiff's First Amendment retaliation claim.   <u>See Ballard v. Muskogee Reg'l Med. Ctr.</u>, 238 F.3d 1250, 1253 (10th Cir. 2001) (Holding

that "public employer's "anyway" defense - if established by a preponderance of the evidence - acts as an absolute bar to liability[.]"").

**b.      Civil Conspiracy Claim**

In addition to her First Amendment retaliation claim, Plaintiff has asserted a civil conspiracy claim against Bryan.  See Doc. 55, Third Amended Complaint at ¶¶ 90-94. She claims that Defendants Lake and Bryan:

> conspired with Terri White, the office of the Governor of the State of Oklahoma, and or other employees and individuals within ODMHSAS and/or DHS to suppress the information that DHS had full knowledge of Plaintiff's employment, termination and claims against ODMHSAS and terminated her illegally to avoid further press or media coverage about her employment with another state agency.

Id. at ¶ 91.

In order to recover under a 42 U.S.C. §1983 claim in the Tenth Circuit, a plaintiff must "prove not only a conspiracy, but also an actual deprivation of rights[.]"  Dixon v. City of Lawton, Okl., 898 F.2d 1443, 1449 (10th Cir. 1990).  Plaintiff will be able to present no evidence to support her claim of this alleged conspiracy.  That is because there was no conspiracy.  And as shown above, there was no deprivation of Plaintiff's First Amendment rights; thus, the §1983 conspiracy claims fails and summary judgment must be granted in favor of Defendant Bryan.

To the extent Plaintiff's conspiracy claim rests on Oklahoma law, summary judgment is still warranted.  "Oklahoma law pertaining to a "civil conspiracy" was summarized by the Tenth Circuit in Peterson v. Grisham, 594 F.3d 723, 730 (10th Cir. 2010), as follows:

A civil conspiracy consists of two or more persons agreeing "to do an unlawful act, or to do a lawful act by unlawful means." Roberson v. PaineWebber, Inc., 998 P.2d 193, 201 (Okla. Ct. App. 1999).  But "a conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim." Id.  "Disconnected circumstances, any . . . of which[ ] are just as consistent with lawful purposes as with unlawful purposes, are insufficient to establish a conspiracy." Dill v. Rader, 83 P.2d 496, 499 (Okla. 1978).

In Brock v. Thompson, 1997 OK 127, 948 P.2d 279, the Oklahoma Supreme Court further explained that:

> Unlike its criminal counterpart, civil conspiracy itself does not create liability.  To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means.  There can be no civil conspiracy where the act complained of and the means employed are lawful.

(Footnotes omitted and emphasis in original).

In the instant case, Plaintiff will be unable to present any evidence of either the required "illegal ends" or "illegal means" by Defendants Lake and Bryan.  Peterson v. Grisham, supra, 594 F.3d at 731.

Defendant does not believe Plaintiff intends to assert a conspiracy claim pursuant to 42 U.S.C § 1985, but, out of an abundance of caution, Defendant would point out that there is no evidence of a conspiracy pursuant to 42 U.S.C. §1985.  In ¶¶91 and 92 of her Third Amended Complaint, Plaintiff alleges that Ed Lake and Tony Bryan…

> "as employees and directors  of DHS, jointly, unlawfully and illegally conspired with Terri White, The Office of the Governor of the State of Oklahoma, and or other employees and individuals within ODMHSAS and/or DHS to supppress [:] …  *the information that DHS had full knowledge of Plaintiff's employment, termination and claims against ODMHSAS and terminated her illegally to avoid further press or media coverage about her employment with another state agency (¶91) [;] … Plaintiff's right to have gainful employment, earn retirement and social*

24

*security benefits, to defame and malign her personal and professional reputation and to enjoy all the privileges and immunities guaranteed to her as a citizen of the United States and the state of Oklahoma as guaranteed under the United States and Oklahoma Constitution.* (¶92).

"[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985." Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979). Plaintiff has not pled or shown a class-based discriminatory animus on the part of Defendant Bryan.

