## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIMBERLY POFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CIV-936-R |
| | ) | |
| OKLAHOMA DEPARTMENT OF HUMAN | ) | |
| SERVICES, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
## DEFENDANT OKLAHOMA DEPARTMENT OF HUMAN SERVICES

Respectfully submitted,

*s/ Anastasia S.  Pederson*
Anastasia S. Pederson (OBA# 17118)
John E. Douglas (OBA #2447)
Emily B. Fagan (OBA #22427)
Assistant General Counsel
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone:  (405) 521-3638
Facsimile:  (405) 521-6816
E-mail:  Stacy.Pederson@OKDHS.org
E-mail:  John.Douglas@OKDHS.org
E-mail:  Emily.Fagan@OKDHS.org
*Attorneys for Defendant Oklahoma*
*Department of Human Services*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................... iii

MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
    DEFENDANT OKLAHOMA DEPARTMENT OF HUMAN SERVICES ...... 1

Motion for Summary Judgment ..................................................................... 1

Summary of the Case ..................................................................................... 2

Brief In Support of Motion for Summary Judgment ...................................... 3

    Statement of Facts Under LCvR56.1(b) ............................................. 3

    Standard for Summary Judgment ...................................................... 13

    Argument and Authorities ................................................................. 14

    I. DHS is entitled to summary judgment on Poff's claim
      of retaliation under Title VII. ........................................................ 14

        A. Poff cannot show a causal connection between the filing of
          her Title VII based claims against her former employer and
          her termination by DHS, and thus she cannot establish the
          third element of her prima facie case of retaliation. ............................. 15

        B. Under the *McDonell-Douglas* burden shifting framework, DHS
          terminated Poff for a legitimate, non-discriminatory reason. ............... 17

        1. Poff was terminated by her former employer and she
          misrepresented this fact on her application for employment. ............... 18

        2. Poff was terminated by DHS because she made misrepresentations
          on her application for employment which impacted
          her ability to perform a central function of her job. ............................. 21

        3. It is the practice/protocol of DHS to terminate probationary
          employees when it is discovered that they have made
          misrepresentations on their application for employment. ...................... 23

4. Bryan's decision to terminate Poff was consistent
with his own past practice. ..................................................................  23

II. Poff's Oklahoma Anti-Discrimination Act (OADA) claim fails for
the same reasons as her federal claims because the OADA
mirrors federal anti-discrimination protections. ..........................................  25

III. CONCLUSION  ............................................................................................  26

CERTIFICATE OF SERVICE ....................................................................................  27

# TABLE OF AUTHORITIES

## CASES

**Page**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)  ................................................ 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986)  ...................................... 14

*Barzellone v. City of Tulsa*, 210 F.3d 389,
    2000 WL 339213 (10th Cir. 2000) (unpublished)  .............................................. 25

*Bennett v. Windstream*, 30 F.Supp3d 1243, 1259 (N.D. Okla. 2014)  ......................... 25

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)  ...................................................... 13

*City of Sand Springs v. Dep't of Pub. Welfare*, 1980 OK 36, 608 P.2d 1139  ................ 3

*Hawkins v. Smith*, 46 F. Supp. 3d 1175, 1191 (N.D. Okla 2014)  ................................. 25

*Jones v. Barnhart,* 349 F.3d 1260, 1266 (10th Cir.2003)  ............................................ 18

*Jones v. UPS*, 502 F.3d 1176, 1194-1195 (10th Cir. 2007)  .................................... 16, 17

*Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)  .............. 14

*McCully v. American Airlines, Inc.*,
    695 F. Supp. 2d 1225, 1247 (N.D. Okla. 2010)  ..................................................... 25

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)  .................... *passim*

*Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002)  .................. 16

*Poff v. ODMHSAS, et al.*, CIV-14-1438 (W.D.Okla.)  .................................................... 4

*Poff v. Oklahoma Department of Mental Health and
    Substance Abuse Services*, No.16-6146 (10th Cir. March 30, 2017)  ................. 15

*Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983)  ........................................... 13

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)  .............................. 24

# CASES
## (continued)

**Page**

*Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004)  ...................  24

*Robert v. Board of County See, Commissioners of
    Brown County, Kans.*, 691 F.3d 1211, (10th Cir. 2012)  .....................................  22

*St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 509 (1993)  ...........................................  24

*Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)  ....................................................  14

*Stephen v. PGA Sheraton Resort, Ltd.*, 873 F.2d 276, 280–81 (11th Cir. 1989)  .........  22

*Stover v. Martinez*, 382 F.3d 1064, 1070-1071 (10th Cir. 2004)  ...............................  17, 18

*Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369-70 (10th Cir. 1997)  ..........  15

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)  ...........................  24

*Timmerman v. U.S. Bank, N.A.*,
    483 F.3d 1106, 1123-24 (10th Cir. 2007)  .................................................... *passim*

*Vaughn v. Villa*, 537 F.3d 1147, 1150-51 (10th Cir. 2008)  .................................. *passim*

*Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)  ..........................................  16, 17

# FEDERAL STATUTES

42 U.S.C. § 2000e-3(a) ............................................................................. 2, 14

Fed. R. Civ. P. 56(c) ................................................................................. 1

LCvR56.1(b) ............................................................................................. 3

