# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIMBERLY POFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-936-R |
| | ) | |
| STATE OF OKLAHOMA, ex rel. | ) | |
| DEPARTMENT OF HUMAN | ) | |
| SERVICES, ED LAKE, individually | ) | |
| And as Director of the | ) | |
| Oklahoma Department of | ) | |
| Human Services, TONY BRYAN, | ) | |
| Individually and in his official | ) | |
| capacity as Director of the | ) | |
| Department of Human Services, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendant Tony Bryan, Inspector General for the Department of Human Services ("DHS"), seeks summary judgment on Plaintiff's claims of civil conspiracy and a 42 U.S.C. § 1983 claim alleging Bryan violated her First Amendment rights by terminating her from her position with DHS. Plaintiff contends her termination was in retaliation for a lawsuit she filed against her previous employer, the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS"), and that Defendant Bryan was responsible for her termination and that he conspired with others to violate her rights.[1] By

---

[1] At page 13 of her Response, Plaintiff's argument could be interpreted as an attempt to raise an intentional infliction of emotional distress claim. *See* Doc. No. 90, p. 13 ("Thus, Poff has the right to pursue claims against Lake and Bryan for their intentional conduct with regard to the intentional infliction of emotional distress and her conspiracy claims, as Poff was intentionally terminated by OIG after the publication of the article in the Daily Oklahoman, despite the pre-existing knowledge of the circumstances which ended her employment with ODMHSAS prior to her reinstatement with DHS."). No such claim was included in the Third Amended Complaint, and accordingly, no such claim exists in this action.

separate order the Court has addressed the separate motions of Defendant Lake and the Department of Human Services. Plaintiff responded in opposition to Defendant Bryan's motion, and having considered the parties' submissions, the Court finds as follows.[2]

Summary judgment is appropriate if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a)). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Tabor v. Hill, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting *Equal Emp't Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.2000)).

Defendant Bryan contends he is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim alleging violation of her First Amendment rights because her termination was not the result of her lawsuit against the ODMHSAS, but rather because she misstated the basis of her departure from ODMHSAS on her application for employment at the OIG for the Department. Defendant Bryan additionally asserts that Plaintiff's lawsuit and her comments, via attorney, regarding the lawsuit against ODHMSAS were not protected speech. Finally, Defendant contends he is entitled to qualified immunity on Plaintiff's 42 U.S.C. § 1983 claim. With regard to Plaintiff's conspiracy claim, Defendant Bryan argues there is insufficient evidence to support Plaintiff's contention that there was civil conspiracy with regard to her termination.

Although Plaintiff's claims involve her termination by the Oklahoma Department

---

[2] Plaintiff filed a combined response to the motions of Defendants Lake and Bryan.

of Human Services, the underlying facts extend to Plaintiff's prior employment with the Oklahoma Department of Mental Health and Substance Abuse Services and the end of her tenure there. Plaintiff was employed there as the Inspector General until August 23, 2013, when her employment ended. Plaintiff conducted a meeting on August 23, 2014, and requested that she be permitted to resign in lieu of termination. Her request was granted, provided that notice of her intention to resign was received by August 26, 2014. On August 26, 2013 Plaintiff, via counsel, conveyed the belief that she was the victim of discrimination and that her termination by ODMHSAS was in violation of the Whistleblower Act, because she refused to change findings in a high-profile investigation. The letter sought a resolution of her issues, stating:

> In an effort to resolve this claim, my client is willing to accept 2 year's salary ($140,000.00), state provided health insurance for one year, a positive employment reference with no reference to her resignation in lieu of termination or the potential termination, the ODMHSAS will not contest her receipt of unemployment compensation and the payout of the full balance of sick leave and vacation at time of termination in recompense for loss of retirement. If this matter proceeds to my client making a claim with the EEOC, we will seek damages in excess of $500,000.00 for the full damages that ODMHSAS's conduct has caused my client.

Doc. No. 91-3, p. 5. ODMSAS apparently did not interpret the letter as accepting its offer to permit her to resign in lieu of termination and it coded her departure as a termination.

