IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

KIMBERLY POFF, )
)
      Plaintiff, )
)
v. ) Case No. CIV-15-936-R
)
STATE OF OKLAHOMA, ex rel. )
DEPARTMENT OF HUMAN )
SERVICES, ED LAKE, individually )
And as Director of the )
Oklahoma Department of )
Human Services, TONY BRYAN, )
Individually and in his official )
capacity as Director of the )
Department of Human Services, )
)
      Defendants. )

## ORDER

Defendant Ed Lake, Director of the Department of Human Services ("DHS") seeks summary judgment on Plaintiff's claims of civil conspiracy and a 42 U.S.C. § 1983 claim alleging Lake violated her First Amendment rights. (Doc. No. 80). Plaintiff contends her termination by DHS was in retaliation for a lawsuit she filed against her previous employer, the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS").[1] Plaintiff filed a response to the motion, addressing both Defendant Lake's motion and a separate motion by Defendant Bryan, noting that both motions relied

---

[1] At page 13 of her Response, Plaintiff's argument could be interpreted as an attempt to raise an intentional infliction of emotional distress claim. *See* Doc. No. 90, p. 13 ("Thus, Poff has the right to pursue claims against Lake and Bryan for their intentional conduct with regard to the intentional infliction of emotional distress and her conspiracy claims, as Poff was intentionally terminated by OIG after the publication of the article in the Daily Oklahoman, despite the pre-existing knowledge of the circumstances which ended her employment with ODMHSAS prior to her reinstatement with DHS."). No such claim was included in the Third Amended Complaint, and no such claim exists in this action.

1

on the same statement of undisputed fact, with one exception.[2] (Doc. No. 90). Following Plaintiff's lead, Defendants Lake and Bryan filed a joint reply in support of their respective motions.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a)). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Tabor v. Hill, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting *Equal Emp't Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.2000)).

Plaintiff's 42 U.S.C. § 1983 claim alleges that her termination was in retaliation for exercising her First Amendment rights. Defendant Lake contends he is entitled to summary judgment on the § 1983 claim, because he did not personally participate in her termination and therefore cannot be held liable. Rather, he contends his involvement with Ms. Poff during her tenure at DHS was limited to an inquiry he made to the Chief of Staff, Lee Anne Bruce Boone, on August 20, 2014, regarding the circumstances of Plaintiff's hiring by DHS. His inquiry was premised on a newspaper article indicating Ms. Poff had been terminated by the ODMHSAS for cause but was currently working for DHS. In support of his motion, Defendant provided an affidavit that includes the following averments:

> On the morning of August 20, 2014, I read an article in *The Oklahoman* titled "'Buried' report: Inspector wanted to close Narconon." The article was about an investigation of the NARCONON facility which had been conducted by Kimberly Poff, the former Inspector General of the Oklahoma Department

---
[2] Defendants DHS and Bryan each filed separate motions for summary judgment, which will be addressed by separate orders.

of Mental Health and Substance Abuse Services (ODMHSAS). The article said that Ms. Poff had been fired by ODMHSAS and that she filed a lawsuit alleging that her termination was retaliatory for her speaking-out about NARCONON. The article also reported that Ms. Poff had been hired by DHS. The article included a statement attributed to Ms. Poff's attorney which implied that DHS had determined that Poff's termination by ODMHSAS was without merit. I took note of this statement because it seemed to me to possibly suggest acknowledgement by the attorney that Ms. Poff had been fired for cause. I was concerned because it appears DHS had hired someone who had been recently fired by another state agency, having served in a high level capacity.

\*\*\*

The same morning of August 20th, when I arrived at the office, I went by the office of Lee Ann Bruce Boone, the Chief of Staff at DHS. . . . I shared the newspaper article with Ms. Bruce Boone and asked her to look into how DHS had come to hire Ms. Poff, the person mentioned in the newspaper article. Before I saw her name in the newspaper, I did not know nor had I heard of Ms. Poff. My only concern regarding DHS's employment of Ms. Poff was based on her previous discharge from another agency. Also that day, or very soon thereafter, I called Terri White, Commissioner of ODMHSAS. I called Commissioner White to ask her if, in fact, ODMHSAS had discharged Ms. Poff for cause. She told that it had.

\*\*\*

At the time that Ms. Poff was terminated, the only information that I knew about Poff was from the article in *The Oklahoman* on August 20, 2014, and from my brief conversation with Commissioner White.