In considering what is required in a §1985 claim, the District of New Mexico, in Hunt v. Cent. Consol. Sch. Dist., 951 F. Supp 1136, at 1177 (2013), stated: "To succeed on a §1985 claim, a plaintiff must prove a conspiracy[,]" citing Dixon v. City of Lawton, Okla., 898 F.2d 1443, 1447(10th Cir. 1990). The District Court went on:

> To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir.1998) (discussing conspiracy under § 1983). "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir.1983) (discussing conspiracy under § 1983).

Hunt v. Cent. Consol. Sch. Dist., 951 F. Supp. 2d 1136, 1177 (D.N.M. 2013)

Ed Lake and Tony Bryan did not talk to one another about Ms. Poff's lawsuit against ODMHSAS, nor did they talk to one another about her or her attorney's statements in the press. (Ex. #13, ¶21, Affidavit of Lake; Ex. #9, ¶30, Affidavit of Bryan). Defendant Lake spoke with Terri White briefly to confirm she terminated Poff from her ODMHSAS employment, and to confirm that she fired Poff for cause. White did not suggest that DHS fire Poff. Neither Lake nor Bryan spoke with the Governor or

anyone on her staff about Kim Poff.  (Ex.#13, ¶12, 13, 19, Affidavit of Lake; and Ex. #9, ¶32, Affidavit of Bryan).  Lake did not direct anyone to terminate Poff, and no one directed Bryan to terminate Poff.  (Ex. #13, ¶21, Affidavit of Lake; and Ex. #9, ¶22, Affidavit of Bryan). Given these facts, it is clear that Plaintiff cannot prove a conspiracy as described in 42 U.S.C. §1985.

### *2.  Defendant Bryan is entitled to qualified immunity.*

Should the Court determine Defendant Bryan is *not* entitled to judgment in his favor as a matter of law for the alleged violations of Plaintiff's First Amendment rights then Defendant Bryan submits that he is nonetheless entitled to qualified immunity from personal liability under the circumstances of this case.

Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986). There is a presumption in favor of immunity for public officials in their individual capacities.  Hidal v. Gilpin County Dept. of Social Services, 938 F.2d 1150, 155 (10th Cir. 1991).  Qualified immunity may be denied only "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded" that the conduct was lawful at the time the defendant acted.  Malley, 475 U.S. at 341.

Once the defense of qualified immunity has been raised, the burden shifts to the Plaintiff to show that it is not applicable.  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  In the instant case, Plaintiff cannot meet her burden.  The record before the Court does not establish a violation of the First Amendment.  Moreover, to be entitled to qualified immunity, Defendant only needs to demonstrate that his actions were

objectively reasonable in light of the information possessed at the time.  Hollingsworth v. Hill, 110 F.3d 733, 738 (10th Cir. 1997); see also Anderson v. Creighton, 483 U.S. 635, 641 (1987) (noting that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable.").  Thus, Defendant Bryan is entitled to qualified immunity. See Malley v. Briggs, 475 U.S. 335, 341 (1986) (Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law.").

### III.  CONCLUSION

In summary, Plaintiff cannot recover against Defendant Bryan as a matter of law on either the First Amendment retaliation claim or the conspiracy claim.  Moreover, Defendant Bryan is entitled to qualified immunity. As a result, summary judgment in favor of Defendants Bryan is warranted under Rule 56 and Defendant therefore urges the Court to grant the instant Motion.

Respectfully submitted,

*s/ John E. Douglas*
John E. Douglas (OBA #2447)
Emily B. Fagan (OBA #22427)
Anastasia Pederson (OBA# 17118)
Assistant General Counsel
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone:  (405) 521-3638
Facsimile:  (405) 521-6816
E-mail:  John.Douglas@OKDHS.org
E-mail:  Emily.Fagan@OKDHS.org
E-mail:  Stacy.Pederson@OKDHS.org
*Attorneys for Defendant Oklahoma*
*Department of Human Services*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Rachel Bussett
*Attorney for Plaintiff*

*s/ John E. Douglas*
John E. Douglas

28