# OKLAHOMA STATUTES

25 O.S. § 1302 (A)(1) .............................................................................. 25

25 O.S. § 1350 ......................................................................................... 2

25 O.S. § 1350(A) .................................................................................... 25

25 O.S. § 1350(F) ..................................................................................... 25

25 O.S. § 1350 ......................................................................................... 2

56 O.S. § 162.1(a) .................................................................................... 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

KIMBERLY POFF,                          )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )          Case No. CIV-15-936-R
                                        )
OKLAHOMA DEPARTMENT    OF               )
HUMAN SERVICES; et al.,                 )
                                        )
                    Defendants.         )

**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
DEFENDANT OKLAHOMA DEPARTMENT OF HUMAN SERVICES**

**Motion for Summary Judgment**

Comes now the Defendant, Oklahoma Department of Human Services ("DHS"), and respectfully moves the Court for summary judgment in its favor pursuant to Fed. R. Civ. P. 56(c) for the reason that there is no genuine issue of material fact and DHS is entitled to judgment as a matter of law.  Plaintiff, Kimberly Poff ("Poff") originally filed suit in Oklahoma County and her Petition was removed to this court (Doc. # 1).  Poff's remaining claims against DHS in her Third Amended Complaint (Doc. #55) are for "retaliation discrimination" and for violation of the Oklahoma Anti-Discrimination Act (OADA). Poff originally pled that her retaliation claim was based upon several federal and state constitutional provisions. This Court's Order of June 7, 2017 (Doc. #66) dismissed her claim to the extent that it was based upon a constitutional due process violation. The same Order also remanded the portions of her "retaliation discrimination" claim based upon the right to free speech and jury trial under the Oklahoma Constitution to Oklahoma County

District Court.  The Court's Order of June 7th also clarified that Poff may proceed in this Court on a retaliation claim based upon Title VII, 42 U.S.C. § 2000e-3(a) and under the OADA.[1]  DHS now moves for summary judgment on all of Poff's remaining claims.

**Summary of the Case**

Plaintiff, Kimberly Poff ("Poff"), alleges retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), and the Oklahoma Anti-Discrimination Act (OADA), 25 O.S. § 1350, based upon her employment and termination by Defendant, Oklahoma Department of Human Services ("DHS").  DHS terminated Poff on August 22, 2014 after discovering misrepresentations on her application for employment. Specifically, Poff stated that she had "resigned" from her previous employment with the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS"), when she had actually been terminated.  Her application also indicated that she had never been terminated from any employment.

Poff claims that she was terminated by DHS because DHS became aware that she had filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and a subsequent lawsuit against her former employer, ODMHSAS, alleging claims of retaliation and age and gender discrimination.  Poff asserts that a newspaper article was published on or about August 19, 2014 which stated that she had been fired by ODMHSAS and that she had filed a lawsuit against them. She

---

[1] Poff previously stipulated to the dismissal of her §1983 claim against DHS and also stipulated to the dismissal of her claim that DHS is liable to her for violation of its own policies. See, *Order*, Doc. #43, at p.#2.  In addition, this Court's Order of August 22, 2016 (Doc. #43) dismissed her claim that her termination was in violation of public policy pursuant to *Burk v. K-Mart Corp*, 1989 OK 22, 770 P.2d 24 (Okla. 1989).

alleges that her termination by DHS was in retaliation for exercising her rights under Title VII by engaging in a protected activity – filing a lawsuit against her former employer.

DHS acknowledges that it became aware of a newspaper article dated on or about August 20, 2014 which indicated that Poff had been fired by ODMHSAS and hired by DHS. While the article stated that Poff had sued her former employer, it did not state that her lawsuit was based upon retaliation, gender discrimination, age discrimination, or any right protected by Title VII. DHS maintains that the decision-maker, Tony Bryan, did not have knowledge of Poff's claims of discrimination and retaliation under Title VII against her former employer and that her termination was unrelated to these claims.

**Brief In Support of Motion for Summary Judgment**

**Statement of Facts Under LCvR56.1(b)**

1.     The Oklahoma Department of Human Services ("DHS") (which was originally known as the "Department of Public Welfare") is an agency of the State of Oklahoma created in 1936 by §2 of Article 25 of the Oklahoma Constitution for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to §1 of Article 25. See 56 O.S. §162.1(a).  Section 2 also required OKDHS to "perform such other duties as may from time to time be prescribed by law." See generally *City of Sand Springs v. Dep't of Pub. Welfare*, 1980 OK 36, 608 P.2d 1139.

2.     Prior to coming to work for DHS in 2014, Plaintiff, Kim Poff ("Ms. Poff" or "Poff") was employed as Inspector General of the Oklahoma Department of Mental

Health and Substance Abuse Services (ODMHSAS).   (Ex. #1, ¶5, Affidavit of Terri White).

3.      Ms. Poff was terminated by ODMHSAS on August 23, 2013.  (Ex. #1, ¶¶ 15-16, Affidavit of Terri White; Ex. #2, termination letter signed by Terri White, Commissioner of ODMHSAS, dated August 23, 2013; Ex. #3: p. 4, lines 4 – 14; p. 5, lines 16-20; p. 13, line 25 to page 14 line 2,  transcript of recording of meeting between Poff, Commissioner White, and ODMHSAS Chief Operating Officer, Durand Crosby, when the decision to terminate Poff's employment was conveyed to her; Ex. #4, correspondence from Poff's attorney, Rachel Bussett, to White and Crosby, dated August 26, 2013; Ex. #5 newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014; Ex. #6, ¶¶ 14, 27, 64, 96  First Amended Complaint <u>Poff v. ODMHSAS, et al</u>., CIV-14-1438 (W.D.Okla.); and Ex. #7, Poff's EEOC Charge of Discrimination against ODMHSAS).