On January 7, 2014 Plaintiff started a job at the Department of Human Services, as a Social Services Inspector III, an agency where she worked prior to joining ODMHSAS. A week later she filed an EEOC charge against the ODMHSAS alleging retaliation, and discrimination on the basis of age and gender. She continued her employment at DHS without incident, and in April 2014, applied for an opening in the DHS Office of Inspector

General ("OIG") as an Investigative Agent III. Ms. Poff was interviewed and recommended for hiring by the interview committee. Prior to starting the position, Ms. Poff underwent a substantial background check. Defendant Bryan asked the investigator to conduct a thorough check, because he was aware Plaintiff had been terminated by ODMHSAS although he was uncertain why. Although the investigator contacted the ODMHSAS regarding Ms. Poff's departure, the agency did not respond to his requests for information and other persons led him to believe it was office politics that led to her termination.[3] After completion of the background check the DHS OIG hired Plaintiff as Investigative Agent III. There is no dispute that Defendant Bryant had the ability to disapprove of Plaintiff's selection to the position, although it appears that at the last minute, he assigned George Tipton to be the appointing officer. Plaintiff's employment in this capacity continued without apparent incident until August 2014, when Plaintiff filed suit against the ODMHSAS and her attorney publicized the filing of the action.

On August 20, 2014, an article appeared in *The Oklahoman* newspaper. It included the following:

> The state Department of Mental Health "buried" an inspector general's report recommending that Narconon Arrowhead be shut down after three patients died there, two lawsuits against the agency claim. The Department of Mental Health and Substance Abuse Services fired its inspector general, Kim Poff, and an investigator, Michael DeLong, last year after they objected to the agency's withholding of the Narconon report, the lawsuits state.

Doc. No. 83-5. The article stated that Poff refused to change her report to comply with her

---

[3] The investigative report indicates the ODMHSAS would not comment on Ms. Poff's situation due to ongoing litigation, no additional details about any litigation are contained therein.

4

supervisors' request, which resulted in retaliation. The article quoted Plaintiff's counsel, "Ms. Poff believes that by not releasing the report, the ODMHSAS failed to protect the interest of Oklahomans at the facilities in the past, present and future." *Id.* The article also noted that Ms. Poff has been hired by the Department of Human Services, where she had previously worked, counsel having stated, "I don't believe DHS would have hired her back if they thought there was merit." *Id.*

Ed Lake, head of DHS, read the article and that date contacted Lee Anne Bruce Boone, Chief of Staff for DHS, inquiring into why DHS hired an employee terminated by ODMHSAS.[4] He asked her to look into the issue. Lake also spoke with Terri White, Commissioner of the ODMSAS, who confirmed Plaintiff had been terminated for cause, although she did not reveal the cause. Lake had no additional involvement in the personnel matter.

Lee Anne Bruce Boone contacted Defendant Bryan that same date to inquire about why DHS hired Ms. Poff after termination by ODMHSAS. Bryan stated he would look into the matter. Bryan thereafter read the article in *The Oklahoman* and requested Plaintiff's selection file for her job with OIG. He reviewed her April 18, 2014 application for employment at OIG and noted that she indicated therein she had "resigned in lieu of termination" from her position at ODMHSAS because "[h]er previous position was unclassified . . . [l]eadership indicated my services were no longer needed and I resigned." She marked a space indicating she not been terminated from any employment. Defendant

---

[4] Ed Lake's affidavit indicates that he was unconcerned about the substance of the allegations in Plaintiff's lawsuit against ODMHSAS.

5

Bryan, who had been aware since before January 2014 that ODMHSAS had terminated Plaintiff's employment, indicated that he considered these statements to be misrepresentations.[5] The next day, August 21, 2014, Defendant Bryan informed Lee Anne Bruce Boone that he intended to terminate Ms. Poff because of her misrepresentations on the April 18, 2014 application. Bryan also sent an email to Leanne Saunders, Discipline Manager for DHS, indicating that he discovered a probationary employee had been dishonest on her application for employment and he believed termination was in order. Ms. Sanders responded that termination would be consistent with DHS practice with regard to probationary employees and misrepresentations on an employment application. Bryan informed Poff on August 22, 2014 of his decision regarding her termination, he apparently did not inquire into why she indicated she had resigned in lieu of termination on her application.[6] Bryan contends he was unaware of any allegations of gender or age discrimination by Plaintiff against ODMHSAS in her litigation, and the August 20, 2014 newspaper article did not convey information regarding such claims. Defendant Bryan contends he is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim and on her civil conspiracy claim.

"The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti v. Ceballos*, 547 U.S. 410, 419, 126

---

[5] According to his affidavit, Defendant Bryan was concerned that DHS would be required to disclose the misrepresentations which would impact Plaintiff's credibility in her position as investigator, which can require testimony in administrative or court proceedings.

[6] It does not appear that Mr. Bryan permitted Plaintiff to explain her belief that she had indeed resigned.

S.Ct. 1951, 164 L.Ed.2d 689 (2006). Plaintiff's claim is governed by the familiar five-step *Garcetti/Pickering* test:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Halget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017) (citations omitted). Steps one through three are questions of law for the court, and the final two concern questions of fact. *Id.* Defendant also contends that he is entitled to qualified immunity because Plaintiff cannot establish that she engaged in speech on a matter of public concern, nor that any such speech was a motivating factor in her termination and because the law was not clearly established.