\*\*\*

Prior to Ms. Poff's termination from DHS, no one, either inside or outside the agency, ever contacted or spoke with me about terminating Ms. Poff from DHS. I was never asked, encouraged or directed by anyone to cause Ms. Poff's termination. Beside sharing the news article with Lee Anne Bruce Boone, I never spoke to anyone else at DHS about Ms. Poff. I never told or directed anyone working for DHS to terminate Ms. Poff, nor did I make any suggestion that she should be terminated. I specifically never talked to Tony Bryan, DHS's Inspector General, about Ms. Poff until well after her discharge from DHS. I was not involved in the decision to terminate Ms. Poff. I was unaware of the termination decision until after the termination

> had occurred. Sometime after the fact, I learned from Ms. Bruce Boone that Mr. Bryan determined that he had cause to discharge Ms. Poff, and had done so effective August 22, 2014.

Doc. No. 83, Ex. 13 (paragraph numbering omitted).

It is well established that a defendant's personal participation in the alleged violation of a plaintiff's constitutional right is essential to a § 1983 action. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (*citing Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Plaintiff's response brief does not specifically address Defendant's personal participation argument, likely a result of the decision to file a single response to two separate motions. Although Defendants Lake and Bryan were both employees of DHS, they did not operate as a single person. That the Defendants rely on the same undisputed facts in support of their respective motions does not eliminate the need to address each Defendant separately.

> Because § 1983 and *Bivens* are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. "[I]t is particularly important" that plaintiffs "make clear exactly who is alleged to have done what to whom, ... as distinguished from collective allegations." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir.2011) (alteration in original) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008)) (internal quotation marks omitted).

*Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). Plaintiff attempts to tie Defendant Lake to the decision to terminate her by citing to the fact that he exchanged text messages with Lee Anne Bruce Boone on August 19, 2014 and August 20, 2014, the substance of which is unknown. This evidence is insufficient to establish that Defendant Lake personally participated in Ms. Poff's termination. The sole evidence tying Defendant Lake to the

4

events surrounding Plaintiff's termination is his initial inquiry into the circumstances of her hiring. This inquiry, however, provides an insufficient basis for concluding that he was involved in her termination or that his actions were in retaliation for the exercise of her First Amendment rights. Accordingly, Defendant Lake is entitled to summary judgment in his favor on Plaintiff's § 1983 claim.

Plaintiff relies on the same text messages as the basis for her contention that Defendant Lake was part of a civil conspiracy, that he conspired with Defendant Bryan or some other person to effectuate Plaintiff's termination. There is no evidence that Defendant Lake sought, recommended or demanded Plaintiff's termination or that he was aware that Defendant Bryan had terminated Ms. Poff until after the fact. Although there is evidence that Defendant Lake and Ms. Bruce Boone exchanged text messages during the relevant time period, there is no evidence as to the content of these messages. The Court cannot assume or infer from the presence of messages at or near the relevant time period that the content thereof related to Plaintiff. Finally, Plaintiff states in her brief that Defendant Lake knew the issues regarding her departure from ODMHSAS; however, she does not support this contention with evidence or citation to evidence regarding Defendant Lake.[3] Similarly,

---

[3] The Court notes that Plaintiff submitted numerous exhibits in opposition to the motion for summary judgment to which no citation is made. The Court is not tasked with weeding through the evidence presented by Plaintiff; it is her obligation to direct the Court to the specific relevant evidence upon which she relies. As noted by the court in *Haden v. Green*, 2012 WL 6953295 (D.Colo. August. 30, 2012), "it is Plaintiff's obligation as a litigant to cull the evidence and identify with particularity and by page, that which is probative of a particular factual assertion." *Id.* at *3; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). Defendants also correctly note that Plaintiff's response briefs did not comply with the format dictated by the Court's Local Civil Rules. Rule 56.1(c), mandates that, "[t]he brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section responding, by correspondingly numbered paragraph, to the facts that the movant contends are not in dispute and shall state any fact that is disputed." The rule contemplates that for every numbered paragraph in a motion for summary judgment, the response brief will contain a corresponding numbered paragraph and that the denial of any fact contained in a numbered paragraph will be supported by "citation, with particularity, to any evidentiary material that the party

the evidence to which Plaintiff cites regarding Defendant Lake does not establish that he agreed with one or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means as required to establish Plaintiff's claim for civil conspiracy. *See Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997), as corrected (Apr. 3, 1998)(citation omitted)("A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. . . To be liable the conspirators must pursue an independently unlawful purposes or use independently unlawful means.").

Defendant's motion for summary judgment is well taken in that Plaintiff fails to present evidence that Director Lake was involved in a civil conspiracy with regard to her employment and the termination thereof or that he personally participated in the alleged infringement of her free speech rights. Defendant Lake's motion is therefore GRANTED.

IT IS SO ORDERED this 20th day of November 2017.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

presents in support of its position pursuant to Fed. R. Civ. P. 56(c)." It is not sufficient to simply list the paragraphs to which a party objects, those to which it does not object, and then to begin setting forth disputed facts.