4.      On January 7, 2014, Poff came to work for DHS in the Adult and Family Services Division as a Social Services Inspector III.   (Ex. #8, Personnel Action document).

5.      On January 14, 2014, Poff filed a Charge of Discrimination against ODMHSAS alleging retaliation and discrimination based upon gender and age.  (Ex. #7, EEOC Charge against ODMHSAS).

6.      On April 18, 2014, Poff applied for an open position of Investigative Agent III in the DHS Office of Inspector General (OIG).  (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14).

4

7.     Ms. Poff went through the normal process for applying for a classified position with DHS.  She was one of five candidates interviewed for the job, and she was recommended for hire by the interview committee.  (Ex. #9, ¶8, Affidavit of Bryan).

8.     Prior to hiring Poff to work in the OIG division, a background investigation was performed.  Tony Bryan, DHS inspector General ("Bryan") asked the investigators to conduct a thorough background investigation because he was aware that Poff had been terminated by ODMHSAS, but he did not know the reason why.  (Ex. 9, ¶6, Affidavit of Bryan).

9.     The investigators assigned to the background investigation attempted to contact ODMHSAS in order to get additional information regarding Poff's prior employment, but ODMHSAS was not responsive to their requests.  (Ex. #11, background investigation report, Page # 5-6).

10.    On May 1, 2014, Poff began work in the OIG division of DHS as Investigative Agent III.  Although Bryan was not the selecting official, he was consulted regarding Poff's selection and he was in a position to disapprove her selection.   (Ex. #9, ¶12, Affidavit of Bryan).

11.    On August 4, 2014, Poff filed a lawsuit against ODMHSAS in Oklahoma County, Oklahoma, which was later removed to the Western District of Oklahoma.  (Ex. #12, OSCN docket sheet for CJ-2014-4407).

12.    On August 20, 2014, *The Oklahoman* published an article about Poff's investigation of the Narconon facility and her lawsuit against ODMHSAS which alleged her termination was related to the investigation.  The article also mentioned that Poff was

currently employed by DHS.  (Ex. #5, newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014).

13.     Ed Lake, Director of DHS, read the article in *The Oklahoman* on the morning of August 20, 2014.  Prior to reading the article, Lake did not know that DHS hired an employee who had been fired by ODMHSAS.  In fact, prior to reading the article, Lake never heard of Kimberly Poff and did not know anything about her.  (Ex. #13, ¶¶3, 4, 11, Affidavit of Lake).

14.     It concerned Lake that DHS hired an employee who worked in a high-level capacity for another state agency, and who had then been fired by that state agency, without thoroughly vetting her.  Lake had past experience indicating that it is a bad practice for an agency to hire an employee who has been fired by another state agency without a vigorous vetting process.  After reading the newspaper article about Ms. Poff, Lake was not concerned about her investigation of or her comments about Narconon.  He also was not concerned with the fact that she had sued ODMHSAS.  (Ex. 13, ¶¶5, 6, 7, 11, Affidavit of Lake).

15.     Upon arriving at the office on August 20, 2014, Lake shared the news article with Lee Anne Bruce Boone, DHS Chief of Staff, and asked her to look into how DHS had come to hire Ms. Poff, the person mentioned in the news article.  (Ex. #13, ¶¶8, 10, Affidavit of Lake).

16.     In speaking to Bruce Boone, Lake did not indicate to Boone that he wanted Poff to be fired.  (Ex. #13, ¶¶20, 21 Affidavit of Lake, and Ex. #14, ¶¶11, Affidavit of Bruce Boone).

17.     On or about August 20, 2014, Lake called Terri White, Commissioner of the ODMHSAS, to confirm she had terminated Poff for cause.  White assured Lake that she had terminated Poff for cause.  (Ex. #13, ¶14, Affidavit of Lake).

18.     White did not tell Lake that Poff had filed a charge against ODMHSAS with the EEOC and White also did not tell Lake that Poff's lawsuit against ODMHSAS included claims of retaliation or discrimination based on age.  (Ex. #13, ¶¶14, 15, 18 Affidavit of Lake.)

19.     After speaking with Terri White and with Lee Anne Bruce Boone, Director Lake had no more involvement with the Kim Poff matter.  Director Lake did not speak with Bruce Boone about Poff again until Bruce Boone told him that Tony Bryan terminated Poff for making false statements on her application.  Lake did not mention anything to Bruce Boone about Poff making a gender discrimination claim against ODMHSAS.  (Ex. #13, ¶¶18, 20, 22, Affidavit of Lake; Ex. #14, ¶¶ 9, 10, 11, Affidavit of Bruce Boone; and Ex. #9, ¶30, Affidavit of Bryan).

20.     After Director Lake spoke to Chief of Staff Bruce Boone, Bruce Boone contacted Inspector General Bryan on or about August 20, 2014, to inquire about why the DHS Office of Inspector General (OIG) hired Ms. Poff after she had been fired by ODMHSAS.   Bryan told Bruce Boone he would look into the matter. (Ex. #14, ¶7, Affidavit of Bruce Boone).