It is apparent as it related to Plaintiff's official duties at DHS, that Plaintiff's claims against ODMSAS were not made pursuant thereto.[7] Defendant also contends that because the lawsuit revolved around Plaintiff's dissatisfaction with her termination that her speech was not on a matter of public concern.

> Speech involves a public concern when the speaker intends to "'bring to light actual or potential wrongdoing or breach of public rust'" by a public official or to "disclose [ ] any evidence of corruption, impropriety, or other malfeasance" within a governmental entity." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988)(quoting *Connick v. Myers*, 461 U.S. 138, 148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). When we evaluate whether speech

---

[7] Defendant argues, although not vigorously and without citation to relevant factually similar authority, that Plaintiff did not engage in speech because the comments about which she complains, those in the article, were made by her attorney. It is obvious that the comments of Plaintiff's lawyer were conveying her sentiments, as expressed in the August 2014 lawsuit against ODMHSAS. As noted by Defendant Bryan, the article largely consisted of reiteration of the allegations in the petition filed in that case.

7

concerns the public, we do so "by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

*Eisenhour v. Weber County*, 744 F.3d 1220, 1228 (10th Cir. 2014). Defendant correctly asserts that statements regarding employment disputes may not constitute protected speech. However, the subject of the statements given by Plaintiff's counsel to the media on her behalf and the contents of her lawsuit that were repeated in the article that precipitated her termination involve issues of public concern and the article specifically notes her concern for the safety of persons treated at the Narconon treatment center.

> [A] mixed motive is not fatal to her claim. *See Deutsch v. Jordan*, 618 F.3d 1093, 1100 (10th Cir.2010) ("But the speaker's having a highly personal motive for a disclosure does not necessarily mean that the speech is not a matter of public concern."); *Wulf v. City of Wichita*, 883 F.2d 842, 860 n. 26 (10th Cir.1989) (noting that while speech was "linked to some degree to [the plaintiff's] personal dispute with [the defendant] on and to his dissatisfaction with his transfer to [another] [d]epartment, which he viewed as retaliatory, [the speech also] contain[ed] allegations of public concern").

*Id.* at 1228–29. The Court finds as a matter of law that the issue as raised by Ms. Poff was one of public concern, especially given her recommendation that the facility be closed because it was unsafe, a recommendation allegedly hidden despite the patient deaths that had occurred at the Narconon facility. Accordingly, because the Court finds that the speech involved public concern, the Court must consider the final legal factor, whether the interests of Plaintiff's employer, DHS, outweighed Plaintiff's free speech rights.

Defendant correctly notes this factor has little relevance in this case. Furthermore, "[a]lthough this element is framed as a 'balancing' test, [the Tenth Circuit] has held that First Amendment rights are protected unless the employer shows that some restriction is

8

necessary to prevent the disruption of official functions or to insure effective performance by the employee." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)(citing *Gardetto v. Mason*, 100 F.3d 803, 815 (10th Cir. 1996). There is no basis for concluding that DHS had an interest in promoting the efficiency of the public service that outweighed Plaintiff's speech rights under the circumstances of this case. DHS was not the entity to which Plaintiff's comments were directed and there is no indication that Plaintiff's comments and attendant lawsuit would have interfered in any manner with her employment at DHS. Accordingly, the Court turns to whether genuine issues of material fact exist with regard to the fourth step.

Defendant adamantly denies that the article and lawsuit were a motivating factor in the decision to terminate Plaintiff's employment two days after it was brought to his attention. Despite his arguments to the contrary, and his explanation that Plaintiff was terminated for falsifying her application, the Court finds that the evidence construed in the light most favorable to Plaintiff is sufficient to avoid summary judgment. First, the decision on Plaintiff's termination was made within two days of the article appearing in the paper and Defendant's attention was specifically called to the article by Lee Anne Bruce Boone. Second, although Defendant contends Plaintiff was terminated because she falsely indicated on her application that she had never been terminated, Mr. Bryan was aware that Plaintiff had been terminated by ODMHSAS. He ordered a full check into her background before she was hired into the OIG in April 2014. Defendant's attempt to argue that DHS routinely terminates people who make misrepresentations on their applications ignores two points. Defendant notes that two other employees were terminated under what he contends