21.     After speaking with Bruce Boone, Bryan purchased a copy of the August 20, 2014, edition of *The Oklahoman* in order to read the article about Poff.  (Ex. #9, ¶¶13, 14, Affidavit of Bryan).

22.     The newspaper article stated that Poff conducted an investigation of the NARCONON facility and wrote a report about her findings.  The article also stated Poff filed a lawsuit against ODMHSAS alleging her termination by ODMHSAS was related to the NARCONON investigation.  The newspaper article did not say that Poff's lawsuit included claims based upon age and gender discrimination or retaliation.  (Ex. #9, ¶26, Affidavit of Bryan and Ex. #5, newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014).

23.     Prior to Poff's termination, Bryan didn't read any newspaper articles other than the one published in *The Oklahoman* on August 20, 2014.  He also didn't see any other news stories or view any websites about Poff's claims.  (Ex. #9,   ¶25, Affidavit of Bryan).

24.     The newspaper article in *The Oklahoman* on August 20, 2014 also quoted Poff's lawyer, Rachel Bussett, as saying, "I don't believe DHS would have hired her back if they thought there was merit to her firing by the Department of Mental Health[.]" Bryan believed this statement by Poff's attorney implied DHS conducted an investigation of the merits of Poff's termination by ODMHSAS.  He did not recall that DHS conducted such an investigation, so he decided to review the circumstances surrounding Poff's hiring in order to confirm his recollection and respond to Bruce Boone's inquiry.  (Ex. #9, ¶¶14, 15, and 16, Affidavit of Bryan and Ex. #5, News article "Buried report: Inspector wanted to close Narconon," *The Oklahoman*, August 20, 2014).

25.     On or about August 20, 2014, Bryan reviewed Poff's selection file, including her application for employment with OIG.  In reviewing Poff's employment

application, he learned she stated she "resigned" from her position at ODMHSAS and she also indicated that she had never been terminated from any employment.  Bryan was aware these statements were false because he knew Poff had been terminated by ODMHSAS.  (Ex. #9, ¶17, Affidavit of Bryan and Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14).

   26.   Bryan took notice of Poff's application in the following particulars:

   a.  On the third page of the application, she stated that her reason for leaving her employment with ODMHSAS was that she "resigned".  (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 3)

   b.  On page five of the application, there is a question which asked, "Have you ever been terminated from employment?" Poff answered "No."  (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 5)

   c.  Also on page #5 of the application, there is a question which asked, "Have you ever resigned from employment in lieu of being terminated?" Poff answered "Yes".  She also added a comment: "My previous position was unclassified.  Leadership indicated my services were no longer needed and I resigned." (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 5).

All three of these statements were misrepresentations because Poff had been terminated from her position with ODMHSAS.  (Ex. #2, termination letter signed by Terri White, Commissioner of ODMHSAS, August 23, 2013).

27.     On  August 21, 2014, Bryan had a meeting with Bruce Boone and told her he reviewed Poff's application file, and he planned to terminate Ms. Poff because she made misrepresentations on her employment application.   Specifically, on her employment application to the OIG division of DHS, Poff indicated she resigned from ODMHSAS when, in fact, she had been terminated.   (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14; Ex. #9, ¶20, Affidavit of Bryan; and Ex. #14, ¶8, Affidavit of Bruce Boone).

28.     Also, on August 21, 2014, at 3:10 p.m., Bryan sent an email to Leanne Saunders, Discipline Manager for DHS, stating, "We have discovered that a probationary employee has been dishonest on their application and I believe that we need to discharge. The employee is Kim Poff." (Ex. #15, Email chain between Bryan and Saunders dated August 21, 2014).

29.     On August 21, 2014 at 4:22 pm, Saunders replied to Bryan stating,

Discharge would be consistent with DHS practice once it is determined a probationary employee has falsified their application.  I have attached a discharge letter for your signature and the applicable policy.  Please note in the heading and in the body I stated she worked in the Investigation Unit, if this is incorrect please change to the correct unit.
(Ex. #15, Email chain between Bryan and Saunders dated August 21, 2014.)

30.     It is the practice/protocol of DHS to terminate probationary employees upon discovering that they have made misrepresentations on their application for employment.   (Ex. #14, ¶8, Affidavit of Bruce Boon and Ex. #16, ¶5, Affidavit of Saunders).

31.     When Leanne Saunders advised Bryan that Poff should be terminated on August 21, 2014, she was not aware Poff had filed an EEOC Charge against ODMHSAS. Saunders was aware that Poff had been mentioned in a newspaper article. She knew from the newspaper article that Poff sued her former employer, but she was not aware of the nature of the allegations of that lawsuit.  (Ex. #16, ¶10, Affidavit of Saunders).

32.     It was a central function of Poff's job as an Investigative Agent III to testify in administrative hearings and court proceedings regarding her investigations.  (Ex. #17, Job Description for Investigative Agent, in section "Typical Functions," second paragraph).

33.     Bryan was concerned about allowing an agent to testify in administrative and court proceedings whose credibility was questionable based upon misrepresentations on her application for employment.  Bryan was also concerned DHS could be placed in the position of being required to disclose Poff's dishonesty to Assistant District Attorneys and/or defense counsel whenever she testified in future criminal prosecutions.  Bryan believed Poff's credibility problem would undermine her effectiveness at courtroom testimony and this would make her unable to perform a central function of her job.  (Ex. #9, ¶18, Affidavit of Bryan).

34.     Bryan made the decision to terminate Poff's employment with DHS.  Other than the advice from Leanne Saunders, no one else suggested or instructed Bryan to terminate Poff's employment.  Bryan conveyed Poff's termination to her on August 22, 2014.  (Ex. #9, ¶22, Affidavit of Bryan and Ex. #18, DHS termination letter).

35.     Bryan accepted the resignation of Poff's predecessor (BF) in the Investigative Agent III position for the same reasons. It was discovered that BF made misrepresentations on her application for employment and that the ensuing problems with her credibility would impact her effectiveness at courtroom testimony.  Bryan intended to terminate BF for making misrepresentations on her application despite his belief that she was competent at her job; however, she resigned in lieu of termination.  (Ex. #9, ¶19, Affidavit of Bryan).

36.     On August 22, 2014, Bryan emailed Bruce Boone to inform her that he terminated Poff's employment with DHS.  (Ex. #19, Email, Bryan to Bruce Boone, August 22, 2014).

37.     At the time of Poff's termination, Bryan was not aware she had filed a Charge of Discrimination against ODMHSAS with the Equal Employment Opportunity Commission (EEOC). (Ex. #9, ¶27, Affidavit of Bryan).

38.     At the time of Poff's termination, Bryan was not aware that her lawsuit against ODMHSAS included claims of discrimination or retaliation based upon gender and age.  (Ex. #9, ¶28, Affidavit of Bryan).

39.     At the time of Poff's termination, Lake and Bruce Boone were not aware Poff had filed an EEOC Charge against ODMHSAS.  Nor were either Lake or Bruce Boone aware that Poff's lawsuit against ODMHSAS included claims of discrimination or retaliation based on age.  Bruce Boone also was not aware that Poff's lawsuit against ODMHSAS alleged a gender discrimination claim.  (Ex #13, ¶¶14, 15, 18, Affidavit of Lake; and Ex. #14, ¶¶17, 18, Affidavit of Bruce Boone).

40.     Neither Ed Lake, Tony Bryan, nor Lee Anne Bruce Boone ever spoke about Kim Poff with the Governor or anyone on the Governor's staff.  (Ex. #13, ¶19, Affidavit of Lake; Ex. #9, ¶32, Affidavit of Bryan; and Ex. #14, ¶14, Affidavit of Bruce Boone).

41.     Lake and Bryan never had a conversation with one another about Kimberly Poff, until well after Ms. Poff's discharge from DHS.  (Ex. #9, ¶30, Affidavit of Bryan and Ex. #13, ¶21, Affidavit of Lake).

42.     Bryan did not terminate Plaintiff in retaliation for her exercise of her First Amendment rights, for her filing a lawsuit against ODMHSAS, or for her lawyer speaking to the press.  (Ex. #9, ¶¶29, 34 Affidavit of Bryan).

## Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970).

Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983).  In response to a motion for summary judgment, the plaintiff must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence

of the elements essential to the plaintiff's case.  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  To defeat a motion for summary judgment, evidence including testimony, must be based on more than mere speculation, conjecture, or surmise.  *Id.* Unsubstantiated allegations carry no probative weight in summary judgment proceedings. *Id.*  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986).

**Argument and Authorities**

**I.   DHS is entitled to summary judgment on Poff's claim of retaliation under Title VII.**

Title VII prohibits retaliatory discrimination. 42 U.S.C. §2000e-3(a).  "To establish a prima facie case of retaliation, [a plaintiff] 'must show that: (1) [he or] she engaged in protected activity; (2) [he or] she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.'" *Vaughn v. Villa*, 537 F.3d 1147, 1150-51 (10th Cir. 2008) (quoting *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1123-24 (10th Cir. 2007)).  "Protected activities fall into two distinct categories: participation or opposition."  *Id.*  (quoting *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)).  Poff has made a claim under only the participation clause (See Doc. #61, p.#8 and Doc. #66, p.#2), which provides that an employer may not retaliate against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. §2000e-3(a); *Vaughn*, 537 F.3d at 1151.

**A. Poff cannot show a causal connection between the filing of her Title VII based claims against her former employer and her termination by DHS, and thus she cannot establish the third element of her prima facie case of retaliation.**

Poff's action of filing an EEOC Charge and a lawsuit against her former employer containing allegations of age and gender discrimination and a claim of retaliation are protected activities under Title VII, and thus, Poff can meet the first element of her prima facie case under the participation clause.[2]   Poff's termination by DHS is an adverse employment action under Title VII for the purpose of satisfying the second element of her retaliation claim.   However, there is no causal connection between Poff's Title VII claims against her former employer and her termination by DHS.   Without a causal connection between the two events, Poff cannot establish the third element of her prima facie case of retaliation. *Vaughn, supra,* at 1150-51 and *Timmerman, supra,* at 1123-24.

Defendant Tony Bryan, ("Bryan"), made the decision to fire Poff.  (Ex. #9, ¶22, Affidavit of Bryan; Ex. #13, ¶22, Affidavit of Lake; and Ex. #14, ¶11, Affidavit of Bruce Boone).  Bryan was not aware that Poff had filed a Charge of Discrimination against her former employer with the EEOC.  (Ex. #9, ¶27 Affidavit of Bryan).  Although Bryan was

---

[2] In the event that Poff asserts that her protected activities also fall under the opposition clause, DHS specifically states that her activity of speaking-out about (opposition to) a consensual office relationship is not a protected activity under Title VII. *Poff v. Oklahoma Department of Mental Health and Substance Abuse Services*, No.16-6146 (10th Cir. March 30, 2017) at p. 21-22. Also see *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369-70 (10th Cir. 1997) (collecting cases). "Favoritism, unfair treatment and unwise business decisions do not violate Title VII unless based on a prohibited classification" and we have explicitly "decline[d] to extend Title VII to include consensual romantic involvements." *Id.* at 1370. Thus, DHS maintains that Poff cannot meet the first element of her prima facie case of retaliation under the opposition clause.

aware that Poff had filed a lawsuit against ODMHSAS, because he read about it in a newspaper article, he was not aware that her lawsuit contained claims of discrimination or retaliation based upon gender or age.  (Ex. #9, ¶28, Affidavit of Bryan).   The newspaper article which Bryan read did not mention Poff's claims of age or gender based retaliation or discrimination.  (Ex. #5 newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014).   Bryan had not learned about Poff's age or gender based retaliation or discrimination claims from any other news articles, websites, or television news stories.  Bryan only knew about the information that he read in *The Oklahoman* on August 20, 2014.  (Exhibit #9, ¶28, Affidavit of Bryan). Further, Leanne Saunders, who advised Bryan that termination of Poff was consistent with DHS practice, also had no knowledge regarding any of the claims contained in Poff's lawsuit against her former employer. (Ex. #16, ¶10, Affidavit of Saunders; and Ex. #15, emails between Bryan and Saunders on August 21, 2014).

An "employer must know of [an] employee's protected activity in order to engage in unlawful retaliation.  Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee *because* of the protected conduct, as required by statute."  *Jones v. UPS*, 502 F.3d 1176, 1194-1195 (10th Cir. 2007) (emphasis in original); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002).  An employee cannot establish a causal link between her protected activity and her employer's adverse action unless she can show that her employer knew she was engaging in protected activity.  *Jones* at 1195; *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).  Moreover, in order "to establish a 'causal connection,' plaintiff

must show that the *individual who took adverse action* against him knew of the employee's protected activity." *Id.* (emphasis added).

Bryan is the individual who took adverse action against Ms. Poff.  (Ex. #9, ¶22, Affidavit of Bryan; and Ex. #14, ¶11, Affidavit of Bruce Boone).  Bryan didn't know about Poff's protected conduct of filing an EEOC Charge against her former employer or filing age or gender based retaliation/discrimination claims in a lawsuit against her former employer.  (Ex. #9, ¶¶27, 28, Affidavit of Bryan).  Although Bryan did know about Poff's claims based upon her investigation of the NARCONON facility, these claims are not protected conduct under Title VII.  Poff cannot establish a causal connection between her protected conduct (filing retaliation and discrimination claims against her former employer) and the adverse action (her termination) because she cannot show that the individual who took the adverse action (Bryan) knew about her protected activity.  *Jones* at 1195; *Williams* at 181.  Since Poff cannot show a causal connection between a protected activity and an adverse action, she cannot establish the third element of her prima facie case of retaliation and her claim must fail.  *Vaughn, supra,* at 1150-51 and *Timmerman, supra,* at 1123-24.

**B.  Under the *McDonell-Douglas* burden shifting framework, DHS terminated Poff for a legitimate, non-discriminatory reason.**

Where there is no direct evidence of retaliation, the court should analyze a retaliation claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Stover v. Martinez*, 382 F.3d 1064, 1070-1071 (10th Cir. 2004) (applying the *McDonnell*

*Douglas* framework to a claim of retaliation).  Following this framework, an employee must first present a prima facie case of retaliation, which then shifts the burden to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action.  *Jones v. Barnhart,* 349 F.3d 1260, 1266 (10th Cir.2003).  If the employer provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination.

In order to satisfy the first prong of the *McDonnell Douglas* framework, Poff must demonstrate a prima facie case of retaliation. As explained above, Poff cannot demonstrate the third element of her prima facie case because she cannot show that there was a causal connection between her protected activity (filing claims against her former employer) and the adverse employment action (her termination by DHS).  Since Poff cannot satisfy the first prong under *McDonnell Douglas*, the analysis under that framework should end here.  However, in the event that the Court determines that Poff can demonstrate a prima facie case of retaliation, DHS will proceed with the second prong of the framework.

**1. Poff was terminated by her former employer and she misrepresented this fact on her application for employment.**

DHS terminated Poff because she made misrepresentations on her application for employment to the OIG division.  (Ex. #9, ¶16, Affidavit of Bryan).  There were three separate misrepresentations:

1. On the third page of the application, she stated that her reason for leaving her employment with ODMHSAS was that she "resigned".  (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 3)

2. On page five of the application, there is a question which asked, "Have you ever been terminated from employment?" Poff answered "No."  (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 5)

3. Also on page #5 of the application, there is a question which asked, "Have you ever resigned from employment in lieu of being terminated?" Poff answered "Yes".   She also added a comment: "My previous position was unclassified. Leadership indicated my services were no longer needed and I resigned." (Ex. #10, Application for Employment with OIG signed by Poff on 4/18/14, p. 5)

All three of these statements were misrepresentations because Poff had been terminated from her position with ODMHSAS.  (Ex. #2, termination letter signed by Terri White, Commissioner of ODMHSAS, dated August 23, 2013).

At her deposition, Poff testified that her intention was to resign from her position at ODMHSAS. (Ex. #20, Deposition of Kimberly Poff, pp. #54-55, 57, 62–66, 127 – 129, 135-136, 165-166).  However, there is voluminous evidence that Poff was terminated by ODMHSAS:

1. Termination letter directed to Ms. Poff and signed by Terri White, Commissioner of ODMHSAS ("White" or "Commissioner White"), (Ex. #2, termination letter signed by Terri White, Commissioner of ODMHSAS, dated August 23, 2013).

2. Transcript of the recording of the meeting between Poff, Commissioner White, and Durand Crosby ("Crosby") when the decision to terminate her employment was conveyed to her. In the recording, Poff asks if she can be allowed to resign, but indicates that she would like to discuss the matter with her attorney before doing so. White and Crosby state that she may resign, in lieu of being terminated, if she does so by Monday, August 26, 2013. (Ex. #3, transcript of recording, page #4, lines 4-23; page #5, lines 9-20; page #7, lines 9-17; page#8, line 3; page #11, lines 23-25; page #12, lines 7-21; and page #13, lines 6-25 to page #14 lines 1-22).

3. Correspondence from Poff's attorney, Rachel Bussett, to White and Crosby, dated August 26, 2013, wherein Bussett conveys demands by Poff to ODMHSAS. The letter does not include language conveying a resignation. Rather, the letter appears to be a list of demands under which, if fulfilled, Poff would agree to resign. (Ex. #4, correspondence from Poff's attorney, Rachel Bussett, to White and Crosby, dated August 26, 2013, p. 5).

4. The newspaper article published in *The Oklahoman* on August 20, 2014, which states that Poff was "fired" by ODMHSAS. (Ex. #5 newspaper article, "Buried report: Inspector wanted to close Narconon," *The Oklahoman* August 20, 2014).

5. The Affidavit of Terri White, Commissioner of ODMHSAS, which states, "On August 23, 2013, I terminated Poff's employment." White's Affidavit also states that she did not receive a resignation letter from Poff. (Ex. #1, ¶¶ 15-16, Affidavit of Terri White).

6. The First Amended Complaint in the Poff v. ODMHSAS lawsuit, wherein Poff states that she was terminated by ODMHSAS in paragraphs #14, 27, 64, and 96 (Ex. #6).

7. Poff's EEOC Charge of Discrimination against ODMHSAS wherein she states, "On August 23, 2013, I was terminated from my position as the Inspector General for alleged misconduct." (Ex. #7, Poff's EEOC Charge against ODMHSAS).

Based upon all of these documents, it is clear that Poff was terminated by ODMHSAS. Thus, it is equally clear that she made misrepresentations on her application for employment when she stated that she resigned from ODMHSAS and that she had never been terminated from any prior employment.

> **2. Poff was terminated by DHS because she made misrepresentations on her application for employment which impacted her ability to perform a central function of her job.**

Bryan terminated Poff on August 22, 2014 shortly after he became aware that she made these misrepresentations on her application for employment. He learned about her misrepresentations after the newspaper article about Poff was published in *The Oklahoman* on August 20, 2014, and he was following-up regarding a statement made in the article which implied that DHS had investigated the merits of Poff's termination about ODMHSAS.   (Ex. #9, ¶14, Affidavit of Bryan).   To be clear, Bryan previously knew that Poff had been terminated by ODMHSAS.[3]   He became aware of Poff's

---

[3] Lake, Bruce Boone, and Saunders were not aware that Poff had been terminated by ODMHSAS at the time that she was hired by DHS. (See Ex. #13, ¶11, Affidavit of Lake; Ex. #14, ¶4, Affidavit of Bruce Boone; and Exhibit #16, ¶3, Affidavit of Saunders).

termination before she returned to work for DHS in early 2014.  (Ex. #9, ¶6, Affidavit of

Bryan).    The new information that he learned in August 2014 was that Poff had

misrepresented the reasons for her departure from ODMHSAS on her application for

employment.   Bryan was concerned about continuing to employ an investigative agent

who was dishonest.   Ms. Poff's job responsibilities as an Investigative Agent III would

include routine occasions when she would be called upon to testify in both administrative

hearings and court proceedings.   Bryan was concerned about allowing an agent to testify

in such proceedings whose credibility was questionable.   Further, he was concerned about

whether DHS could be placed in the position of disclosing her dishonesty to Assistant

District Attorneys and/or defense counsel whenever she testified in future criminal

prosecutions.   If Poff were to become ineffective at courtroom testimony, because of a

credibility problem, she would be unable to perform one of the key functions of her job.

(Ex. #9, ¶18, Affidavit of Bryan and Ex. #17, Job Description for Investigative Agent, in

the section titled Typical Functions, second paragraph).    An employee's inability to

perform a central function of her job is a legitimate reason to terminate her employment.

See, *Robert v. Board of County Commissioners of Brown County, Kans.*, 691 F.3d 1211,

(10th Cir. 2012); *Stephen v. PGA Sheraton Resort, Ltd*., 873 F.2d 276, 280–81 (11th Cir.

1989

---

Their knowledge is not central to this issue, because none of them made the decision to
terminate Poff's employment.

**3. It is the practice/protocol of DHS to terminate probationary employees when it is discovered that they have made misrepresentations on their application for employment.**

After Bryan became aware of Poff's misrepresentation, he contacted Leanne Saunders ("Saunders"), the agency Discipline Manager, for advice and direction. (Ex. #15, email exchange between Bryan and Saunders on August 21, 2014).   Saunders responded to Bryan by email, stating,

> "Discharge would be consistent with the DHS practice once it is determined a probationary employee has falsified their application. I have attached a discharge letter for your signature and the applicable policy. Please note in the heading and in the body I stated she worked in the Investigation Unit, if this is incorrect please change to the correct unit." *Id.*

Saunders also sent Bryan a copy of DHS Policy 2-1-12 which states, "Probationary and unclassified employees are employees at-will and may be discharged by a chief officer, division director, or designee without cause at any time."   Saunders did not know anything about a lawsuit between Poff and ODMHSAS when she provided this advice to Bryan and drafted the discharge letter.   As the Discipline Manager, Saunders wanted Bryan to be aware that DHS has a practice/protocol of terminating employees who have falsified answers on their application. (Ex. #16, ¶¶5 and 10, Affidavit of Saunders). Bryan's termination of Poff was consistent with DHS practice, and was not based upon any discriminatory purpose.

**4. Bryan's decision to terminate Poff was consistent with his own past practice.**

Bryan's discharge of Poff was also consistent with his own recent practice.  Bryan intended to terminate Poff's predecessor, BF, in the Investigative Agent III position for

misrepresentations on her application for employment; BF resigned in lieu of termination. Bryan intended to terminate BF for falsifying her application despite his belief that she was competent at her job. He had the same concerns regarding BF that he had regarding Poff; that her credibility would impact her effectiveness at courtroom testimony. (Ex. #9, ¶19, Affidavit of Bryan).

Poff was terminated by DHS for a legitimate, non-discriminatory reason. She made misrepresentations on her application for employment regarding her termination from her prior employer. Although Bryan was previously aware that she had been terminated, he had not previously been aware that she had misrepresented this fact, and he believed that the misrepresentations would impact her ability to perform a core element of her job. In addition, it is the practice/protocol of DHS to terminate probationary employees, such as Poff, when the agency learns that such an employee has made misrepresentations on her application. DHS has carried its burden of articulating a legitimate reason to terminate Poff under the second stage of the *McDonnel Douglas* framework. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 509 (1993)). Poff is not able to meet her burden to show by a preponderance of the evidence that DHS' legitimate reasons were a pretext for discrimination. *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004), (affirming the holding in *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981), that Plaintiff's burden at the third stage of the

framework is by a preponderance of the evidence).   DHS is entitled to summary

judgment on this claim.

## II.   Poff's Oklahoma Anti-Discrimination Act (OADA) claim fails for the same reasons as her federal claims because the OADA mirrors federal anti-discrimination protections.

The Oklahoma Anti-Discrimination Act provides:

> A. It is a discriminatory practice for an employer:
> 1. To fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race, color, religion, sex, national origin, age, genetic information or disability, unless the employer can demonstrate that accommodation for the disability would impose an undue hardship on the operation of the business of such employer;… 25 O.S. § 1302 (A)(1)

The OADA also creates a private cause of action for employment-based discrimination.

25 O.S. § 1350(A).   The protections provided by the OADA are co-extensive with the

protections provided by federal law.  *McCully v. American Airlines*, *Inc*., 695 F. Supp. 2d

1225, 1247 (N.D. Okla. 2010).   "A plaintiff's claim under the Oklahoma Anti-

Discrimination statutes fails for the same reasons her ADA and Title VII claims fail."

*Barzellone v. City of Tulsa*, 210 F.3d 389, 2000 WL 339213 (10th Cir. 2000)

(unpublished).  In Oklahoma, a plaintiff's state law discrimination claims succeed or fail

with her corresponding federal discrimination claims.   *Bennett v. Windstream*, 30

F.Supp3d 1243, 1259 (N.D. Okla. 2014); *Hawkins v. Smith*, 46 F. Supp. 3d 1175, 1191

(N.D. Okla 2014).   Indeed, under the OADA, a defendant may assert any defense

available to it under Title VII or the ADA.  25 O.S. § 1350(F).

The preceding sections of DHS' Motion for Summary Judgment have set forth multiple defenses to Poff's Title VII claims, including her failure to establish the third element of her prima facie case and the articulation by DHS of a legitimate, non-discriminatory reason for her termination under the *McDonnell Douglas* framework. The same defenses are available to DHS under the OADA and the OADA offers no additional protection for Poff. Accordingly, DHS should be granted summary judgment as to Poff's claims under the OADA.

## III.  Conclusion

For the reasons set forth herein, the Court must grant Summary Judgment to the Oklahoma Department of Human Services on all remaining claims in this lawsuit.

Respectfully submitted,

*s/ Anastasia S. Pederson*
Anastasia S. Pederson (OBA# 17118)
John E. Douglas (OBA #2447)
Emily B. Fagan (OBA #22427)
Assistant General Counsel
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone:  (405) 521-3638
Facsimile:  (405) 521-6816
E-mail:  Stacy.Pederson@OKDHS.org
E-mail:  John.Douglas@OKDHS.org
E-mail:  Emily.Fagan@OKDHS.org
*Attorneys for Defendant Oklahoma*
*Department of Human Services*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of August, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Rachel Bussett
*Attorney for Plaintiff*

*s/ Anastasia S. Pederson*
Anastasia S. Pederson