are the same circumstances, Blanca Fernandez and Erika White. First, with regard to Ms. Fernandez, she had lied regarding her education and experience, and the Department was apparently unaware that she lacked the minimum requirements for the job she had been performing at DHS. When Ms. Fernandez asked if she would be fired and was told that the Legal made the decision but historically leaned toward termination, she resigned. Erika White was also permitted to resign when presented with information that she had lied on her application with DHS regarding a prior conviction, which she contended was the result of her misunderstanding her rights and identity theft. Furthermore, although both Fernandez and White were slated for termination, both were apparently offered the opportunity to explain their situations, which Plaintiff was denied. Again, Defendant Bryan was aware throughout that Plaintiff had been terminated by ODMHSAS, her alleged misrepresentation had no apparent impact on the hiring decision.[8] The timing combined with the dubious explanation as to why Defendant terminated Plaintiff on August 22, 2014, are sufficient to avoid summary judgment on the fourth step of the *Garcetti/Pickering* analysis.

Defendant further contends that Plaintiff cannot prevail because he has established that Plaintiff would have been terminated for the falsification regardless of the article or lawsuit.

> Summary judgment is appropriate on the fifth step when "any reasonable jury would [have found] that [the plaintiff] would have been terminated even absent any desire on the Defendants' part to punish him in retaliation for his

---

[8] There is no dispute that Plaintiff was aware ODMHSAS intended to terminate her, and that she requested the opportunity to resign. Plaintiff contends she resigned in lieu of termination, which is supported, albeit with some searching, by the letter her counsel sent to ODMHSAS on August 26, 2013. She apparently believed she had resigned despite the threats she made in that letter to sue over her termination.

> allegedly protected speech." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 117 (2d Cir.2011); s*ee also Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1244–45 (10th Cir.2009) (affirming summary judgment in part because defendants met their burden at the fifth step); *Guilloty Perez v. Pierluisi*, 339 F.3d 43, 59–60 (1st Cir.2003) (granting defendants judgment as a matter of law based on *Mt. Healthy* analysis); *Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir.1998); *Harris v. Shelby Cnty. Bd. of Educ.*, 99 F.3d 1078, 1086 (11th Cir.1996). Thus, for example, in *Anemone*, the court found that the "undisputed evidence" of the plaintiff's insubordination and the employer's "ongoing efforts to address it—efforts beginning well before any allegedly protected conduct—" were sufficient to meet the defendants' burden at the summary judgment stage. 629 F.3d at 117. And it was significant that the plaintiff was aware that his job was in jeopardy before he engaged in the protected conduct. *See id*. at 118.

*Trant v. Oklahoma*, 754 F.3d 1158, 1167–68 (10th Cir. 2014). Here, unlike *Trant*, there is no evidence that Plaintiff's protected speech came only after she was aware that her position was in jeopardy. Rather, it appears that despite knowing Plaintiff had been terminated, Defendant decided after the lawsuit publicity that indicating she had resigned in lieu of termination was material, despite his earlier belief she had been fired. The Court cannot say that there are no factual issues related to steps four or five so as to entitle Defendant to summary judgment.

Defendant argues he is entitled qualified immunity in part because Plaintiff cannot establish a violation of her rights, an argument rejected above. He also contends the law was not clearly established. A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir.2007); "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other

11

courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir.2001). On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question ... unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In 2014, it was clearly established that a public employer could not terminate an employee in retaliation for the employee's protected First amendment activities. *See Brammer-Heolter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1187 (10th Cir. 2010). Furthermore, "the protected nature of [Plaintiffs'] speech [was] sufficiently clear that defendants should have been reasonably on notice" they were not entitled to regulate it. *Melton v. City of Okla. City*, 879 F.2d 706, 729 (10th Cir.), *reh'g in part granted on other grounds*, 888 F.2d 724 (10th Cir.1989). As such, Defendant Bryan is not entitled to qualified immunity.

Finally, with regard to Plaintiff's civil conspiracy claim, the Court finds Defendant Bryan is entitled to summary judgment.[9] Plaintiff fails to cite to any evidence of an agreement by Defendant Bryan and any other person to accomplish an unlawful purposes or to accomplish a lawful purpose by unlawful means as required to establish her claim for civil conspiracy. *See Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997), *as corrected* (Apr. 3, 1998)(citation omitted). As such, Defendant is entitled to summary judgment on this claim.

For the reasons set forth herein, Defendant Bryan's Motion for Summary Judgment

---

[9] Plaintiff did not indicate the legal basis for her civil conspiracy claim, and therefore Defendant Bryan addressed such a claim under three potential theories, state law, 42 U.S.C. § 1983 and 42 U.S.C. § 1985. In her response Plaintiff did not clarify, but limited her citation to cases from Oklahoma state courts. As such, the Court limits its consideration of her civil conspiracy claim to a state law claim

is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED this 20th day of November 2017.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE